IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICHARD MCMANUS, EDNA AVAKIAN, CHARLES CARDILLO, BEN CAPPS, DEBORAH DIBENEDETTO, and CAROL J. RITCHIE | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:11-cv-00565-GPM |
| v. | ) ) | |
| STURM FOODS, INC., and TREEHOUSE FOODS, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Come now the Plaintiffs Richard McManus, Edna Avakian, Charles Cardillo, Ben Capps, Deborah DiBenedetto and Carol J. Ritchie, on their own behalf and on behalf of all others similarly situated, by and through counsel, and hereby file this First Amended Class Action Complaint.

## THE PARTIES

1.    Plaintiff, Richard McManus ("McManus"), is a citizen of the State of Alabama. Plaintiff McManus represents a class of consumers from the state of Alabama.

2.    Plaintiff, Edna Avakian ("Avakian"), is a citizen of the State of California. Plaintiff Avakian represents a class of consumers from the state of California.

3.    Plaintiff, Charles Cardillo ("Cardillo"), is a citizen of the state of New York. Plaintiff Cardillo represents a class of consumers from the state of New York.

4.    Plaintiff, Ben Capps ("Capps"), is a citizen of the State of South Carolina. Plaintiff Capps represents a class of consumers from the state of South Carolina.

5.      Plaintiff, Deborah DiBenedetto ("DiBenedetto"), is a citizen of the State of New Jersey.  Plaintiff DiBenedetto represents a class of consumers from the state of New Jersey.

6.      Plaintiff, Carol J. Ritchie ("Ritchie"), is a citizen of the State of North Carolina. Plaintiff Ritchie represents a class of consumers from the state of North Carolina.

7.      Defendant Sturm Foods, Inc. ("Sturm") is a Wisconsin corporation with a principal place of business at 1215 Center Street, Manawa, Wisconsin.  Accordingly, Sturm is a Wisconsin citizen for purposes of diversity jurisdiction. Sturm is a privately held company that manufactures dry groceries under private label brands, such as Grove Square, and distributes them to the foodservice industry and grocery suppliers throughout the United States and Canada. On December 1, 2009, it was announced that Treehouse Foods, Inc. ("Treehouse"), which is headquartered in Illinois, purchased Sturm.

8.      Defendant Treehouse, is a Delaware corporation with its principal place of business in Illinois.  As the sole owner of Sturm, Treehouse dominates and fully controls its subsidiary.  Accordingly, Treehouse is a citizen of both Delaware and Illinois for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

9.      28 U.S.C. § 1332(d)(2) provides that district courts have "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000" and is a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).  This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 USCA § 1332, because the amount in controversy exceeds $5,000,000 and the Plaintiffs are all citizens of States completely different from the citizenship of both defendants Sturm and Treehouse.  The Plaintiffs are citizens of the States of Alabama,

California, New Jersey, New York, North Carolina, and South Carolina, while the Defendants are citizens of Wisconsin, and Delaware and Illinois. The amount in controversy is satisfied because there are potentially tens of thousands if not hundreds of thousands of Class members. Neither Defendant has contested the amount in controversy requirement.

10.     Venue is proper in this Court as a substantial portion of the events giving rise to the claims occurred in this District. Defendants have defended themselves in this Court without contesting venue.

### OVERVIEW OF THE CLAIM

11.     A consumer from California wrote to Sturm in January of 2011, and copied the CEO of Wal-Mart, regarding his experience with the Grove Square Coffee product. The e-mail provides a succinct overview of the claim Plaintiffs bring on their own behalf, and on behalf of the Class or applicable Subclasses, and explains the fraud, deceit, and mislabeling of the product in easy to understand terms. The consumer explained:

Dear Sirs,

I feel ripped off by your company and by Walmart.

I purchased two boxes of the "Grove Square Coffee" (one light roast and one medium roast) from Walmart designed for the Keurig coffee maker.

Being that these need to be individual packages for single serving, I understand that they are more expensive. I accept that.

However, I do expect to get ground coffee that is inside the cup OR I would expect that there is CLEAR marking on the package that says "INSTANT COFFEE".

The product that you put out is at best a deception.

I do not expect to find deception coming from a company that sells products through a US retailer.

I do expect that it would be clearly marked as such.

3

Using the words "SOLUBLE & MICROGROUND ARABICA COFFEE" is the deception. That misleads the consumer into believing that the product is actual coffee and not an instant product. It also says "natural flavor and other natural flavor" .. even the Great Value Walmart coffee (which is highly rated by consumers) clearly states that it is "100% Arabica Coffee" and NOT "other natural flavors".

Yes, while SOLUBLE means that it can be dissolved so that means you avoided an outright lie, you are deceiving people into expecting something that all other Keurig coffee providers are doing. That is ground coffee in the individual Keurig cups, not simply instant coffee.

Perhaps this is a private brand that you are packaging for Walmart. If this is the case, then the only thing I can say is that I hope you objected to not having the packaging CLEARLY state that this is instant coffee.

The price for this box of INSTANT coffee was $7.98 here in California (Sacramento). Considering that is 18 Keurig cups that comes to $.44 cents each for a cup of instant coffee. Since I already have a MyKCUP, I could have purchased a bottle Great Value instant coffee and put it in MyKCUP. With the total product being 1.21 oz and comparing that with the Great Value 8 oz jar, I could have purchased at least 2 jars of the instant coffee and received more than 10 times the amount of coffee! What a rip off! If this was priced lower and packed properly, it might be more acceptable.

Heck, if I wanted instant coffee, I probably would have purchased the Starbucks VIA coffee and use my hot water pot to make my coffee.

I will now proceed to find each one of the various web sites where I can write a review of the product and share my honest opinions.
(Grove Square 0002159-2160)

## STATEMENT OF FACTS

**A.      Keurig's Single Serve Coffee**

12.      Keurig, Inc. is a corporation that manufactures a line of single-serve coffee machines under the "Keurig" brand name along with the corresponding coffee filled cartridges for use in those machines.   These single-serve coffee brewing systems allow users to enjoy freshly brewed coffee one cup at a time while eliminating the inconvenience of grinding beans, measuring coffee and handling messy filters.

4

13.     These systems generally rely on pre-packaged servings of coffee in individual serving sizes that integrate the ground coffee bean and filter into one unit.  In Keurig's products, these cartridges, known as "K-Cups," consist of a sealed container with an internal filter and ground coffee.

14.     In order to brew a fresh cup of coffee, consumers place a K-Cup in a receptacle at the top of a Keurig brewer and close the lid.  As the lid is closed, needles puncture the top and the bottom of the cartridge.  The user then selects the desired brewing parameters and within minutes hot water is forced into the cartridge from the top needle, through the coffee and filter, and exits the bottom needle into the user's cup.

**B.     Sturm Enters the Single Serve Market**

15.     Since October of 2010, Defendant Sturm has manufactured and sold cartridges for use in Keurig's machines under the "Grove Square" brand name.  Sturm sells the grove Square product on-line through discountcoffee.com, through E-Bay, through Amazon.com, and other retailers.  In all, Sturm sells its product to consumers nationwide and in Canada through more than eighty (80) retailers.

16.     Sturm began selling its Grove Square product in major retail stores including Big Lots, CVS and Wal-Mart.  The product contains small text on the bottom left hand corner of the front of the package that reads "*For use by owners of Keurig coffee makers."

17.     The original packaging contains images of two Grove Square cartridges grouped together, one lying on its side to better illustrate its top, and one vertically oriented, surrounded by coffee beans.  In addition, the package contains a sliding bar graph indicating whether the coffee inside is light, medium or dark roast.  The top (or side) of the packaging reads as follows:

Great Coffee.  Plain and Simple.

For Generations, Americans have appreciated a great cup of coffee. Long before it became complicated and grandiose, we savored it in neighborhoods coffee shops and diners where the atmosphere was friendly, and the coffee was simply fresh, hot, and delicious. Grove Square coffee recaptures this rich, traditional cup, and brings it home with single-serve convenience. Our lives might be more complicated now, but our coffee doesn't have to be. Grove Square coffee. It's one cup of coffee you'll feel right at home with, and it's right here in your neighborhood.

18.     The back of the packaging has a "quality promise" that states "Grove Square coffee is made with some of the world's highest quality Arabica beans, roasted and ground to ensure peak flavor, then packaged to lock in optimum freshness." At some point, after receiving hundreds if not thousands of complaints regarding the nature and quality of its product, Sturm decided to change the content of its quality promise.

19.     When it first began selling its product, however, nowhere on the package did Defendants state that the cartridges' contents were overwhelmingly instant coffee. In fact, on information and belief, the amount of instant coffee in the single serve cartridges is or was equal to 95 percent. Instant coffee is not freshly brewed coffee but rather dehydrated soluble powder that can be mixed with water to yield a coffee-like beverage. Through the statements, images and descriptions set forth on the packaging for its cartridges, Defendant conveyed the false impression that its instant coffee is actually fresh-brewed.

20.     Defendant's false representation of the quality and nature of its single-serve instant coffee products deceived or tended to deceive consumers for single-serve beverage cartridges into buying defendant's product under the impression that Grove Square is freshly brewed coffee.

21.     All of the Plaintiffs purchased the Grove Square product believing that the product was of the same kind and quality that he or she had purchased for their Keurig machines from Keurig or Keurig-licensed companies. Plaintiffs did not realize that Grove Square was not

6

freshly brewed coffee but instead that it was essentially instant coffee in a single serve cup. If Plaintiffs had known that the cartridges contained overwhelmingly instant coffee, they would not have purchased the product.

**C.     Experience of the Named Plaintiffs**

22.     Plaintiff McManus purchased his Grove Square coffee at a Wal-Mart in 2011. The product was contained next to other licensed coffee for Keurig machines. The placement of the product enhanced the overall deception related to the purchase decision. Only after brewing a cup of the coffee and being dissatisfied with the taste, did McManus open up a cup of the single serve that had not been brewed and discover that the cartridge contained instant coffee.

23.     Plaintiff Avakian purchased her product at a CVS in California in 2012. Plaintiff Avakian was deceived into thinking that the product contained coffee of similar quality and kind as she had previously purchased for her Keurig machine.

24.     Plaintiff Cardillo was deceived when he bought his product in New York. In fact, he wrote the Better Business Bureau to complain about the deception nature of the packaging. His complaint states:

Customer's Statement of the Problem:

I bought their product Grove Square Coffee Single Cups for the Keurig Coffee Makers. All it is is instant coffee in the small cup. You can take it out of the container that says do not open foil and put it [in] hot water and you have a cup of coffee. It is instant coffee like Folgers Coffee Crystals.

Desired Settlement:

The coffee is pulled off the shelves because it is not what the container says it is. False advertising.

Additional Comments From Consumer:

It is False advertisement. What is in the product is not what is portrayed on the box. All it is is instant coffee crystals in a cup that is supposed to be used for the Keurig coffee

maker. All you need is hot water from the tap to make this coffee that they sell. (BBB000039)

25.     Although the BBB sent the complaint to Sturm it did not respond to the Plaintiff's complaint.  Because Plaintiff Cardillo received no response he agreed to join this lawsuit in order to vindicate the rights of other class members.

26.     Plaintiff Capps was also deceived when he purchased his product in South Carolina.  Plaintiff Capps was deceived into thinking that the product contained coffee of similar quality and kind as he had previously purchased for his Keurig machine.  He purchased his boxes of Grove Square at a Big Lots store in Bluffton, SC. He was eager to try it as he had just purchased a Kurig, and was looking to try new varieties of K-cups. He had purchased K-cups from Big Lots before, the Donut House variety, which is made by Green Mountain Coffee, and he assumed that the Grove Square k-cups were similar.  Capps purchased 3 boxes, one of each variety they had, with the intention of trying each one, and going back later that afternoon to get more of the ones he liked.  After trying each of the varieties, and wondering about the taste, Capps cut open a single serve container and discovered it was filled with crystalline freeze dried coffee. He examinied the box, and after 30 minutes of looking all over the box, he found in ridiculously small letters, "soluble and micro ground".   Capps then researched the language to discover that he had paid the same price for instant coffee as he had for ground coffee. He was furious, and threw the remaining boxes out in the trash. He then went online and went to the grove square website, and looked up their contact info. He called their number, and after numerous recordings got fed up and ended the call. He then went online and decided to write some reviews of the product wherever he could find it on sale online, as he did not want anyone else to be duped into buying instant coffee in a k-cup.

27.    Plaintiff DiBenedetto, who purchased her product in New Jersey, complained directly to Sturm in the form of an e-mail. Her e-mail, and Sturm's response, are set forth below:

> **From:** Deborah DiBenedetto [redacted]
> **Sent:** Friday, January 14, 2011 5:52 PM
> **To:** info
> **Subject:** Grove Square Coffee
> I purchased a box of your Grove Square Coffee for my Keurig machine. I never read the box closely enough to see your play on words . ."soluble and microground arabica coffee." Shame on you; call it what it is in a language everyone is familiar with. ..   INSTANT COFFEE IN A K-CUP. And, what does "natural flavor with other natural flavor" mean? Properly and clearly label your product as *Instant Coffee*.
> Deborah DiBenedetto

28.    Plaintiff DiBenedetto received this response:

> **Subject: Fwd: Grove Square Coffee**
> Hi Deborah:
> Thank you for inquiring about Grove Square Single Serve Coffee Cups. This is a relatively new product and we are anxious to hear consumer feedback.
> **While the Grove Square Coffee Cups are different from other K-cups, it is not instant coffee.** It is a similar concept to instant because it does dissolve, but it is actually a high quality coffee bean pulverized into a powder so fine that will dissolve. The natural flavor is coffee extracts. I hope you find this information helpful, please let me know if I can be of further assistance. (bold and underline added)
> Jodi Rickert
> Sturm Foods
> Consumer Affairs
> 215 Center St
> PO Box 287
> Manawa, WI 54949
> 866-596-2736

29.    Plaintiffs are at loss as to why Sturm would tell Plaintiff DiBenedetto that its product WAS NOT INSTANT COFFEE because it later changed its package to include the word INSTANT as part of the description.

30.    On information and belief, Sturm was still attempting to propagate the lie that its coffee was something that it wasn't. Because Plaintiff DiBenedetto received no satisfaction from Sturm she agreed to join this lawsuit in order to vindicate the rights of other class members.

31.    Plaintiff Carol Ritchie, from Raleigh North Carolina, also complained to the BBB and was assigned complaint # 8759519. Her complaint was as follows: "The produce is Grove Square Coffee K-cups stating the coffee is soluble & microground; this is an instant coffee but who knew because nowhere on the package does it state this is instant coffee and not ground. The word microground leads people to believe this is a ground coffee not instant. At 10.00 dollars a box this can be a very expensive mistake." (BBB000043)

32.    Although the BBB sent the complaint to Sturm it did not respond favorably to the Plaintiff's complaint. Because Plaintiff Ritchie received no satisfaction from Sturm she agreed to join this lawsuit in order to vindicate the rights of other class members.

**D.    Experience of other Consumers**

33.    As shown below, the named Plaintiffs all had a similar experience as did countless of other consumers that bought the product and complained to Sturm.

34.    For example, a complaint to Sturm is dated November 10, 2010, and states: "I recently purchased a box of Grove Square coffee single cups for use in my Keurig Coffee Maker. I was very surprised and extremely disappointed to discover this is just instant coffee. This is very deceiving to the public. Nowhere on the box did it say "instant" coffee. This is very misleading. At this point I am requesting a refund of $7.98 which was the price I paid for the coffee." (GROVE SQUARE 0001965)

35.    Another complaint to Sturm is dated February 23, 2011, and states: "I purchased a Keurig Coffee maker for my wife for Christmas and have been pleased with most of the brands

and samples of coffees for this coffee makes until I purchased your Grove Square Coffee packaged for the Keurig. First, your 18 servings 1.46 Oz package ($10.98 at Wal-Mart) does not state clearly anywhere on it that it is instant or freeze dried coffee...All the other brands I have used for the Keurig have been actual ground coffee inside a filter. Secondly, your "Coffee Lover's Bill or Rights" that is on your packaging and on the Grove Square Coffee website states "Every coffee lover in America is entitld to life , liberty, and the pursuit of a great cup of coffee at an affordale price...well, the smallest package of Folger's brand instant coffee (4 oz at a price of $2.00 also at Wal-Mart) makes 30- 8 oz cups of good tasting coffee compared at you 18 serving 1.46 oz that tastes weak and if you use the large cup setting on the coffee maker, you have to open up an additional serving cup to make it taste palatable. That makes your brand more over-priced than all the other brands as well...I feel that your product is misleading and does not live up to what your packaging or website says it does. If you check out the Internet, you will see that I am not alone in this complaint. I am forwarding a copy of this email to management at Wal-Mart, Macy's, Kohls, Keurig, and any other retailer that carries your brand to make them aware of my complaint." (GROVE SQUARE 0001960)

36.     Another complaint Sturm received is dated November 11, 2010, and states: "Your box of single cups was approximately $2.00 cheaper than the other and you made yours sound so good; so I purchased yours. I rushed home and made a cup of coffee immediately and I was SO disappointed. It tasted as if it had the cheap coffee substitute-chickory mixed with the supposedly "world's highest quality Arabica beans." I can't drink the coffee so I wasted approximately $9.00 for nothing." (GROVE SQUARE 0001961)

37.     Another complaint sent to Sturm is dated November 11, 2010, and states: "I noticed that the coffee had a "generic" taste with my very first cup. By the end of the second

cup, I had completely figured out that it was instant coffee. That is why the cup is so light & even lighter after brewing. Imagine me finding no coffee grounds in the K-cup when I removed the foil top. I do not appreciate being charged for something that is well below the expectations. If I wanted instant coffee, I would have bought about 5 jars of what I paid for one box (18 servings) of your product." (GROVE SQUARE 0001968) (underline added)

38.     Another complaint Sturm received is dated November 11, 2010, and states: "How greedy can a company get?  You guys must be proud of yourself by screwing consumers every day.  The fake coffee you guys sell is nothing more than garbage!!trying to pass off instant coffee as gourmet coffee for the keurig.you are a joke!  Our united states is in the condition it is, because of companies like you. If I wanted instant coffee. I wouldn't need a keurig, would i?  Charging consumers $9.98 for a quarter cup of no brand instant coffee is simply outrageous and iresponsible!  Greed   must   be   your   first   priority.   you   suck!!"   (GROVE   SQUARE 0001969) (underline added)

39.     Likewise, a complaint forwarded to Sturm dated October 24, 2010, states: "I have a Kuerig coffee maker and came across your Grove Square product the other day at Wal-Mart. As it was next to the Green Mountain brand I usually buy, and it was $2 cheaper, I thought I would try it.  Imagine my disbelief when I took the first cup out of the package.  It felt different in weight and upon shaking it. sounded different.  I am a coffee drinker.  If I'd wanted instant, I would have bought a jar for considerably less money than I paid for 2 boxes of your crap." (GROVE SQUARE 0001971 and GROVE SQUARE 0001972) (underline added)

40.     Similarly, a complaint sent to Sturm dated November 2, 2010, states: "Recently, I purchased your Grove Square Coffee, Single Cup 18 pack for Keurig brewers.  I was very dissatisfied to see that the coffee in the cups in only instant.  In normal Keurig K-cups, made by

Green Mountain, real coffee grounds are used, not "soluble microground" coffee. That better product is also the same price. If I want instant coffee, I could have bought Folgers for half the price, and it would have made three times as many cups." (GROVE SQUARE 0001973) (underline added)

41.     Another complaint states: "Shame on you! Why didn't you just say "Instant Coffee" on the box? I bought my first (and last) box of the single cup coffee today. It was a dollar or so cheaper than the brand name and I thought I'd give it a try. But all-in-all it cost about twice as much as the other since I can use the K-cups twice and when you have instant coffee, of course you can only use it once." (GROVE SQUARE 0001976) (underline added)

42.     Another consumer wrote: "I just purchased a box of your Grove Square Coffee Medium Roast for Keurig machines. Nowhere did I read it was instant coffee in the k-cup. I did read after making a test cup in very small print it is soluble which I had to wiki to see what that even means. The fact that I paid over $8.00 for 18 packets of INSTANT coffee that tastes as bad as it does is just terrible. I will be promptly returning this product to the store and writing a review online to warn other Keurig owners. Shame on you, say it's instant and put it in a jar." (GROVE SQUARE 0001979) (underline added)

43.     Another complaint forwarded to Sturm states: "This morning my husband served me a cup of coffee made in our Keurig brewer. I thought he must be trying to play a joke on me, because from the taste of it I could tell that it was instant coffee! Imagine our surprise when we discovered Grove Square single cups are not coffee at all, but freeze-dried coffee chips. We are very unhappy." (GROVE SQUARE 0001984) (underline added)

44.     Another complaint forwarded to Sturm is dated November 2, 2010, and states: "I usually purchase my Kcups by Green Mountain Coffee(Dark Magic, Sumatran Reserve,

Expresso Blend), Emeril (Big Easy Bold) or Tully's (French Roast).  As you may know, this isn't always the most economical way to drink coffee…<u>What I didn't notice, however, was the box says in small writing "Soluable and Microground coffee."  I now assume that this is fancy terminology for "instant coffee."  If I had wanted instant coffee (which I NEVER EVER do because I absolutely hate it!), I would have purchased instant coffee…The purpose of a KCup machine is to have "real" coffee quickly.  I think your company is guilty of false advertising by marketing the Grove Square coffee similar to Green Mountain Coffee, Tully's, etc.</u>" (GROVE SQUARE 0001987) (underline added)

45.     Another complaint forwarded to Sturm is dated January 8, 2011, and states:  "I recently purchased a box of your Grove Square Coffee "K" cups.  What a disappointment.  **The 'quality promise' states that the coffee "is made with some of the world's highest quality Arabica beans, roasted and ground to perfection to ensure peak flavor, then packaged to lock in optimum freshness."  This is a very misleading, as there is NO 'ground' coffee in the cup**.  The ingredients list "soluble and microground coffee."  Again, very misleading.  <u>I believe I purchased *instant* coffee in a "K" cup, as the "K" cup is totally void of product when brewed</u>!!!  This product should be labeled as such.  Again, I am most disappointed in your product." (GROVE SQUARE 0001994) (bold and underline added)

46.     Another complaint forwarded to Sturm is dated November 9, 2010, and states: "First thing this morning, I opened the box and took one out, and was surprised at the light weight of the cup, gave it a shake and put into my Keurig.  I added my usual sugar and half and half and sat down to taste it.  Frankly, it was no better than instant coffee, which I NEVER buy…<u>I tore off the foil lid and lo and behold, the cup was completely empty of coffee grounds!  HMMMM!  I came to the realization that you are selling INSTANT coffee in a plastic cup,</u>

calling it micro ground coffee!...When I purchased a Keurig machine for $135.00. I did not think so manufacturer would make such a cheap imitation for ground roast coffee. Maybe you should go back to the drawing board and think of a way to make this product taste better, and not try to pawn off instant coffee on an unsuspecting public." (GROVE SQUARE 0001995) (underline added)

47.     Another complaint forwarded to Sturm is dated January 12, 2011, and states: "Its not about taste expectations, **the consumer has a reasonable expectation to honesty when it comes to buying products. your product clearly deceives the consumer no matter how you try and justify it with clever wording. Its INSTANT coffee at 3x's the price of other instant coffees. the fact you mention nothing about your product as instant shows your contempt for the consumer. please keep my money, invest it in an ethics board**" (GROVE SQUARE 0002008) (underline and bold added)

48.     Another complaint forwarded to Sturm is dated December 11, 2010, and states: "I recently purchased this coffee and wanted to tell you how disgusting it is. Marketing instant coffee in K-cups is a deceptive practice and I intend to file a formal complaint with The State of Connecticut Department of Consumers Affairs." (GROVE SQUARE 0002020) (underline added)

49.     Another complaint forwarded to Sturm from the on-line retailer is dated January 15, 2011, and states: "I recently purchased your coffee singles for Keurig coffee makers. What a disappointment! You should print on the box that it is instant coffee!! I paid $8 for 18 cups of your instant coffee-quite expensive when I can buy a can of instant coffee, which has more taste, for $6 and get over 100 cups of coffee." (GROVE SQUARE 0002021) (underline added)

50.     Another complaint forwarded to Sturm is dated January 27, 2011, and states: "We purchased a keurig coffee maker and try different k cups to see which is better and cost efficient. We saw your k cups in walmart and noted they were $2 cheaper however, as we all know and have learned cheaper is not always better…Being curious my husband after using the kcup opened it was empty we were shocked no grounds nothing empty which only leads is to believe that you use instant coffee in your k cups which explains the coarse sound and less weight. The other kcups all ad coffee left in them yours did not. Needless to say we wont be buying your kcups anymore and I think that you should put on your packaging what exactly you are using for the coffee. Thanks" (GROVE SQUARE 0002027)

51.     Another complaint forwarded to Sturm ne retailer and states: "these are sold as "k-cups" but they are extremely misleading. Normal k-cup style coffee "pods" have a filter lining and coffee inside. These do not. These are weak and when we investigated exactly what was inside, there was not coffee or filter---instead, it was instant coffee inside the plastic pod things. Nobody who is buying pods for their Keurig machine is going to want instant coffee for it AND the packaging is misleading because it leads you to believe that it is just kind of store brand of the traditional k-cup style pods." (GROVE SQUARE 0002035) (underline added)

### E.     Sturm's Retailers Hear Complaints Too

52.     In February of 2011, one of Sturm's on-line retailers notified Sturm that it was facing threats from Amazon because of the extremely high complaint rate it had received for selling on Amazon. (DCM0000135) The on-line retailer also sent to Sturm some of the complaints it had received from consumers. As one consumer stated: "I have received this order and am very disappointed with your product. All you did was put instant coffee in the k-cups. I was so excited about your prices I started to tell my friends and co-workers. Now I feel like an

ass.  For the money, I could have bought instant coffee and put it in the reusable k-cup filter."
(DCM0000135-136)

53.      Another complaint forwarded to Sturm from the on-line retailer is dated February 24, 2011, and states: "Nowhere on the box did it mention any difference in the making of the cups.  So, much to our surprise, something was definitely amiss when we brewed our first cup. . . After opening the cup itself, we found no filter, nothing left.  Hence instant coffee.  This attests for the 'instant coffee' taste as well. I call that deceptive advertising.  If we had known this we never would have purchased your brand, seeing it was indeed a waste of money. . . If I were duped, how many other people are as well. (DCM0000136) (underline added)

54.      Another complaint forwarded to Sturm from the on-line retailer is dated February 23, 2011, and states: "I purchased some Grove square coffee k cups at Walmart to try and about the third cup, I realized that this was instant coffee.  The whole idea of the K cups is that you can have fresh BREWED coffee one cup at a time. . . .I will be returning the remaining coffee to walmart tomorrow with a complaint they should pull it from the shelves.  If I wanted instant coffee, I would buy a large cheaper jar and put it directly into hot water in a cup.  No one should be selling this stuff.  They are lying to the American people." (DCM0000136)  (underline added)

55.      A February 22, 2011, e-mail from the on-line retailer further informed Sturm that "Grove Square continues to struggle with the high customer complaints.  .  .**INSTANT and BAD taste are the problems.  Below are more customer feedback. . . Keep in mind that these are communications that we're receiving from customers that have bought Grove Square at Wal-Mart, Winn-Dixie, Amazon and discount coffee.**" (DCM0000138) (bold in original)  (bold added)

17

56.     One of the aforementioned complaints states: "I just wasted $8 at WalMart on instant coffee, this is terrible!  The box should be clearly labeled as INSTANT COFFEE. I feel it is false advertising and I just wasted my money. What a ripoff! I would have happily paid $9 for a decent brand had I known how bad this was. FALSE ADVERTISING at its finest." (DCM0000138) (Caps in original)

57.     Another e-mail the on-line retailer received states: "I BOUGHT A BOX OF YOUR COFFEE AT WALMART. . . .OPEN UP THE K CUP AND FOUND NO COFFEE OR FILTER. OPENED UP A NEW ONE AND FOUND INSTANT COFFEE. I HAVE BEEN RIPPED OFF. I EXAMINED THE BOX WITH A MAGNIFYING GLASS AND FOUND THE WORDS SOLUBLE & MICRO GROUND ARABICA COFFEE. I BELIEVE THAT YOU DECEIVED THE PUBLIC ON PURPOSE WHICH REQUIRES ME TO RESPOND TO WALMART, BBB, AND THE INTERNET. IT'S A SHAME THAT BUSINESS HAS STOOPED TO LIEING AND CHEATING TO MAKE A BUCK." (DCM0000139) (Caps in original)

58.     Similarly, another purchase explained her experience upon opening a single serve cup: "So we decided after brewing we would open them.  To our surprise the Grove Square coffee was empty!  It had to be instant coffee because there were no grounds in my coffee mug. . . . To think I bought real coffee only to find it was instant. . . . I feel this was and is false advertisement." (DCM0000139)   Likewise, another complaint explained that "[p]eople use Keurig K-Cups and pay the extra price to make sure we get a fresh cup of GOOD coffee.  If I wanted to use instant I certainly wouldn't need it in a K-Cup." (DCM0000139) (underline added) Likewise, another consumer posed this question: "Why would someone make instant in the k-cups? K-cups are fast to begin with." (DCM0000144) (underline added)

59.     In response to these complaints the on-line retailer added the word instant to its website, but because the product itself did not state that it was instant coffee, consumers were still misled about the true nature of the product.  One consumer explained: "Checking the site again, I see that it does not say "instant coffee."  It does say instant in the description, which I apparently took as a description of how fast the single cup process is." (DCM0000142)  Another consumer explained: "The word instant when you are talking about single serve K-cup coffee is very misleading, all K-cup give you an instant cup of coffee, but the others aren't instant coffee. Can I return my order and either get a refund or exchange for real coffee? I don't expect a miracle, but I did expect this to be real coffee." (DCM0000142)

60.     Other similar comments follow: "Nowhere in your ad does it state that your coffee is instant crystals. I am so sorry I purchased $70 worth of product. . . .It is going in the trash." (DCM0000143)

61.     In fact, customer complaints were so bad that the on-line retailer summarized in an e-mail the Grove Square Results: "**We have introduced grove Square, advertised and marketed the product and now have sufficient date to determine there are serious product considerations that need to be immediately addressed**. . .Customer reaction to Grove Square has been overwhelmingly negative. . . .Grove Square does not stack up to that 'coffee house quality' taste preference demanded by a single cup coffee drinker.  As a result of the loud voices being spoken throughout the internet, the grove Square brand has established a 'black eye' for the product and anyone associated with selling it." (DCM0000166)  The on-line retailer further noted that "**Grove Square has been the poorest performing introductory of product that we have had in our 12 year history**." (DCM0000167) (bold added)

F.     **Sturm offers Refunds to some Consumers**

62.     For those consumers that took the time and effort to complaint to either Discount Coffe.com, to the Better Business Bureau, to some other retailer, or to Sturm directly, and the complaint made its way to Sturm, the consumer might have received a canned response from Sturm to this effect:

> Thank you for sharing your comments about Grove Square Single Serve Coffee Cups.  We are sorry it did not meet your expectations.
>
> Prior to introducing a new item, we present various flavors, formulations, styles and varieties to consumer panels.  Their feedback assists us in determining which products to market based on broad consumer acceptance.  We realize, however, that people's tastes differ and are sorry this product didn't appeal to you.
>
> Because Sturm Foods stands behind the products we manufacture, we would be happy to send a refund, please forward your address.  Your comments are very helpful and will be shared with our Marketing team.

Grove Square 0002137; 2140; 2141; 2142; 2144; 2145; 2147; 2148.

63.     This same canned response was sent to countless other consumers and there are too many pages in Sturm's production to reference all of them.

64.     Accordingly, some consumers who were lucky enough to have their complaint reach Sturm may have received refunds.

65.     As previously noted, however, Plaintiffs Cardillo and Ritchie received no satisfaction from Sturm even though they complained to the BBB.

66.     On information and belief, Sturm did provide some refunds but it is also clear that other consumers that took the time and effort to complain about the product did not receive refunds.

G.     **Defendants Change the Label of the Product**

67.     After the public outrage to the deceptive nature of the product, Sturm decided at

some point to rework the content of its box.

    68.    As previously noted, in January of 2011, Sturm told Plaintiff DiBenedetto the following:

> **Subject: Fwd: Grove Square Coffee**
> Hi Deborah:
> Thank you for inquiring about Grove Square Single Serve Coffee Cups. This is a relatively new product and we are anxious to hear consumer feedback. <u>**While the Grove Square Coffee Cups are different from other K-cups, it is not instant coffee**</u>. It is a similar concept to instant because it does dissolve, but it is actually a high quality coffee bean pulverized into a powder so fine that will dissolve. The natural flavor is coffee extracts. I hope you find this information helpful, please let me know if I can be of further assistance. (bold and underline added)
> Jodi Rickert
> Sturm Foods
> Consumer Affairs
> 215 Center St
> PO Box 287
> Manawa, WI 54949
> 866-596-2736

    69.    On February 09, 2011, another consumer wrote Sturm and explained:

> **I purchased 6 boxes of your Grove Square Coffee from Amazon and I am very disappointed with it. It is not ground coffee.  It appears to be instant because it dissolves when done and there is no filter inside like all the other brands that I buy.   When you open up any other K-Cup it has the grounds left with a filter inside as well. Could you please explain this to me?** (Grove Square 0002139) (bold in original)

    70.    After following up with Sturm because the consumer found "it kind of strange that the attached e-mail was never answered," Sturm gave the following response:

> Thank you for inquiring about Grove Square Single Serve Coffee Cups. This is a relatively new product and we are anxious to hear consumer feedback.
>
> <u>**While the Grove Square Coffee Cups are different from other K-cups, it is not instant coffee**</u>. It is a similar concept to instant because it does dissolve, but it is actually a high quality coffee bean pulverized into a powder so fine that will dissolve. The natural flavor is coffee extracts. (Grove Square 0002138)

71.     In December of 2010 a consumer wrote Sturm and asked: "I read the entire box and could not find anything that said instant coffee, is it or isn't it.?" In response, Sturm told the consumer: "The coffee used for the Grove Square Single Cups is a soluble, microground coffee. . . We think it is much better tasting than instant or freeze dried coffees." (Grove Square 0002151). Again, Sturm told a consumer or conveyed the impression that its coffee was not instant.

72.     At the time that Sturm made these misrepresentations, its product was at least 95 percent instant coffee. Accordingly, at least through January and February of 2011, Sturm continued to provide outright misstatements about the nature and quality of its product when consumers inquired about it. Eventually, Sturm realized that it could no longer deceive the American public and pretend its product was not instant coffee as consumers realized that the emperor was not wearing any clothes. Hence, at some point in 2011 Sturm decided to add the word "instant" to its packaging. However, Sturm did not conduct a recall of the product it had already put in the stream of commerce so consumers continued to encounter its product at retail establishments without the word "instant" contained on the container.

73.     Even when Sturm decided to add the word "instant" to its packaging, however, it did so in a way to minimize the effect that word would have on the unsuspecting buying public. Plaintiff's consumer expert has examined the packaging of the product and other materials, and he will opine in sum or substance that: (1) the marketing of Grove Square K-cup coffee has been misleading and deceptive regarding the basic content and quality of the coffee contained in Grove Square K-cups from that product's marketplace introduction in October 2010 throughout the class period (i.e., until the present); (2) that Sturm's packaging and other marketing activities concealed that Grove Square's coffee content

22

is largely "instant coffee," instead of regular ground coffee like that contained in all the K-cup coffee products sold under Keurig's licensed brands; (3) that the vast majority (i.e., virtually all) of reasonable consumers who bought a package of Grove Square K-cups during this class period did so without understanding that Grove Square coffee was almost entirely "instant coffee;" and, (4) that Sturm's marketing practices in their entirety were designed to foster this deception.

## CLASS ALLEGATIONS

74.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 of the Federal Rules of Civil Procedure on behalf of themselves individually and on behalf of the following class of persons: All individuals or entities who reside in Alabama, California, New York, New Jersey, North Carolina, and South Carolina who have purchased Defendants' Grove Square product during the relevant time frame.  Excluded from the Class are the Defendant Sturm, Defendant Treehouse, any person, firm, trust, corporation or other entity affiliated with Defendant Sturm or Treehouse, and members of the federal judiciary.

75.     Pursuant to Fed. R. Civ. P. 23(a)(1) the members of the Class or subclasses are so numerous and geographically dispersed that joinder of all members is impracticable.   On information and belief, plaintiff alleges that there are tens of thousands if not hundreds of thousands of Class members throughout these states.

76.     Pursuant to  Fed. R. Civ. P. 23(a)(2) common questions of law and fact exist as to all members of the Class.  These common questions include, but are not limited to, whether:

(a)     Defendants' packaging of the Grove Square product misled, or tended to mislead, consumers into believing that they purchased brewed coffee as opposed to instant coffee.

(b)     Defendants misrepresented, concealed, omitted, and/or suppressed the true nature of their product from consumers;

(c)     Defendants violated the Deceptive Business Practices Acts, or analogous statutes, of (1) Alabama; (2) California; (3) New Jersey; (4) New York; (5) North Carolina; (6) South Carolina; and (7) Texas. and,

(d)     Defendants have been unjustly enriched.

77.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, and fairness and equity than other available methods for the fair and efficient adjudication of this controversy.

78.     Plaintiffs' claims are typical of the claims of absent members of the Class and any applicable Subclasses.

79.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and any applicable Subclasses.  Plaintiffs have no interests that are antagonistic to the absent Class members or members of any applicable Subclasses.  Plaintiffs are represented by capable counsel that has experience regarding consumer fraud class actions.

80.     Without the Class representation provided by Plaintiffs, virtually no Class or Subclass members will receive legal representation or redress for their injuries; Plaintiffs and counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and Class counsel are aware of their fiduciary responsibilities to the class members and Subclass members and are determined diligently to discharge those duties by vigorously seeking the maximum possible recovery for the Class and applicable Subclasses.

81.    Class certification is appropriate under Fed. R. Civ. P.  23(b)(2) with respect to Plaintiffs' demands for injunctive and declaratory relief against Defendanst because Defendants have acted on grounds generally applicable to the Class and Subclasses as a whole.  Therefore, the final injunctive and declaratory relief sought regarding the description of the product in this case is appropriate with respect to the Class and any applicable Subclasses as a whole.

82.    Class certification is also appropriate under Fed. R. Civ. P.  23(b)(3) with respect to Plaintiffs' demand for damages because common questions of fact or law will predominate in determining the outcome of this litigation and because maintenance of the action as a class action is a superior manner in which to coordinate the litigation.

**COUNT I**

**Alabama Deceptive Trade Practices Act**

83.    Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

84.    Plaintiff Mcmanus brings a claim on his own behalf and on behalf of a class of consumers in Alabama under Alabama Code § 8-19-1 et seq.  McManus is a consumer as defined under Alabama's Act.  Sturm violated Alabama Code 8-19-5(7) by representing that its goods or services are of a particular standard, quality, or grade, or that its goods are of a particular style or model, when they were of another.  Alabama Code 8-19-6 provides that it is the intent of the legislature that in construing Section 8-19-5, due consideration and great weight shall be given where applicable to interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C.45(a)(1)), as from time to time amended.  Pursuant to Alabama Code 8-19-10, Mcmanus seeks $100 per violation on behalf of himself and a class of Alabama consumers.

## COUNT II

### California Legal Remedies Act

85.    Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

86.    This cause of action is brought by Plaintiff Avakian pursuant to the California Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq.* (the "Act").  Plaintiff is a consumer as defined by Civil Code § 1761(d).  The Grove Square product is a good within the meaning of the Act.

87.    Defendant violated and continue to violate the Act by engaging in the following practices proscribed by § 1770(a) of the Act in transactions with Plaintiff and the California Class or subclass, which were intended to result in, and did result in, the sale of defendants' product:

> (a) representing the product has certain characteristics, uses or benefits which it does not;

> (b) representing that the product is of a particular standard, quality or grade when it is of another;

88.    Defendants violated the Act by making representations and claims as described above when they knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.  Defendants' unfair methods of competition and unfair or deceptive acts or practices were material to Plaintiff's and other Class members' decision to purchase Defendants' product. Plaintiff and Class members reasonably relied on the misrepresentations and misleading statements made by Defendants and sustained injury in fact as a result of Defendants' misconduct including but not limited to spending money to purchase the

products, the diminution in value of the products, transaction costs, and loss of use of funds.  As a result of Defendants' conduct, Plaintiff and Class members have sustained damages.

89.     Pursuant to § 1782 of the Act, Plaintiff notified defendants in writing by certified mail of the particular violations of § 1770 of the Act and demanded that defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

90.     Pursuant to § 1782(d) of the Act, Plaintiff and the class seek a Court order enjoining the above-described wrongful acts and practices and for available and legally appropriate restitution and disgorgement.

91.     Defendant failed to rectify or to agree to rectify the problems associated with the actions detailed above and pursuant to § 1782 of the Act, Plaintiff seeks actual, punitive and statutory damages, as appropriate.

### COUNT III

### Unlawful Business Acts and Practices in Violation of
### California Business & ProfessionsCode §§ 17200 *et seq.*

92.     Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

93.     This cause of action is brought by Plaintiff Avakian pursuant to Business & Professions Code § 17200 which prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendants have violated each of these provisions of Business & Professions Code §17200.

94.     Defendants have violated § 17200's prohibition against engaging in unlawful acts and practices by, *inter alia,* making the representations and omissions of material facts as set

forth more fully herein and violating, among other statutes, Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code §§ 172000 *et seq.*, and the common law.

a.   Plaintiff and the class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

b.   Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200 *et seq.* in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

c.   As stated in the complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws resulting in harm to consumers. Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.

d.   There were reasonably available alternatives to further defendants' legitimate business interests other than the conduct described herein.

### COUNT IV

**False Advertising in Violation of California Business & Professions §§ 17500 *et seq.***

95.   Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

96.     Plaintiff Avakian and the Class or Subclass bring this claim under Business & Professions Code §§ 17500 and have suffered injury in fact and lost money or property as a result of Defendants' conduct.

97.     Defendants advertise and market the Grove Squaree product in a false and misleading manner as shown above.

    a.     Defendants knew or should have known that this advertising and marketing is untrue and/or misleading.

    b.     Defendants have committed acts of untrue and misleading advertising as defined by California Business & Professions Code § 17500 by engaging in the acts and practices described above with the intent to induce members of the public to purchase their product.

    c.     Plaintiff and class members relied on the false advertising and sustained losses as a result of the false advertising campaign.

98.     Plaintiff, on behalf of herself and all others similarly situated, seeks an injunction prohibiting Defendants from continuing such practice, restitution and all other relief this Court deems appropriate, consistent with the False Advertising Law, California Business & Professions Code §§ 17500 *et. seq.*

## COUNT V

### NEW YORK DECEPTIVE ACT AND PRACTICES LAW

99.     Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

100.     Plaintiff Cardillo brings this claim on behalf of a Class or Subclass of consumers from the state of New York.

101.    Defendants, by selling, distributing, designing, packaging and marketing the Product, as set forth above and below engaged in deceptive acts and practices.

102.    The sale of the Product in New York and to the New York Class is a "deceptive act and practice" in violation of §349 of the New York General Business Law ("New York DAPL Act").

103.    The Defendants engage in intentional and fraudulent consumer-oriented conduct that was deceptive or misleading, with the intent to so deceive and mislead, consumers in a material way and the New York Class members were damaged thereby.

104.    The Defendants' conduct was such that it was likely to mislead a reasonable consumer acting reasonably under the circumstances.

105.    The New York Class relied upon such conduct and was damaged thereby.

106.    Under §349(h) of the New York DAPL Act, private parties like the Class Members may bring a private action to recover the greater of $50 or actual damages plus up to three times the actual damages up to $1000 per person caused by acts prohibited under the New York DAPL Act, including any unfair or deceptive practices, and may also seek and be awarded attorney's fees and costs.

## COUNT VI

### NEW YORK FALSE ADVERTISING LAW

107.    Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

108.    Plaintiff Cardillo brings this claim on behalf of a Class or Subclass of consumers from the state of New York.

109.   Defendants, by selling, distributing, designing, packaging and marketing the Product, as set forth above and below engaged in false advertising, as that term is defined by §350-a of the New York General Business Law ("New York FA Act").

110.   The Defendants labeled and advertised the Product (a commodity under the New York FA Act) in such a way as to be intentionally misleading in a material respect and failed to reveal facts material in the light of those representations made about the commodity.

111.   The New York Class relied upon such conduct and was damaged thereby.

112.   Under §350-e of the New York FA Act, private parties like the New York Class May bring a private action to recover the greater $500 or actual damages plus up to three times the actual damages up to 10,000 per person caused by acts prohibited under the New York FA Act and may also seek and be awarded attorney's fees and costs. Plaintiffs seek such relief.

## COUNT VII

### South Carolina Unfair Trade Practices Act

113.   Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

114.   Plaintiff Capps brings this claim on behalf of a Class or Subclass of consumers from the state of South Carolina pursuant to Title 39, Chapter 5 of the South Carolina Code.

115.   Section 39-5-10 defines 'trade and commerce' to include advertising and Section 39-5-20 declares unfair or deceptive acts or practices in the conduct of any trade or commerce as unlawful.

116.   Pursuant to Section 39-5-140, any person who suffers any ascertainable loss of money or property, from the use or employment of any unlawful deceptive practice, can bring an action to recover actual damages. Willful employment or use of such practices will result in an

award three times the actual damages sustained. Reasonable attorney fees and costs will be awarded to the person bringing an action if the court finds a violation.  Plaintiff Capps and the Class or Subclass seek such relief.

## COUNT VIII

**NEW JERSEY FRAUD IN SALES OR ADVERTISING OF MERCHANDISE LAW**

117.    Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

118.    Plaintiff DiBenedetto brings this claim on behalf of a Class or Subclass of consumers from the state of New Jersey.

119.    Defendants, by selling, distributing, designing, packaging and marketing the Product, as set forth above and below engaged in deceptive acts and practices in violation of New Jersey Code Ann. §56:8-1, et. Seq. ("NJ Act").

120.    Namely, Defendants used unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, and the knowing, concealment, suppression, or omission of material facts with intent that others, including the New Jersey Class, rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Product, which is "merchandise" under the New Jersey Act.

121.    The sale of the Product in New Jersey to Class Members is an unlawful practice in violation of §56:8-2 of the New Jersey Act.

122.    Plaintiffs relied upon such conduct and were damaged thereby.

123.    As set forth in §56:8-2.11, Defendants a liable to Plaintiffs for a refund of all monies obtained from Plaintiffs in the purchase of the Product.

124.    As set forth in §56:8-2.12, Plaintiffs may maintain a private action to recover such refunds.

125.    As set forth in §56:8-19, Plaintiffs may bring this action and this Court "shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest…[and] the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit." Plaintiffs seek this relief.

### COUNT IX

### North Carolina Deceptive Trade Practices Act

126.    Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

127.    Plaintiff Ritchie brings this claim on behalf of a Class or Subclass of consumers from the state of North Carolina pursuant to Article 1, Section 75-1 *et seq.* of General Statutes of North Carolina. According to Section 75-1.1, it is unlawful for any person, firm or corporation to practice any unfair methods of competition or deceptive acts or practices in North Carolina.

128.    In accordance with Section 75-16, Plaintiff and the Class or Subclass bring this action to recover damages.  Plaintiffs request that the Court in its discretion, pursuant to Section 75-15.2, impose a civil penalty not exceeding $5000 for each violation.

129.    In accordance with Section 75-16, Plaintiff and the Class or Subclass seek a judgment for treble the amount fixed by the verdict. Furthermore, according to Section 75-16.1, Plaintiff seeks reasonable attorney fees.

### COUNT X

### UNJUST ENRICHMENT

130.    Plaintiffs incorporate by reference all allegations previously set forth as if fully

restated herein.

131.   Defendants have been unjustly enriched by selling a product that is overwhelmingly instant coffee to the Plaintiffs and members of the Class by passing the product off as fresh brewed coffee.  By passing off its instant coffee as fresh brewed coffee, Defendants have been able to charge a higher price for its product than it otherwise would have been able to charge for instant coffee.

132.   Several consumers that complained to Sturm or one of its retailers set forth succinctly the cost issue.

133.   Defendants should be required to disgorge itself of its ill gotten gains.

## COUNT XI

## INJUNCTIVE RELIEF

134.   Plaintiffs incorporate by reference all allegations previously set forth as if fully restated herein.

135.   As set forth in Paragraph 73, Plaintiffs' consumer marketing expert will opine that Sturm's marketing of its product has been deceptive and continues to be deceptive.  Additional comments from the buying puvlic show that the deception is ongoing making injunctive relief in the form of clear labeling of the product appropriate.

136.   Attached hereto as Exhibit "1" are three pages of consumer reviews from Amazon regarding the Sturm product.  These reviews are dated from October of 2011 up through April of 2012.  The reviews show that the buying public continues to be misled regarding the nature and quality of the product making injunctive relief appropriate.

137.   For example, the review from April of 2012 states: "If you have any liking for real coffee, stay away from this brand." The February 15, 2012, review states: It is not marketed as instant coffee, but that is exactly what it is. There is no 'brewing' going on here."

138.   The lack of brewing with the Grove Square product is the crux of the deception. The following statement set forth below is taken from Keurig's website.

## Keurig® K-Cup® Single Cup Brewers

For coffee, tea, iced beverages and more, the world has discovered Keurig® as the way to brew. With over 200 varieties to choose from, it's always easy to find the right cup -- for you.

139.   The site further states: "It's easy to brew your perfect cup of coffee every time with K-Cup® Brewers. They brew in under a minute, there's no mess to clean up, and it's all at the touch of a button. Choose the right brewer for you."

140.   Consumers who purchase a Keurig Brewer intend to brew gourmet high quality coffee.  They do not intend or expect to use a Keurig Brewer to pour hot water through a single serve K-Cup of instant coffee.

141.   For example, the January 18, 2012, review states: "Wish I read the reviews before buying this product. I agree that this is nothing more than instant coffee which is not what I was expecting. It should be clearly marked as such."

142.   One consumer from North Bangor, New York wrote on December 22, 2011, a review entitled "*Disgusting rip off*," and pretty much summed up what other members of the Class and Subclasses have experienced.  She wrote:

> This 'microground coffee' is glorified instant coffee and tastes worse than any instant coffee I have ever had.  Real Kcups have coffee grounds left in them after brewing, these end up empty. If I wanted instant coffee I could have gotten hundreds more cups for the price I paid for these. The company should hang their head in shame. . . so deceiving. I am awaiting a response to the complaint I wrote to the manufacturer."

143.   It is evident that Defendants' Grove Square Coffee continues to mislead consumers about its true nature and quality of the product.  The deception is especially effective because an owner of a Keurig Brewer would not expect to use it to pour hot water over instant coffee.  Accordingly, injunctive relief is necessary and warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the Class, and any applicable Subclasses, pray for the following relief:

A.  An order that this action may be maintained as a class action under Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3);

B.  An order requiring Defendants to pay Plaintiffs statutory damages under the various state statutes pled above;

C.  An award of punitive damages and/or treble the amount of damages;

D.  An order enjoining Defendants from making any further false or misleading statements to Plaintiffs and members of the Class and or Subclasses, and other appropriate relief regarding the marketing of this product;

E.  An award of attorneys' fees and expenses; and

F.  Any other further or different relief to which the Plaintiffs may be entitled.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,
**BURKE HARVEY & FRANKOWSKI, LLC**

By:___/s/ Peter H. Burke_____
Peter H. Burke, Esq. ASB-1992-K74P

36

**OF COUNSEL:**

W. Todd Harvey, Esq. ASB 3215-E64W
**BURKE HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Avenue
Suite 120
Birmingham, Alabama 35205
Telephone:  (205) 930-9091
Facsimile:   (205) 930-9054
E-Mail:   pburke@bhflegal.com
             tharvey@bhflegal.com

*Attorneys for Plaintiffs Richard Mcmanus,*
*Edna   Avakian, Charles Cardillo, Ben Capps,*
*Deborah Dibenedetto, and Carol J. Ritchie*

## CERTIFICATE OF SERVICE

I do hereby certify that on the 2nd day of May, 2012, I filed the foregoing using the Court CM/ECF which will automatically send notice to the following counsel of record:

Michael Conway
Rebecca R. Hanson
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL 60654-5313

*Attorneys for Defendants Sturm Foods, Inc.*
*and TreeHouse Foods, Inc.*

Randy L. Gori, #6257394
D. Todd Mathews
GORI, JULIAN AND ASSOC, P.C.
156 N. Main Street
Edwardsville, IL 62025
*Attorney for Plaintiff Linda Suchanek*

B. J. Wade
SKOUTERIS AND MAGEE, PLLC
Morgan Keegan Tower
50 N. Front Suite 920
Memphis, TN  38103
*Attorney for Plaintiff Carol Carr*

Michael H. Maizes
MAIZES & MAIZES LLP
2027 Williamsbridge Road
2nd Floor
Bronz, NY 10461-1630
*Attorney for Plaintiff Paula Gladstone*

Patrick C. Cooper
WARD & WILSON
2100A Southbridge Parkway, Suite 580
Birmingham, Al 35209
*Attorney for Plaintiff Mellie Bracewell*

 /s/ Peter H. Burke
Of Counsel