**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RICHARD MCMANUS, EDNA AVAKIAN, CHARLES CARDILLO, BEN CAPPS, DEBORA DIBENEDETTO, and CAROL J. RITCHIE, et al.** ) ) ) ) ) ) | **CIVIL NO. 11-565-GPM** |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | |
| **STURM FOODS INC., and TREEHOUSE FOODS, INC.,** ) ) ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

On April 15, 2013 the Court heard argument on Plaintiffs' pending motion for class certification. (Doc. 99).   Plaintiffs claim that Defendant Sturm Foods, a dry grocery manufacturer and distributor, and Defendant Treehouse, as Sturm's sole owner, violated the consumer protection statutes and unjust enrichment laws of the eight named states with regard to their Grove Square Coffee single serving coffee product (Doc. 53).   Per the amended complaint, Defendants misrepresented and omitted the true nature of Grove Square Coffee products by indicating the product contained fresh ground coffee and a filter rather than "instant" or "soluble" coffee (Doc. 53).   Plaintiffs now seek certification of a class consisting of:

> All persons or consumers that during the Class Period – from September of 2010, until and including the present who purchased in Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, and Tennessee Defendants' Grove Square Coffee ("GSQ") products.   Excluded from the class are: (a) Defendants' Board members of executive-level officers, including its

attorneys; (b) persons or entities who purchased the GSQ primarily for resale; (c)retailers or re-sellers of the GSQ; (d) governmental entities; and (e) any consumer that already received a refund from Defendants.

(Doc 99, p. 25-26).   After consideration of all the parties' papers and arguments, the motion is

**DENIED**.

### A.  <u>Class Certification Standard</u>

To be certifiable, a class must first be definable, and then meet the requirements of numerosity, commonality, typicality, and adequacy. *See* FED. R. CIV. P. 23(a); *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977).   If the action meets those requirements, it must also fall within one of the three enumerated Rule 23(b) categories*.   Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011) ("(1) a mandatory class action (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior.").

Although the courts have broad discretion in deciding whether a proposed class satisfies Rule 23 requirements and should err in favor of maintaining class actions, the burden of proof falls to the party seeking class certification.   *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984); *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).   The plaintiff must "establish (not merely allege) that the elements of Rule 23(a) are met."   *Howland v. First American Title Ins. Co.*, 672 F.3d 525, 528 (7th Cir. 2012).   Class certification is a rigorous analysis in which courts may look beyond the pleadings to considerations that are "enmeshed with the merits of the claim" to determine if Rule 23's requirements are met, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1429 (2013); while at the same time avoiding a "dress rehearsal on the merits," *Messner*, 669 F.3d at

811.

## B. __Definiteness__

The Court must first ensure that the class is sufficiently "defined."   *Jamie S. v. Milwaukee Public Schools*, 688 F.3d. 481, 493 (7th Cir. 2012) ("a class must be sufficiently definite that its members are ascertainable.").   The class should be "ascertainable," which it is if the court can determine membership with objective criteria.   *Jamie S. v. Milwaukee Public Schools,* 668 F.3d 481, 493 (7th Cir. 2012).   A class is, on the other hand, overbroad if it sweeps in a great number of members who "for some reason could not have been harmed by the defendant's allegedly unlawful conduct."   *Messner,* 669 F.3d 802 at 824; *Kohen v. Pacific Inv. Management Co. LLC,* 571 F.3d 672, 677 ( 7th Cir. 2009) ("a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) (denying class certification when "[c]ountless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception.").

A class is overbroad if it sweeps in many members who *could not have been harmed at all*:

> This distinction is critical for class certification purposes. . . [I]f a proposed class consists largely (or entirely, for that matter) of members who are ultimately shown to have suffered no harm, that may not mean that the class was improperly certified but only that the class failed to meet its burden of proof on the merits. If, however, a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.

*Messner,* 669 F.3d at 824 (internal citations omitted).   The class cannot, then, include numerous people who have no claim at all.   For example, in *Oshana*, the Seventh Circuit confirmed that a putative class was not sufficiently definite when the class definition could include millions of

people who were not injured.   472 F.3d at 513.   The plaintiff in *Oshana* sued Coca-Cola for,

*inter alia,* violation of Illinois's Deceptive Practices Act, violation of which requires a plaintiff to

have been deceived and harmed by that deception.   *Id.* at 513-14.   The Seventh Circuit noted:

> Such a class could include millions who were not deceived and thus have no
> grievance under the [Act].   Some people may have bought fountain Diet Coke
> *because* it contained saccharin, and some people may have bought fountain Diet
> Coke *even though* it had saccharin.   Countless members of Oshana's putative
> class could not show any damage, let alone damage proximately caused by
> Coke's deception.

*Id.* at 514 (emphasis in original) (The Court found the putative class failed to show 'typicalility'

for the same reasons).

### 1.   Definiteness of the Consumer Protection State Law Claims

Plaintiffs have moved for certification of eight subclasses, each comprised of class

members bringing claims under their respective state consumer protection and unjust

enrichment laws.   (Docs 99, p. 25-26; 111-1).   Determining whether these classes are

overbroad requires inquiry into the recovery requirements under the individual state law

claims.

The Court finds that under the state consumer protection laws requiring causation or

actual reliance, the Plaintiffs' class definitions are overbroad.   The class definition

includes all individuals who purchased a Grove Square Coffee product.   This definition

necessarily includes purchasers who knew, or who were indifferent to the product's

insoluble coffee content.   For those purchasers, Plaintiffs cannot prove causation,

reliance, or actual injury from Defendants' alleged misrepresentation.   For this reason

Plaintiffs' claims under Alabama, New York, New Jersey, North Carolina, Illinois, and

South Carolina are overbroad and improper for class certification.

California and New Jersey, on the other hand, permit a class-wide presumption of reliance or causality for class certification purposes in limited circumstances.   Consequently, certification for subclasses under these states laws requires more thorough analysis, as follows. After examination, however, the Court finds it cannot presume reliance or causation under either state's jurisprudence—both the New Jersey and California class definitions are also overbroad.

### a.  California and New Jersey

Plaintiffs seek relief under the California's Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §17200, and False Advertising Law ("FAL"), California Business & Professional Code, §17500.   "The CLRA establishes a statutory remedy for unfair methods of competition and unfair or deceptive acts . . . which results in the sale of goods to a consumer."   *Gonzales v. Proctor and Gamble Co.*, 247 F.R.D. 616, 624 (S.D. Cal. 2007).   The UCL prohibits any business practice that is unlawful (forbidden by law), unfair (harm brought to the victim outweighs any benefit), or fraudulent (is likely to deceive members of the public).   *Gonzales*, 247 F.R.D. at 625.   The FAL makes advertising products or services by "untrue or misleading" statements unlawful.   Violations of the FAL are also unfair competition under the UCL.   *Gonzales*, 247 F.R.D. at 625 .

Under §17204 of the UCL, a private individual may bring suit only if he or she has "suffered injury in fact and has lost money or property as a result of the unfair competition. Similarly, the FAL requires an actual economic loss caused by the Defendant's conduct, and the CLRA requires each class member to have an actual injury caused by the unlawful practice. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012).   So, the private rights of action under each of the statutes requires plaintiffs to prove an actual loss, but allow a

class-wide presumption of actual loss if the defendant's alleged misrepresentations were material and made to the entire class.   An inference of reliance may be established on a class wide basis with a showing of materiality.   *Id.* ("As with the UCL and FAL, under the CLRA, '[c]ausation, on a class-wide basis, may be established by materiality.   If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'"); *see also Davis-Miller v. Automobile Club of Southern California*, 201 Cal.App.4th 106, 121 (2011) (The CLRA "requires that plaintiffs show . . . not only that a defendant's conduct was deceptive but that the deception caused them harm. Causation, on a class-wide basis, may be established by materiality."). 'Materiality' is objective and exists if a "reasonable man would attach importance to [the misrepresentation's] existence or nonexistence in determining his choice of action in the transaction in question." *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (Cal. 2009).

The inference of reliance is only appropriate if all purported class members were exposed to the alleged misleading advertising. *Davis-Miller*, 201 Cal.App.4th at 121 ("we do not understand the UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice."); *Pfizer Inc. v. Superior Court*, 182 Cal.App.4th 622 (2010) (denying class certification when a large number of class members were never exposed to the misleading product labeling and advertisement).

In general, purchasers of a product labeled with the alleged misrepresentation have necessarily been exposed, but all products must have contained the misrepresentation. *Contrast Ries*, 287 F.R.D. at 537 ("by definition, all class members were exposed to such

representations") *and Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 365 (granting class certification when all beverage bottles falsely represented that they were bottled in New Mexico) *with Pfizer*, 182 Cal.App.4th at 622 (denying class certification when many of the products' labels did not include the alleged misrepresentation).

To presume exposure on the basis of an advertising campaign, it must have been "extensive and long term." *Mazza v. American Honda Motor Co.*, Inc., 666 F.3d 581, 596 (9th Cir. 2012); *In re Pom Wonderful LLC.*, No. ML 10-02199 DDP, 2012 WL 4490860, at *5 (C.D. Cal. Sep. 28, 2012) (Given the wide geographical scope over which [the defendant] disseminated its health claims [the alleged deceptive advertisement] and the apparent success of Pom's marketing efforts [referring to 90% of class members surveyed who cited health claims as their primary reason for purchase of Pom] . . . reliance can be inferred."); *Davis-Milller*, 201 Cal.App.4th at 115 (upholding the trial court's determination that "sporadic and limited advertising" cannot create a presumption that the misrepresentation was made to the entire class); *In re Tobacco II Cases*, 46 Cal.4th at 327-28 (noting the tobacco companies engaged in long term "saturation" marketing).

Plaintiffs' current class definition includes individuals who were not exposed to Defendants' alleged misrepresentation; therefore the Court cannot presume reliance.   The amended complaint and motion for class certification allege that the Defendants' use of the word "soluble" rather than "instant," package design, and store placement were deceptive.   (Doc. 99 p. 9-11; Doc 53 p. 5-7).   Defendants also reference an "online marketing campaign," but provide little detail and no proof that named Plaintiffs were exposed to digital marketing.   (Doc 99 p. 19; Doc 99 p. 41).

Some purchasers in retail locations, like consumers in *Chavez* and *Ries*, were necessarily exposed to the advertisement on the packaging.   *Ries*, 287 F.R.D. at 537; *Chavez*, 268 F.R.D. at 365.   However, this is not so for many purchasers.   In 2011 Sturm Foods changed its label to include the word "instant."   (Doc. 108, p. 14).   Class members that were exposed to the packaging after this date (nearly 4 million dollars of gross sales; a vast majority of the overall sales during the class period, (Doc 101-13, p. 1092)) were not exposed to what Plaintiffs claim was Defendants' primary deception.   A fraudulent advertising campaign need not "consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class." *In re Pom Wonderful LLC.*, 2012 WL 4490860, at *4.   Nevertheless, there is a difference between a Defendant "simply altering the wording or format of his misrepresentation" in order to "escape much of his liability," *Id*., and a Defendant substantially altering the representation to fix what Plaintiffs allege is fraudulent.   *See Mazza,* 666 F.3d at 596 (finding a class overbroad the court stated: "while Honda might have been more . . . diligent in disclosing the limitations of the CMBS system, its advertising materials do not deny that limitations exist.   A presumption of reliance does not arise when class members were exposed to quite disparate information from various representatives of the Defendant.")

Moreover, the record indicates that extensive sales occurred online, and the class as defined by Plaintiffs includes these online purchasers.   (Doc 113, p. 4) (5,973 units sold on Amazon); (Doc 53, p. 5) (Sturm also sells products through E-Bay and discountcoffee.com).   Like the class members in *Pfizer* who purchased mouthwash bottles that did not contain the "as good as floss" misrepresentation, consumers who purchased the product after the packaging change, or bought the product online without ever seeing the packaging or product placement,

could not have been exposed to the alleged misrepresentation prior to purchase. *Pfizer,* 182 Cal.App.4th 622 (2010).

Plaintiffs' amended complaint does not contain sufficient evidence of an "extensive and long term" advertising campaign such that a presumption of exposure is appropriate. There is no decades-long market saturation here. *See In re Tobacco II Cases*, 46 Cal.4th at 327-28. No named Plaintiff indicates he or she was exposed to Defendants' online marketing. (Doc. 108, p. 28). Since the Court cannot presume that most purchasers were exposed to the alleged misrepresentation, materiality cannot be presumed and Plaintiffs cannot adequately allege actual injury for the California class. *Davis-Miller*, 201 Cal.App.4th at 125 ("An inference of class-wide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class.").

Similarly, in New Jersey, in order to state a private claim under the New Jersey Consumer Fraud Act ("NJCFA"), a consumer must allege three elements: unlawful conduct; an ascertainable loss; and a causal relationship between the unlawful conduct and the ascertainable loss. *Heyert v. Taddese*, 2013 WL 3184626 at *13 (N.J.App. June 25, 2013).

New Jersey draws a distinction between reliance and causation. *Heyer*, 2013 WL 3184626, at *13, *citing Lee v. Carter–Reed Co., L.L.C.,* 203 N.J. 496, 522 (2010) ("Causation under the CFA is not the equivalent of reliance. To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice."). Reliance is not required for recovery under the CFA, but causation is. Dabush v. Mercedes-Benz USA, LLC, 874 A.2d 1110, 1121 (App. Div. 2005) ("While the element of traditional reliance required in a fraud case need not be proven in order to recover damages under

the CFA, a private plaintiff must still "prove a causal nexus between the alleged [misrepresentation]" and his or her damages.").

"Courts have generally found causation to be established for CFA purposes when a plaintiff has demonstrated a direct correlation between the unlawful practice and the loss, but have rejected proofs of causation that were speculative or attenuated." *Heyer*, 2013 WL 3184626, at *13; *Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 248 ("In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages."); *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.* 192 N.J. 372, 389 (2007) ("Our statute essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove ascertainable loss.").

New Jersey courts apply a class-wide presumption of causation in very limited circumstances. *Varacallo v. Massachusetts Mut. Life Ins.* Co., 752 A.2d 807, 809 (N.J. Super. Ct. App. Div. 2000); *see Local No. 68 Welfare Fund*, 192 N.J. at 392, (rejecting plaintiff's attempt to use a quasi-fraud on the market theory "in place of a demonstration of an ascertainable loss or in place of proof of a causal nexus between defendant's acts and the claimed damages."). "Before applying a 'presumption of causation' to an NJCFA claim, a court must consider not only the defendants' course of conduct, but also that of the plaintiffs." *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 610 (3d Cir. 2012). Specifically, the court must consider whether plaintiff could have known the truth underlying the defendant's fraud. *Marcus*, 687 F.3d at 610 ("there was no evidence that class members could have known the truth behind the defendant's representations

and it was "inconceivable" that 'more than a very small number' would have purchased their policies despite knowing the risks that defendants allegedly concealed.").

Because Plaintiff's class potentially includes a great many individuals who bought Grove Square Coffee products because of, or in spite of, knowing that it contained instant coffee, the class includes a great number of individuals who could not prove causation or an ascertainable loss under the NJCFA.   These individuals suffered no lost value or incurred no "out of pocket expenses" as a result of the Defendant's alleged misrepresentation.   *Smith*, 2011 WL 900096, at *4.   Moreover, numerous class members could have known, appreciated, or easily learned that soluble coffee is distinct from ground coffee—precluding a presumption of causality.   *Marcus*, 687 F.3d at 610.   Since this class definition potentially sweeps in a great number of individuals that could not show harm resulting from defendant's conduct, the New Jersey class definition is fatally overbroad.

### b.  **Illinois**

To prevail on a claim for damages under the Illinois Consumer Fraud and Deceptive Practices Act, a plaintiff must prove: (1) a deceptive act or practice by the defendant; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that the defendant intended the plaintiff to rely on the deception; and (4) that actual damages were proximately caused by the deception.   *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill.2005).   In order to prove proximate causation "in a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation".   *Martinez v. River Park Place, LLC*, 980 N.E.2d 1207, 1219 (Ill. App. 2012).   The plaintiff must show that but-for the defendant's

deception, plaintiff would not have made the (injurious) purchase.   *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).   Illinois does not provide for causation to be inferred.   *Clark v. Experian Info. Solutions, Inc.*, 256 Fed.Appx. 818, 822 (7th Cir. 2007).

Plaintiffs' class definition is premised solely on *purchase* of the allegedly misrepresented product (Doc. 99, p. 18).   So, included are purchasers who never saw the allegedly deceptive advertising, or who knew the product was 'instant coffee' but purchased it anyway, or who bought the product *because* it was instant coffee.   Plaintiffs counter that because purchasers 'must' own a Keurig coffee maker, all of the purchasers therefore 'must' have believed that the Grove Square Product was of the same kind and quality that he or she had purchased for their Keurig machines from Keurig-licensed companies (Doc. 99, p. 28) ("this distinct group of consumers expected a coffee product that contained ground coffee with a filter; not a product that was overwhelmingly instant in nature.").   Plaintiffs point to the depositions of class representatives and consumer complaints.   (Doc. 53, p. 6; Doc. 53, p. 7-20; Doc 99, p. 14).

This evidence, however does not solve the irreparably overbroad class definition.   Of course, out of a sample consisting solely of individuals who have taken the time to post a complaint or become named plaintiffs to a lawsuit, many will have unmet expectations.   The Court will not assume most—or many--purchasers (of which there were approximately 700,000) had the same experience or mindset of such a narrow sample.   Deception/causation under ICFA is an individualized issue, and cannot be inferred by class representatives' mindset.   *Clark*, 256 Fed.Appx. 818, 822 (7th Cir. 2007).   Here, even the affidavits of named plaintiffs aren't consistent.   For example, Plaintiff Deborah DiBenedetto indicates all she noticed about the product was the price. (Doc. 100-5, p. 5)   Defendants point to consumer commenters who did

not purchase because of a misrepresentation, but who instead wanted instant coffee, were indifferent to instant vs. ground, or were simply interested in a lower priced product.   (Doc 108, p. 33) ("price great compared to K-cups;" "great value for the price;" "I have no problem with it being instant, if it tasted good").   As the Northern District of Illinois concluded in *Korsmo v. Am. Honda Motor Co., Inc.,* proposed class members who made purchases for reasons other than the alleged misrepresentation "were not deceived and suffered no harm, [therefore] the proposed classes are not sufficiently definite to warrant class certification of the ICFA claim or the unjust enrichment claim."   *Korsmo v. Am. Honda Motor Co., Inc.*, No. 11 C 1176, 2012 WL 1655969 at *5 (N.D. Ill. May 10, 2012)); *see also Thorogood v. Sears Roebuck and CO.*, 547 F.3d 742, 748 (7th Cir. 2008) (listing numerous reasons class members may have purchased an allegedly fraudulently advertised product apart from Defendant's representations).

As the proposed Illinois class includes a great number of improper class members, including those who "cannot show any damage, let alone damage proximately caused by [defendants'] alleged deception," the Illinois class is fatally overbroad.   *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006).

c.   **Alabama**

A false statement or deceptive practice is not actionable under the Alabama Deceptive Trade Practices Act ("ADTPA") unless it causes the plaintiff actual damages.   Ala. Code § 8-19-10(a)(1985); *EBSCO Industries, Inc. v. LMN Enterprises, Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (granting summary judgment for defendants on ADPTA claim based on earlier finding that no consumers were actually deceived by allegedly false advertising); *Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988) (no ADTPA claim

where admittedly false statement did not cause damages).   As Plaintiffs' sweeps in a great number of individuals who could not have been harmed by Defendants' conduct, and is fatally overbroad.

### d.  New York

Plaintiffs seek relief under Section 349(h) and 350 of the New York General Business Law.  "A plaintiff under Section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611-12 (NY. 2000) (citations omitted).   In *Stutman* plaintiffs alleged that because of defendant's deceptive act, they were forced to pay a $275 mortgage prepayment fee that they had been led to believe was not required.   In other words, plaintiffs alleged that defendant's material deception caused them to suffer a $275 loss.   The court found that this allegation satisfied the causation requirement.   *Id*. at 612-13.   Showing causation is required, though showing actual reliance is not.   *Id.; Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 897 (NY. 1999) ("proof that 'a material deceptive act or practice caused actual, although not necessarily pecuniary, harm' is required to impose compensatory damages.");  *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)

Section 350 prohibits "[f]alse advertising in the conduct of any business." N.Y. Gen. Bus. Law § 350.   "In order to establish a claim under either section, a plaintiff must show '(i) that the act or practice was misleading in a material respect, and (ii) that the plaintiff was injured.'" *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir. 1994).   An injured person

has been defined as one who was misled or deceived by the alleged false advertisement. *McDonald v. N. Shore Yacht Sales, Inc.*, 513 N.Y.S.2d 590, 593 (NY 1987).

Like Section 349, Section 350 requires plaintiffs to show causation to recover. *Bevelacqua*, 39 Misc. 3d, at 1216 ("While justifiable reliance is not an element of a claim under either of these provisions, a plaintiff must, nevertheless, show that the defendant's material deceptive act caused the injury.")   In *Bevalacqua,* the court dismissed the claim because of "plaintiffs' inability to establish a direct connection between their injury and [defendant]'s conduct.   *Id*.

Here, Plaintiff's class almost certainly includes a great many individuals who bought Grove Square Coffee products because of, or in spite of, knowlege that it contained instant coffee.   These purchasers are therefore not worse-off because of the alleged misrepresentation. Too many potential class members were not-mislead and/or not injured, so the class is fatally overbroad.

### e.  North Carolina

Relief under the North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA) requires actual reliance. N.C. Gen. Stat. §77-1.1; *Williams v. United Cmty. Bank*, 724 S.E.2d 543, 549 (N.C. Ct. App. 2012).   "Actual reliance is demonstrated by evidence [the] plaintiff acted or refrained from acting in a certain manner due to [the] defendant's representations." *Id*. (citing *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 662 (1995)) (inquiring into whether plaintiffs had actually seen alleged misrepresentations, and whether the misrepresentations played any role in their decision making).

Because the UDTPA unambiguously requires actual reliance, and because the proposed class likely includes great swaths of purchasers who did not rely on Defendants' alleged misrepresentation, the North Carolina class is also fatally overbroad.

### f. South Carolina

Relief under the South Carolina Unfair Trade Practices Act (UTPA) requires plaintiff to show causation. S.C. Code Ann § 39-5-140(a)(1985); *Fisher v. Pelstring*, 4:09-CV-00252-TLW, 2010 WL 2998474, at *17 (D.S.C. July 28, 2010) (Dismissing a UTPA claim, the court stated: "To recover under this statute plaintiffs must show actual causation. Because there is no causal relationship between the plaintiffs and defendant . . . the requisite proximate cause is absent."). As above, the class is overly broad to meet a causation requirement.

### g. Tennessee

To recover under the Tennessee Consumer Protection Act of 1977 ("TCPA"), a plaintiff must prove (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an "ascertainable loss of money or property. . . or thing of value." *Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 797-98 (E.D. Tenn. 2009). The TCPA does not require reliance, but does require plaintiffs show "the defendant's wrongful conduct proximately caused their injury." *Cloud Nine*, 650 F. Supp. 2d at 798. Causation under the TCPA requires "that there be some direct relation between the injury asserted and the injurious conduct alleged." *Steamfitters Local Union No. 614 Health & Welfare Fund v. Philip Morris, Inc.*, W199901061COAR9CV, 2000 WL 1390171, at *4, *6 (Tenn. Ct. App. Sept. 26, 2000). For example, in *Harvey v. Ford Motor Credit,* a

Tennessee appellate court found no causation when the "plaintiff [did] not allege that he would have refused to engage in the transaction had he known that some portion of his payment would go to the dealer (the alleged fraudulent omission).   *Harvey v. Ford Motor Credit Co.*, 03A01-9807-CV-00235, 1999 WL 486894 (Tenn. Ct. App. July 13, 1999).

Plaintiffs here cannot show that this class would have refused to engage in the transaction had they known that the product was instant rather than ground coffee, so it too is too indefinite for certification.

### 2.  State Law Unjust Enrichment Overbreadth Analysis

In addition to state law fraud claims, Plaintiffs also seek relief for unjust enrichment. "Under a typical, but certainly not uniform, definition of unjust enrichment, a party may recover if he or she proves an unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience."

If Plaintiff's class were certified to include all individuals who purchased Grove Square Coffee products, without showing reliance, deception, excessive price, or other indicia that the benefit received by the Defendant was indeed *unjust*, the class would sweep in a large number of individuals who *could not have been* harmed by Defendant's conduct.   In *Cleary v. Philip Morris*, *Inc.,* the Seventh Circuit affirmed dismissal of an unjust enrichment claim based on deceptive marketing of tobacco when the proposed class consisted of "Illinois residents who bought or smoked cigarettes." 656 F.3d 511, 519 (7th Cir. 2011).   The Court stated:

> According to the plaintiffs, the class of people with a valid unjust enrichment claim would include the consumer who bought cigarettes and was never injured in any manner by his purchase. It would include the consumer who was satisfied by his cigarette purchase and planned to continue purchasing cigarettes. It would include the consumer who would not have acted any differently had he been fully

> informed about cigarettes, but bought them anyway regardless of the defendants'
> marketing. It would include the consumer who was not deceived by the marketing
> because he was personally aware of the true nature of cigarettes, but still bought
> cigarettes despite their addictive and harmful nature—or even because of it.

*Id.* at 519.   Similarly here, the proposed class includes members who could not have been
harmed by Defendant's conduct, precluding certification.

### 3.  Ascertainability

It must be "administratively feasible for the court to determine whether a particular
individual is a member of the proposed class." *Clay v. American Tobacco Co.,* 188 F.R.D. 483,
490 (S.D. Ill. 1999).   The administrative burden of using subjective membership criteria
obviates the judicial efficiency that is the fundamental motive for class actions. *See Jamie S. v.
Milwaukee Public Schools,* 668 F.3d 481, 496 (7th Cir. 2012) (denying class certification for
indefiniteness when "identifying disabled students who might be eligible for special-education
services is a complex, highly individualized task, and cannot be reduced to the application of a
set of simple, objective criteria.");   *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981) (noting that
determining whether potential class members "knew of the existence of the regulation and were
discouraged from applying for [state heating] assistance . . .   would be a burden on the court
and require a large expenditure of valuable court time."); *Alliance,* 565 F.2d at 978 ("In those
cases in which class certification has been denied on account of indefiniteness, the primary
defect in the class definition has been that membership in the class was contingent on the state of
mind of the prospective class members.").

In *Oshana* for example, class membership was based on purchase of the product:
objective conduct. *Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 577, 580 (N.D. Ill. 2005).
Nonetheless, the Court determined the class was improper because "to recover, class members

would be required to show they were misled, deceived, tricked, or treated unfairly. Class membership implies a state of mind element that requires an individual examination of each class member." *Id*.; s*ee also Kohen v. Pacific Inv. Management Co. LLC,* 571 F.3d 672, 678 ( 7th Cir. 2009) ("[defendant] states correctly in its reply brief that 'a proper class definition cannot be so untethered from the elements of the underlying cause of action that it wildly overstates the number of parties that could possibly demonstrate injury.'"); *Simer v. Rios,* 661 F.2d 655 (7th Cir. 1981) ("The change of characterization of the issue in the case from one of state of mind to conduct should not serve as a talisman to decide the difficult issue of whether an identifiable class exists.").

Here, the only way to avoid over-inclusiveness would be to impose criteria limiting class membership to individuals *properly* captured by the underlying claim. However, any such criteria would necessarily be subjective. Limiting class membership to individuals that were actually exposed to the deceptive packaging or advertisement would be largely subjective and thus improper. *See In re Yasmin*, 2012 WL 865041, at *16. This Court sees no way to limit class membership without an impermissible plaintiff-by-plaintiff subjective inquiry. Plaintiff's proposed class is unascertainable and also fails under a routinized Rule 23 analysis.

### RULE 23 ANALYSIS

**1. Rule 23(a)(1): Numerosity**

Rule 23(a)'s first requirement is that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no fixed numerosity rule," *Westefer*, 2006 WL 2639972, at *2 (citing *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), and class sizes may range from 10 to 100,000 or more, *Abbott v.*

*Lockheed Martin Corp.*, 286 F.R.D. 388, 395 (S.D. Ill. 2012).   When evaluating potential class size, courts may "make common sense assumptions in order to find support for numerosity." *Westefer*, 2006 WL 2639972, at *2; *accord, e.g.*, *Arreola*, 546 F.3d at 798 (estimating class size based on average number of patients seen by an orthopedist per week).   Plaintiffs allege, based on sales data, that approximately 700,000 units were sold altogether and tens of thousands of units were sold in each of the eight states during the class period.   This is sufficient to satisfy the numerosity requirement.   (Doc 99, p. 26.)

### 2.   Rule 23(a)(2): Commonality

Federal Rule 23(a)(2) requires at least one question of law or fact common to the class. FED. R. CIV. P. 23(a)(2); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).   This is a low threshold that may be met with a showing that the class's claims depend on a common contention capable of class-wide resolution, even if there are other factual variations among the grievances of the class members.   *Id.* at 594.   One way to demonstrate a "class wide contention" is to show "standardized conduct by defendants toward members of the class." *Id.* at 594.   Here each state law consumer protection statute cited by Plaintiffs requires an objective showing that the Defendant engaged in an unfair or deceptive act or practice.   The class definition, however, includes consumers who purchased Grove Square Coffee before and after Defendants changed the package label to include the descriptive term "instant" and includes online purchases (Doc. 99, pp. 9-11, 19, 41; Doc. 53 p. 5-7).   These class members were subject to very different representations.   The facts therefore, are not common.   As discussed above, neither is application of the law common.   Plaintiffs cannot show commonality.

### 3.   Rule 23(a)(3): Typicality

Rule 23(a)(3) requires the "claims or defenses of the representative parties [to be] typical of the claims or defenses of the classes." FED. R. CIV. P. 23(a)(3).  For satisfactory typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. the Boeing Co.*, 633 F.3d 574, 586 (7t Cir. 2011).

Here, the class representatives have not shown that their claims are congruent with absent class members such that their interests are adequately aligned.  Each class member's understanding of "soluble" and "microground," each class member's expectations when he or she purchased the Grove Square Coffee product is at issue.  These individual variations are "not merely factual differences regarding the circumstances of how their claims initiated-they impact the very legal theories on which the class can proceed." *Oshana,* 225 F.R.D. at 580.  Because there are glaring question of how and *whether* potential class members were injured (even as-between the *named* Plaintiffs some purchasers read the script on the box, some did not), there is no typicality and class certification is improper.

### 4.  Rule 23(a)(4): Adequacy

 "The adequacy inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel."  *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

With respect to the first consideration (adequacy of representative parties), the court must ensure the class representative "possess[es] the same interest and suffered the same injury as the class members." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Circ.

2002).   The primary purpose of this inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).   The question of whether these named plaintiffs suffered the same injury as the absent class members is, of course, outstanding, as there is no way to know that all purchasers were befuddled by Defendants' packaging.

With respect to the second consideration (adequacy of counsel), Rule 23 requires a court that certifies a class also appoint counsel that will fairly and adequately represent the interest of the class.   FED. R. CIV. P. 23(g)(1(B).   Factors relevant to adequate counsel include: "work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the actions; counsel's knowledge of the applicable law, and the resources council will commit to representing the class." FED. R. CIV. P. 23(g)(1)(C)(i).   This Court recognizes named plaintiffs are represented by able and experienced counsel who have zealously advocated on behalf of all class members. Counsel is adequate.

### 5.   Rule 23(b)(2): Class-wide Injunctive Relief

Even if the Rule 23(a) requirements had been met, the proposed class must also satisfy the requirements of one of the three Rule 23(b) categories.   *Spano*, 633 F.3d at 583.   Plaintiffs seek certification for their proposed classes under Rule 23(b)(2) and 23(b)(3).   Section 23(b)(2) "authorizes a no-notice and no-opt-out class for 'final injunctive relief or corresponding declaratory relief [that operates] with respect to the class as a whole.'"   *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999).   This rule recognizes that "declaratory or injunctive relief will usually have the same effect on all the members of the class as individual suits would,"   *In re Allstate Ins. Co.*, 400 F.3d 505, 506-07 (7th Cir. 2005).   However, where

"final relief relates exclusively or predominantly to money damages" certification is improper under 23(b)(2) because class members would likely prefer independent actions, and because 23(b)(2) lacks notice and an opportunity for class members to opt out.     *In re Allstate Ins. Co.*, 400 F.3d 505 (7th Cir. 2005); *Jefferson,* 195 F.3d at 897 ("principles of sound judicial management, and constitutional considerations (due process and jury trial), all lead to the conclusion that in actions for money damages class members are entitled to personal notice and an opportunity to opt out"); FED. R. CIV. P. 23 Advisory Committee Note.

Here, Plaintiffs seek injunctive relief because consumers are allegedly still being deceived by Grove Square Coffee packaging (Doc. 53, ¶ 134-43).   Plaintiffs do not specify how the packaging should be rectified.   Indeed, this Court remains dubious that there is much substantive difference between 'instant' and 'ground,' when the product is—in either case—a packaged small cup of powder.   In any event, the Court finds that the injunctive relief sought here is secondary.   This is a damages claim and thus not properly certified under R.23(b)(2). *Pella Corp. v. Saltzman,* 606 F.3d 391, 395 (7th Cir. 2010); *In re Allstate Ins. Co.*, 400 F.3d at 507.

**Rule 23(b)(3): Predominance and Superiority**

### a.   Rule 23(b)(3): Predominance

A party seeking certification under Rule 23(b)(3) must show "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy."   *Messner*, 669 F.3d at 811.   Predominance analysis under R.23(b)(3) "begins, of course, with the elements of the underlying cause of action."   *Erica P.*

*John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011).   If an element or issue may be proved by the same evidence for all class members it is a "common question," while an individual question requires evidence that varies from member to member.   *Messner*, 669 F.3d at 815.   Although the inquiry is similar to determining commonality, the predominance standard is far higher, *Amchem Prods. v. Windsor*, 521 U.S. 591, 623–34 (1997).   Predominance requires common questions, on a whole, to outweigh individual questions.   *See In re Yasmin & Yaz Mktg.*, 275 F.R.D. 270, 276 (S.D. Ill. 2011).

The Seventh Circuit has held that, in cases requiring individual subjective inquiries into causality, individual questions predominate over common questions.   *See Siegel v. Shell Oil Co.*, 612 F.3d. 932, 935 (7th Cir. 2010) (holding individual questions predominate when causality would require "individual proof as to why a particular plaintiff purchased a particular brand of gasoline"); *Thorogood v. Sears Roebuck and CO.*, 547 F.3d 742, 747 (7th Cir. 2008) (holding individual questions predominate when "each class member who wants to pursue relief against [defendant] will have to testify to what he understands to be the meaning of [the allegedly deceptive] label or advertisement…"); *Clark v. Experian Information SDolutions, Inc.*, 256 Fed.Appx. 818 (7th Cir. 2007) (holding individual questions predominate in consumer fraud case because proving proximate cause would require individualized proof).   Here, as outlined above, each state requires individualized proof of reliance, causation, or both.   Have the class members seen the alleged misrepresentation?   Which version of the labeling did they see?   Did they notice the labeling?   What did they think the labeling text meant?   Did the packaging motivate their purchase?   Where they satisfied with the product?   Why not?   *See Oshana,* 225 F.R.D. at 580-81 ("Without determining what each member saw, heard, or knew, it is impossible

to assign liability.").   This process would far outweigh any judicial economy gained by certifying the classes.   *Simer v. Rios*, 661 F.2d 655, 674 (7th Cir. 1981) (denying certification where a series of individual trials would be required for proof of each plaintiff's subjective mindset).   Individual issues clearly predominate, making class certification improper.

### b. Rule 23(b)(3): Superiority

In determining whether a class action is superior to other forms of adjudicating class members' claims, Rule 23(b)(3) requires the court to consider:   1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; 2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; 3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and 4) the difficulties likely to be encountered in the management of a class action.   FED. R. CIV. P. 23(b)(3).

Here, the Court finds the class unmanageable in light of the essential individualized inquires necessary to class members' claims.   There are also federalism concerns here.   *See In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1020-21 (7th Cir. 2002); *Thorogood*, 547 F.3d at 747.   As in *Thorogood*, this case will wrest hundreds of thousands of claims from state courts, each with disparate bases for liability under their respective consumer protection statutes.   547 F.3d at 747.   At the very least, as the court noted in *Thorogood*, "the procedural rules by which particular jurisdictions expand or contract relief will be ignored."   *Id.*   For example, neither the Tennessee, *Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008), nor the Alabama, *Ex parte Exxon Corp.*, 725 So. 2d 930, 933-34 (Ala. 1998), consumer protection statutes authorize private

citizens to prosecute class actions.   These federalism concerns compound the difficulties of what is already an unwieldy class action.

**C.  CONCLUSION**

The requirements for Federal Rule of Civil Procedure 23 are not satisfied and Plaintiff's motion for class certification is DENIED.

**IT IS SO ORDERED.**

**DATED**: August 26, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge