# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

LINDA SUCHANEK, et. al., individually and on behalf of others similarly situated,

    Plaintiffs,

vs.

STURM FOODS, INC. and TREEHOUSE FOODS, INC.,

    Defendants.

Case No. 3:11-cv-00565-NJR-PMF

Hon. Nancy J. Rosenstengel

## DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DECERTIFY THE CLASS

Craig S. Fochler
Aaron J. Weinzierl
Jaclyne D. Wallace
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Phone: 312.832.4500
Fax:    312.832.4700

*Attorneys for Defendants Sturm Foods, Inc. and TreeHouse Foods, Inc.*

# TABLE OF CONTENTS

Table of Contents ......................................................................................................... ii

Table of Authorities .................................................................................................... iii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 1

I.      Procedural History ............................................................................................... 1

II.     Preston's Opinions ............................................................................................... 3

      A.     Preston's Price Premium Analysis ........................................................... 3

             1.     Preston Failed to Determine the Actual Value of GSC. ............................ 3

             2.     Preston Failed to Calculate any Premium Attributable to Specific Alleged Misconduct. ........................................................................... 5

      B.     Preston's Full Refund Opinions .............................................................. 6

ARGUMENT ................................................................................................................. 7

I.      Legal Standards .................................................................................................. 7

      A.     Decertification ...................................................................................... 7

      B.     Damages ................................................................................................ 8

II.     Plaintiffs Have Failed To Provide A Measure Of Damages Attributable Only To The Alleged Misconduct And That Can Be Calculated On A Classwide Basis. ............... 9

      A.     Plaintiffs' Price Premium Model Is Insufficient .................................... 10

      B.     Plaintiffs' Full Refund Model Is Unsupported ...................................... 14

      C.     Statutory Damages Are Not A Basis For Certification .......................... 16

CONCLUSION ............................................................................................................. 17

4826-2105-2477

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-395, 2013 U.S. Dist. LEXIS 184232 (E.D.N.Y. July 17, 2013)............................16

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) ..............................................................................10, 11, 12

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-cv-1831, 2014 WL 5794873 (C.D. Cal. Nov. 4, 2014) ....................................8, 12, 13

*Comcast v. Behrend*,
   133 S.Ct. 1426 (2013)........................................................................................................8, 9

*Ellis v. Elgin Riverboat Resort*,
   217 F.R.D. 415 (N.D. Ill. 2003)................................................................................................8

*Hughes v. The Ester C Company*,
   317 F.R.D. 333 (E.D.N.Y. 2016)............................................................................................10

*Jones v. Conagra Foods, Inc.*,
   No. 12-01633, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014)..........................9, 16

*Khasin v. R.C. Bigelow, Inc.*,
   No. 12-cv-2204, 2016 WL 4502500 (N.D. Cal. Aug. 29, 2016) ...............................................8

*Lanovaz v. Twinings North America*,
   No. 12-cv-2646, 2014 WL 1652338 (C.D. Cal. July 24, 2014)........................................11, 12

*Leyva v. Medline Indus., Inc.*,
   716 F.3d 510 (9th Cir. 2013) ..................................................................................................9

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ..................................................................................................8

*Mulligan v. QVC, Inc.*,
   382 Ill. App. 3d 620, 888 N.E.2d. 1190, 321 Ill. Dec. 257 (2005) ...........................................9

*In re NJOY, Inc. Cons. Class Action Litig.*,
   No. 14-cv-428, 2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ...................................................13

*In re POM Wonderful*,
   No. 10-cv-2199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)...................................8, 11, 15

4826-2105-2477

*Ries v. Arizona Beverages USA LLC*,
   No. 10-cv-1139, 2013 WL 1287416 (N.D. Cal. Mar. 13, 2013) ...............................................8

*In re Scotts EZ Seed*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ...........................................................................................14

*Walker v. Bankers Life & Cas. Co.*,
   No. 06-cv-6906, 2008 WL 2883614 (N.D. Ill. July 28, 2008) .............................................7, 8

*Weiner v. Snapple Beverage Corp.*,
   No. 07-cv-8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).....................................9, 10, 15

*Werdebaugh v. Blue Diamond Growers*,
   No. 12-cv-2724, 2014 U.S. Dist. LEXIS 173789 (C.D. Cal. Dec. 15, 2014)......................8, 13

**Statutes**

Code of Ala. § 8-19-10(a)..........................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 23(c)(1)(c) ...........................................................................................................7

4826-2105-2477

Defendants Sturm Foods, Inc. and Treehouse Foods, Inc. ("Defendants"), by and through their undersigned counsel, submit this motion and memorandum of law in support, pursuant to Federal Rule of Civil Procedure 23, to decertify the class.

## INTRODUCTION

Following the Court's order of November 2015 certifying a class, Plaintiffs provided the third expert report of Plaintiffs' expert, Candace Preston in support of their damages theories. Preston's opinions and her deposition testimony show that Plaintiffs cannot meet their burden to prove a damages method consistent with their theories of liability or on a class-wide basis. As Plaintiffs concede that Preston did not (1) attempt to determine the actual value consumers received from Grove Square Coffee ("GSC"), (2) calculate a portion of the GSC purchase price attributable to any misrepresentation, or (3) conclude that GSC had no value. As a result, Plaintiffs cannot provide evidence of an amount of damages that is consistent with their theories of liability or that applies on a class wide basis. Accordingly, individual issues predominate and the class should be decertified.[1]

## BACKGROUND

### I.    Procedural History

On appeal, the Seventh Circuit held that "[i]n determining whether to certify a consumer fraud class, the court should begin with a 'rigorous analysis' into whether the plaintiffs' 'damages are susceptible of measurement across the entire class.'" (Dkt. 176 at 18) (quoting *Comcast v. Behrend*, 133 S.Ct. 1426, 1433 (2013). Here, the Seventh Circuit noted that

---

[1] By this motion Defendants do not waive any arguments that class certification is improper, including that individual issues of reliance and causation predominate, and expressly preserve all arguments previously made. Defendants limit this motion to issues arising after the Court's order certifying a class.

4826-2105-2477

Plaintiffs would have to determine the actual value of what consumers received to determine the damages allegedly suffered as a result of alleged false advertising:

> Plaintiff's damages might be computed by taking the difference between the ***actual value*** of the package she purchased (instant coffee) and the inflated price she paid (thinking the pods contained real coffee grounds).

(Dkt. 176 at 18) (emphasis added).

On remand, Plaintiffs argued that damages could be calculated on a class-wide basis as the difference between the price consumers paid for GSC and the amount Defendants set as a goal for the cost of the ingredients of GSC during product development. The Court disagreed that the costs of ingredients was a sufficient measure of the value of GSC. (Dkt. 247 at 20).

Plaintiffs also represented that Preston could adjust her methodology as needed to account for Defendants' criticisms of it. (Dkt. 204 at 11). The Court held that while discovery closed in the case prior to the appeal to the Seventh Circuit, Plaintiffs would be provided an opportunity for Preston "to identify and isolate the premium" that consumers allegedly paid as a result of believing GSC was all ground coffee, and that if "she is unable to do so, Plaintiffs will not be able to proceed" with their partial refund theory.[2] The Court also held for full refund damages may be recoverable when a product is proven to have no value. (Dkt. 247 at 19).

---

[2] The Court stated that after remand Defendants' "for the first time in the course of this litigation, [took] exception to the full-refund model of damages." (Dkt. 247 at 20). While the case was pending before Judge Murphy, Defendants expressly argued in support of their motion for summary judgment that full refund damages was not a proper measure of damages and that, judgment should be entered against Plaintiffs because price premium damages were the proper measure and Plaintiffs provided no evidence of price premium damages. (Dkt. 137 at 17-19; Dkt. 157 at 5). Judge Murphy did not address this ground for summary judgment and, while Defendants again presented this argument to the Seventh Circuit as a basis on which that court could affirm the District Court, the Seventh Circuit also did not decide the issue.

4826-2105-2477

## II.     Preston's Opinions

Following the Court's decision on class certification, Plaintiffs provided Preston's Second Supplemental Report ("Third Report").  It is represented to contain Preston's opinion on "price premium" damages.  Plaintiffs rely upon Preston's opinions as evidence that damages can be calculated on a class-wide basis and for the amount of damages class members are owed.  (Dkt. 186 at Page ID #2806-08).

As discussed below and in Defendants' brief in support of its motion to exclude Preston's testimony (Dkt. 268, 273), Preston did not determine a price premium because, as she expressly testified, she did not determine GSC's actual value (zero or otherwise) or any price premium attributable to any misrepresentation.  In addition, Preston did not conduct any analysis to determine whether GSC had no value and did not determine it had no value.

### A.     Preston's Price Premium Analysis

#### 1.     Preston Failed to Determine the Actual Value of GSC.

Preston's Third Report merely calculates a price differential between the average price per-serving of Grove Square coffee and an average price per-serving of 23 solely instant coffee products, of which 21 were sold in bulk jar packaging.[3]  (Dkt. 268-1, Preston 2d Supp. Rpt. Table 4).  It is undisputed that a price premium methodology must determine the actual value of the subject product and the premium purchasers paid for the product above its actual value that is attributable to the alleged wrongful conduct.

Preston testified that her price differential calculation did neither.  It did not reflect the value of GSC.  In fact she testified that she did not even attempt to determine the value of GSC:

---

[3] Two of the products were sold in single-serve packets.  (Dkt. 268-1, Preston 2d Supp. Rpt. Table 4).

Q.  You didn't try to do a separate analysis of what the value of the Grove Square coffee was to a consumer?

A.  No.  No, I think that is subsumed in the retail damages which assumes the value is nothing.

Q.  Okay.  And that assumption that the value is nothing, that's an assumption that the Plaintiffs' attorneys gave to you?

A.  Yes.

Q.  That's not an opinion that you developed based upon analysis or research?

A.  That's correct.

(Dkt. 268-3, 3/2016 Preston Dep. at 28:25-29:14).

Instead of determining the value of GSC, Preston adopted Plaintiffs' attorneys' assumption that GSC had no value.  She did so despite her recognition of factors that show GSC has value to consumers.  (*See* Dkt. 268 at 17).  For example, Preston testified that GSC had value to those purchasers who understood what they were getting, were repeat purchasers or simply liked it.  (Dkt. 268-4, 8/2016 Preston Dep. at 11:7-14; 12:9-22; 14:25-15:9; 47:4-18).  Preston also acknowledged that she had reviewed correspondence from such GSC purchasers to TreeHouse's consumer relations department in preparing her report.  (Dkt. 268-3, 3/2016 Preston Dep. at 47).  Nevertheless, her price differential analysis did not consider this correspondence.

Preston further acknowledged that a product's ingredients should be considered in determining whether it is the appropriate comparable product for determining the actual value of GSC in a price premium analysis.  (Dkt. 268-4, 8/2016 Preston Dep. at 40).  She testified that if VIA or another instant and microground coffee product had approximately the same amount of microground coffee as GSC, she would consider those products more comparable to GSC than products that were all instant coffee, depending upon ingredient quality.  (*Id.*)  It is undisputed that the amounts of instant and microground in VIA and GSC are similar and that the

microground ingredients enhance their flavors.  Further, there is no evidence of any difference in the quality of the ingredients in GSC and any other instant and microground coffee, including VIA.  Nevertheless, Preston stated, without providing a basis, that VIA ingredients were not more similar to the GSC ingredients than are all instant coffee ingredients and did not use any instant and microground product in her calculation.

Also, Preston's "price premium" opinion did not consider any value attributable to any of the following GSC characteristics:  microground coffee improving instant coffee flavor, single serve packaging convenience, or plastic k-cup packaging convenience for Keurig brewer owners.  (Dkt. 268 at 2; Dkt. 268-3, 3/2016 Preston Dep. at 23-24).  Nor did she consider the fact that there are numerous examples of the exact same beverage product, coffee products and non-coffee products such as cocoa and cocoa tea, in a brand's line selling for substantially more in a k-cup than in bulk or, in some cases, even other single serve packaging.  (Dkt. 268-3, 3/2016 Preston Dep. 23:6-24:3; Dkt. 268-2, Andrien Rpt. ¶ 28).  Preston made no adjustment to her calculation of the average price of her alleged comparable to account for these differences.

### 2. Preston Failed to Calculate any Premium Attributable to Specific Alleged Misconduct.

Preston testified that her calculations are not dependent on what consumers believed about GSC.  (Dkt. 268-3, 3/2016 Preston Dep. 54:22-57:5).  This is because Preston never measured the portion of the GSC purchase price attributable to an alleged misrepresentation.  In fact, she testified that her damage calculations would not change if consumers were not deceived in making their GSC purchase.

> Q.    Do either of your damage calculations determine any damage amount for consumers who knew that Grove Square was not all ground coffee when they bought it?

4826-2105-2477

> A. They don't make a distinction among consumers. They do not—neither of my damage calculations makes a distinction on consumer knowledge.
>
> Q. So the calculations include—the amounts that you've calculated for damages include damages for consumers who knew that Grove Square, for instance, was instant microground when they bought it?
>
> A. That's correct
>
> *     *     *
>
> Q. And the amount of microground in the Grove Square, that wasn't a factor in you calculating the amount of damages?
>
> A. That's correct.
>
> *     *     *
>
> Q. Would it matter what the misrepresentation was in your analysis?
>
> A. Not based on the assumption I was given, no.
>
> Q. And in your damage calculation for retail damages, it would not have mattered whether or not people thought that it was all ground coffee simply because they recognized that the product could be used in a Keurig machine; is that correct?
>
> A. Based on the assumption I've given, my calculation would be the same.

(Dkt. 268-3, 3/2016 Preston Dep. 54:22-55:11; 55:22-25; 56:7-57:2). In other words, Preston did not determine a price premium under either of Plaintiffs' theories of liability, *e.g.*, any excess amount paid for use of "soluble" instead of "instant" or any excess amount paid for not disclosing the percentage of microground.

## B. Preston's Full Refund Opinions

Plaintiffs alternatively seek full refunds, which Preston calls "retail damages." It is undisputed that full refund damages are only available if the product has zero value. As shown

6

above, Preston recognized GSC attributes had value, *e.g.*, the ingredients, single serve packaging but did not determine the actual value of GSC. Nevertheless, her full refund analysis amounted to no more than totaling up the GSC IRI sales. Preston did not develop this "retail damages" method. She used this methodology because Plaintiffs' counsel told her to assume that no one would have purchased GSC if marketed truthfully and, therefore, it had no value. Preston contradicted this reasoning when she testified in criticizing Andrien's report, retail damages cannot be calculated if the value of the product is not known:

> Q.    So, if you haven't calculated value, then you can't know what the retail damages are?
>
> A.    That's correct.

(Dkt 268-4, 8/2016 Preston Dep. 21:19-22).

In addition, Preston's full refund analysis did not consider to whether any GSC purchasers knew that "soluble" meant " instant" or otherwise were not misled by the GSC soluble and microground packaging and the fact that the premise of Plaintiffs' omission claim is that purchasers of GSC in packaging bearing "Instant and Microground" knew GSC was instant and microground coffee and valued such a product.

## ARGUMENT

### I.    Legal Standards

#### A.    Decertification

An order regarding class certification is subject to alteration or amendment prior to final judgment. Fed. R. Civ. P. 23(c)(1)(c); *Walker v. Bankers Life & Cas. Co.*, No. 06-cv-6906, 2008 WL 2883614, at *8 (N.D. Ill. July 28, 2008) ("If certification is later deemed improvident at any time during the course of litigation, a court may decertify the class."). Where discovery after an order granting class certification reveals that the damages model requirements of class

certification cannot be met, the court should decertify the class. *See Walker*, 2003 WL 2883614, at *8; *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-1831, 2014 WL 5794873, at *12-13 (C.D. Cal. Nov. 4, 2014) (decertifying class of purchasers of allegedly falsely advertised food products based on the Plaintiff's expert's failure to provide a sufficient damages model); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724, 2014 U.S. Dist. LEXIS 173789, at *11-12 (C.D. Cal. Dec. 15, 2014) (same); *In re POM Wonderful*, No. 10-cv-2199, 2014 WL 1225184, at *24(C.D. Cal. Mar. 25, 2014) (same). On a motion for decertification, plaintiffs retain the burden of demonstrating that all of the Rule 23 requirements have been satisfied. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011); *Ellis v. Elgin Riverboat Resort,* 217 F.R.D. 415, 419 (N.D. Ill. 2003).

## B.    Damages

To satisfy the requirements of Rule 23(b)(3), Plaintiffs must provide damages model consistent with their theory of liability. *Comcast v. Behrend*, 133 S.Ct. 1426, 1433 (2013). It is not enough that Plaintiffs demonstrate the fact of damage. To proceed to trial on a class basis, Plaintiffs must provide admissible evidence of a non-speculative amount of damages that can be calculated with reasonable certainty and are measurable across the class. *See Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-2204, 2016 WL 4502500, at *5-6 (N.D. Cal. Aug. 29, 2016); *Ries v. Arizona Beverages USA LLC*, No. 10-cv-1139, 2013 WL 1287416, at *8 (N.D. Cal. Mar. 13, 2013). Further, *Comcast* requires that Plaintiffs' damages model measure only those damages attributable to the defendant's alleged misconduct. *Comcast*, 133 S.Ct. at 1433. "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

As the Seventh Circuit stated in this case, the appropriate measure of damages in a mislabeling case is the difference between the price paid for the product as labeled and the value

of the product received.  (Dkt. 176 at 18); *see also Jones v. Conagra Foods, Inc.*, No. 12-01633, 2014 U.S. Dist. LEXIS 81292, at *71-*87 (N.D. Cal. June 13, 2014) (denying certification of false advertising claims for failure to present a damage model capable of measuring the value of the food products received); *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 888 N.E.2d. 1190, 1196-98, 321 Ill. Dec. 257 (2005) (finding the proper measure of damages in a false advertising case is the difference between the actual value of the property and the value of the property as represented); *Weiner v. Snapple Beverage Corp.*, No. 07-cv-8742, 2010 WL 3119452, at *5-6 (S.D.N.Y. Aug. 5, 2010) (denying certification of false advertising claims for failure to measure the value of the product received).

Under *Comcast*, it is "the court's duty to take a 'close look' at" the model and "conduct a 'rigorous analysis'" to determine whether the model is appropriate to capture damages under plaintiff's theory of liability.  *Comcast* 133 S.Ct. at 1432-33; *see Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (under *Comcast*, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.")

## II.    Plaintiffs Have Failed To Provide A Measure Of Damages Attributable Only To The Alleged Misconduct And That Can Be Calculated On A Classwide Basis.

Plaintiffs assert two mutually exclusive theories of liability:  (1) by affirmative statements, the GSC packaging misleads purchasers into believing GSC is all ground coffee and (2) by omission, the GSC packaging misleads purchasers as to the ratio of instant and microground coffee in GSC.  They are mutually exclusive because a purchaser who thought GSC was all ground coffee could not also have been misled as to the percentage of its instant coffee component and *vice versa*.  Plaintiffs also assert two mutually exclusive damages models under each theory.  The first is that consumers received some value from GSC as a result of being misled paid a price premium.  The second is that consumers received no value and therefore are

entitled to a full refund. Even ignoring their inconsistency, neither of Plaintiffs' damages models supports class certification.

### A. Plaintiffs' Price Premium Model Is Insufficient

As set forth in detail in defendants' briefing in support of their motion to exclude Preston's damages testimony, Preston's price premium opinions, which are merely price differential calculations, are not admissible. (Dkt. 268, 273). Accordingly. Plaintiffs' lack the evidence necessary to proceed on a classwide basis and the class should be decertified. *See Weiner*, 2010 WL 3119452, at *10 (denying motion for class certification noting "Without Goedde's testimony, plaintiffs offer no evidence that a suitable methodology is available to prove the elements of causation and actual injury on a class-wide basis. Individualized inquiries would therefore be required in order to determine whether class members in fact paid a premium for Snapple beverages, and whether any such premium was attributable to the "All Natural" labeling.").

But even putting aside the admissibility of Preston's price differential opinions, those opinions do not satisfy the rigorous analysis *Comcast* requires. Plaintiffs needed to provide a damages model that first calculates GSC's actual value and isolates the price premium due solely to the allegedly misleading label statement or omission. *See supra* at 8-9; *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460 (S.D. Cal. 2014); *Hughes v. The Ester C Company*, 317 F.R.D. 333, 355 (E.D.N.Y. 2016). Preston admitted she did neither.

Calculating the value of GSC to isolate the price premium due to the alleged wrongdoing using the comparables method required identifying the most comparable product and adjusting for differences between it and GSC. *Algarin*, 300 F.R.D. at 460; (Dkt. 268 at 14-18). Instead, Preston calculated the average price of low cost substitute products. (Dkt. 268-3 at 7:9-20) (mistakenly believing that a price premium damages is "the difference that the Plaintiffs paid for

10

the . . . GSC product versus something that would be a substitute.").[4]  This calculation does not determine the value of the soluble and microground GSC coffee in a k-cup purchasers received.

It has been held in a number of cases that a "price differential" as Preston calculated, is not price premium damages due to the alleged wrongdoing and is not a legally acceptable measure of damages in a false advertising case.  The court in *In re POM Wonderful* found an analysis nearly identical to Preston's here failed to satisfy the *Daubert* requirements for determining a price premium in a false advertising class action.  There, plaintiffs' alleged that POM Wonderful falsely advertised that certain POM juice products provide various health benefits.  *In re POM Wonderful*, 2014 WL 1225184 at *1.  Their expert simply calculated the average price consumers paid for the defendant's product and the average price of other different products—orange, grape, apple and grapefruit juices—and then opined that the "price premium" was the difference between those average prices.  *Id.* at *5.  The court rejected this opinion as failing the requirements of *Daubert* and *Comcast* and decertified the class.  *Id.*

Similarly, the courts in *Lanovaz v. Twinings North America* and *Algarin* rejected experts' opinions that damages in a false advertising class action could be determined simply by comparing the price of the accused product and allegedly "comparable" products, without controlling for the impact of product differences on price.  *Lanovaz,* No. 12-cv-2646, 2014 WL 1652338, at *6 (C.D. Cal. July 24, 2014); *Algarin*, 300 F.R.D. at 460.  In *Lanovaz,* Plaintiffs expert opined that he could compare the price of Twinings tea to the price of "comparable" products that did not have the allegedly deceptive label.  *Id.*  The court rejected these opinions

---

[4] Also, Ms. Preston stated in her Third Report that the Court issued a ruling that price premium damages should be calculated based on "the price differential between" the price of GSC and the price of a serving of instant coffee.  (Dkt. 268-1 at 2).  As explained in Defendants' recent *Daubert* briefing, this is factually wrong and treating the court's statement here as a finding of fact would be contrary to law.  (Dkt. 276 at 3-4).

stating that the expert had "no way of linking the price difference, if any, to the antioxidant label or controlling for other reasons why 'comparable' products may have different prices" and refused to certify a damages class. *Id.* at *2, *19-24.

In *Algarin*, Plaintiffs alleged that Maybelline's SuperStay 24HR makeup products were deceptively advertised to not transfer and to stay for 24 hours. Plaintiffs argued that the price premium damages were merely "the difference between the [price of] SuperStay 24 HR Products and [the price of] other lipsticks, lip glosses and foundations made by Maybelline and its competitors without the 24 HR/no transfer representation but that are otherwise comparable." 300 F.R.D. at 460. In rejecting Plaintiffs' argument and denying class certification, the *Maybelline* court noted that Plaintiffs' method of only looking to prices of allegedly comparable products is inconsistent with the law and that all product differences would need to be controlled for and neutralized. 300 F.R.D. at 460-61. Like the expert opinions rejected *in re POM Wonderful*, *Lanovaz*, and *Algarin*, Preston offers only a price differential that is not tied to the actual value of GSC and, therefore, to any alleged wrongdoing.

Courts decertified consumer false advertising class actions seeking price premium damages after Plaintiffs' experts fail to isolate the premium attributable to the alleged false claim. In *Brazil*, the District Court initially certified a class of purchasers of Dole fruit cups which bore the label statement "All Natural Fruit" but which contained citric acid and ascorbic acid. *See Brazil*, 2014 WL 5794873, at *2. The court decertified the class after the analysis Plaintiffs' expert conducted failed to "sufficiently isolate the price impact" of the allegedly false label statements. *Id.* at *8. The *Brazil* expert, like Preston here, improperly compared the defendant's single serve products to those of competitors sold in single, larger containers. *Id.* at 12. ("In other words, [the expert's] model treats a 'four pack' as equal to a 16-oz can. There is

no control for packaging convenience in the model….").  Similarly, in *Werdebaugh*, the District

Court initially certified a class of purchasers of allegedly falsely advertised food products based

on the Plaintiff's expert's  representation that he could use a regression model to control for

factors impacting price and determine damages that were attributable to the allegedly misleading

label claims.  2014 U.S. Dist. LEXIS 173789, at *11-12.  When Plaintiffs' expert failed to do so

after given the opportunity in discovery, the court decertified the class.  *Id.* at *49.

Preston's price differential calculation also is not tied to the alleged wrongdoing because

it does not distinguish between Plaintiffs' theories of liability.  (Dkt. 268-3, 3/2016 Preston Dep

at 54:22-56:17).  Preston does not provide separate damage analyses or calculations for

(1) consumers allegedly misled by a GSC label statement into believing GSC was all ground

coffee and (2) consumers allegedly misled by a GSC label omission regarding its ratio of instant

and microground coffee.  Instead, without expert analysis, Preston assumes that the price

premiums would be the same in both cases but gives no reason to support a conclusion that any

price premium paid by one who misunderstood what type of product they received is the same as

by someone who got the type of product they wanted but not the formula.

Preston also failed to consider the supply-side of valuation, which also warrants

decertification.  A determination of the price premium arising from an alleged deception must

consider whether manufacturer would even sell the product at the alleged actual value.  The court

*In re NJOY, Inc. Cons. Class Action Litig.,* No. 14-cv-428, 2016 WL 787415, at *7 (C.D. Cal.

Feb. 2, 2016), excluded a price premium testimony that ignored this question, stating:  "Dr.

Harris . . . ignores the price at which NJOY, and other e-cigarette manufactures, would be

willing to sell their products."  Here too, Preston's  bulk instant as "a comparable" theory ignores

the price at which it would be feasible to sell GSC and, in effect, concludes Sturm should have

sold GSC at a loss.  (Dkt. 268-1, Preston 2d Supp. Rpt. Table 6 (2011 data); Dkt. 137-20 at Page

ID # 2193-94).

**B.      Plaintiffs' Full Refund Model Is Unsupported**

Plaintiffs' full refund or "retail damages" model also cannot withstand the rigorous

analysis *Comcast* requires.  As the Court recognized, a full refund model is based on the notion

that the product received had no value to any consumer.  (Dkt. 247 at 19) (citing *In re Scotts EZ*

*Seed*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015).  A full refund model can only be a proper measure

of damages where the product is proven to have no value to all purchasers of the product.  *In re*

*Scotts EZ Seed,* 304 F.R.D. 397, 412 (S.D.N.Y. 2015).  As the Court in *In re Scotts EZ Seed*,

noted:

> If Plaintiffs cannot prove *EZ Seed* was defective for every single
> customer, plaintiffs cannot recover the full purchase price of *EZ*
> *Seed*.  Plaintiffs content they would be entitled to damages under
> this theory even if grass grew for some customers.  This is
> incorrect as a matter of law and common sense.

304 F.R.D at 412 & n. 9 (internal citations omitted).

Here, Preston's full refund opinion lacks the necessary evidentiary support.  Preston

never determined that GSC had no value and, in fact, determined that components of GSC had

value.  She testified that instant coffee has value and that single serve packaging convenience has

value.  (Dkt. 268-4 at 10: 4-13; 17:1-18:13).  Moreover, the undisputed evidence shows that

Plaintiffs cannot meet their burden to prove that that GSC had no value to all consumers.  Some

consumers did like GSC, appreciated it as a lower-cost alternative, and repeatedly purchased the

product.  For example, one of the participants in Dr. Calder's experiment stated, in response to

the prompt "Comment on or tell someone else about the Grove Square brand recognized valuable

GSC attributes even though he may have recommended buying another product to others: "I

would recommend this coffee as having a very nice medium rich flavor.  It has nice color and

body."  (Dkt. 108-8, Calder Rpt. at 81); *see also* (Dkt. 108-8, Page ID # 1535) ("I really like this, price great compared to other k-cups.  What other kinds of k-cups do you make and is it available online?"); (*id.*) ("We love your products, both coffee and cappuccino. If you have any coupons please send our way."); (*id.*) ("I really liked your coffee."); *id.* ("Keep up the good work."); *id.* ("I think this is one of the best coffees there is."); (*id.*) ("I just love the coffee you have come out with for the Keurig . . . the taste is wonderful and a great value for the price."); (*id.*) ("I really enjoy your coffee, same as the other brands I've tried.  Amazed that it's comparable and at a better price.  Thank you for coming out with this product."); (*id.*) ("This coffee is excellent."); (*id.*) ("First time user, really enjoyed this coffee."); (*id.*) ("This coffee is wonderful.").[5]  Defendants need not show the percentage of consumers who undisputably received value, Plaintiffs must show that none did.  Plaintiffs had the opportunity to do so with Preston's Third Report but did not, and cannot.

Further, as Preston testified, she treated GSC in her analysis as having zero value based solely on Plaintiffs' counsel's assumption.  (Dkt. 268-3, 3/2016 Preston Dep. 28:5-29:14).  However, determining the value of a consumer product requires expert analysis.  *See Weiner*, 2010 WL 3119452, at *10.  Moreover, Plaintiffs' counsel's assumption does not support a conclusion that GSC had zero value.  The assumption Preston was given was that "if the [GSC] product had been marketed truthfully, consumers would not have purchased the product at all."  (Dkt. 101-12 at 3 ¶ 10).  But whether some or even all customers would not have purchased the product at the advertised price does not mean the product has no value.  *In re POM Wonderful*,

---

[5] The comments also included those from consumers who knew the product contained instant coffee, or even erroneously believed it was only instant coffee.  (Dkt. 108-8, Page ID # 1536) ("Do you sell in anything other than k-cup?  Can I buy in bulk at the factory?  Best instant coffee I've had.").

2014 WL 1225184 at *11 (rejecting Plaintiffs' contention that the assumption no one would have purchased the product means the product has no value).

Lastly, the full refund measure cannot apply to Plaintiffs' omission theory of liability. Preston conducted no analysis and provides no explanation as to how a full refund can be the proper measure of damages for consumers who understood that they were purchasing a product comprised of instant and microground coffee but thought they were getting a different ratio of instant and microground coffee. Those purchasers necessarily knew the GSC they were getting was not all ground coffee.

### C. Statutory Damages Are Not A Basis For Certification

Plaintiff's claims for statutory damages do not provide a basis for class certification without an independent and non-speculative measure of damages. As Plaintiffs did not previously contest, even where statutory damages are provided for, statutory damages do not eliminate Plaintiffs' obligation to demonstrate causation, actual damage and present a damage model capable of measuring damages across the class. *Jones*, 2014 U.S. Dist. LEXIS 81292, at *71-*87 (denying class certification finding availability of California statutory damages was "limited to those who suffer damage, making causation a necessary element of proof" and not eliminating the need for an appropriate damages model); *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 U.S. Dist. LEXIS 184232 at *83 (E.D.N.Y. July 17, 2013) (finding award of statutory damages under New York law requires proof of causation and amount of damages suffered); Code of Ala. § 8-19-10(a) (misconduct must "cause[] monetary damage").

4826-2105-2477

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that the Court enter an order decertifying the class and awarding Defendants such other and further relief as the Court deems just and equitable.

Dated: March 8, 2017

Respectfully submitted,

/s/ Aaron J. Weinzierl
Craig S. Fochler
Aaron J. Weinzierl
Jaclyne D. Wallace
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Phone: 312.832.4500
Fax: 312.832.4700

*Attorneys for Defendants Sturm Foods, Inc.
and TreeHouse Foods, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I, Aaron J. Weinzierl, an attorney, hereby certify that on March 8, 2017, I filed the

foregoing **DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT**

**OF MOTION TO DECERTIFY THE CLASS** via the Court's CM/ECF system which will

send notification to counsel of record.


/s/  Aaron J. Weinzierl
Aaron J. Weinzierl