IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDA SUCHANEK, RICHARD MCMANUS, CAROL CARR, PAULA GLADSTONE, EDNA AVAKIAN, CHARLES CARDILLO, BEN CAPPS, DEBORAH DIBENEDETTO, and CAROL RITCHIE, <br><br>Plaintiffs, <br><br>vs. <br><br>STURM FOODS, INC. AND TREEHOUSE FOODS, INC., <br><br>Defendants. | Case No. 11-CV-565-NJR-RJD |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion to Relabel, Decertify and Dismiss Modified Package Subclass (Doc. 410). For the following reasons, the motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2015, the Court certified a class as to, "All persons or consumers that during the Class Period, from September of 2010, up through the date the case is certified and notice is disseminated, who purchased Defendants' Grove Square Coffee ("GSC") products in Alabama, California, Illinois, New Jersey, New York, North

Carolina, South Carolina, and Tennessee. . ." (Doc. 247).[1] Plaintiffs assert two theories of liability: (1) by affirmative statements, the GSC packaging misleads purchasers into believing GSC is all ground coffee; and (2) by omission, the GSC packaging misleads purchasers as to the ratio of instant and microground coffee in GSC.

In 2011, Defendants released a different version of the packaging at issue (Doc. 192, p. 33). The first version stated the product was "Soluble & Microground" (the "Original Packaging"), while the second version stated the product was "Instant & Microground" (the "Modified Packaging").

In January 2015, Defendants moved to decertify the class, arguing, in part, the class definition is overly broad, and certification should have been denied, because the class is not limited to consumers who purchased the Original Packaging (Doc. 192, p. 33). At that time, and to date, Plaintiffs have not identified any class member who purchased the Modified Packaging. The Court denied the motion in this aspect, stating,

> [T]hroughout these proceedings, the Court was given the impression that the original package and modified package were nearly identical. The only difference was that the original package stated in small font that it contained "soluble and microground coffee" while the modified package said "instant and microground coffee." As best the Court can tell, the modified package still contained all the other misleading descriptions, images, and statements and still omitted what percentage of GSC was instant coffee. And regardless of the package, the problem – that GSC's package misrepresented and concealed the true nature of the product – remain the same. The Court does not believe that the single variation between the original and modified packages is so significant that it makes the packages sufficiently and meaningfully distinct and requires an independent review of each. As the litigation unfolds, if there are large and

---

[1] The Class Period was modified in July 2018 to cover the period from September 1, 2010 through September 30, 2014, when GSC was discontinued (Doc. 334).

> unmanageable differences in proving the deceptive nature of the original and modified packages, the Court may decide to exclude the modified-package-purchasers from the class or create a subclass. But, at this point, the Court does not see the different packages as an obstacle to certification of a single class

(Doc. 247, pp. 44-45).

On July 3, 2018, the Court issued an Order laying out the trial plan, dividing the class into 18 subclasses, to account for the two versions of packaging and the nine different laws governing Plaintiffs' claims proceeding to jury trial (Doc. 334).

On April 18, 2019, Defendants filed a Motion to Relabel, Decertify and Dismiss Modified Package Subclass (Doc. 410).[2] Defendants argue Plaintiffs have not identified any class member who purchased the Modified Packaging and, thus, do not have standing to bring those claims. Also, Defendants argue the Named Plaintiffs' claims are not typical of absent class members who purchased the Modified Packaging. Plaintiffs object, and contend that the Modified Packaging was similarly misleading to the Original Packaging, so they have standing to assert claims of absent class members (Doc. 411).

## DISCUSSION

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservist Committee to Stop the War*, 418 U.S. 208, 216 (1974). In addition to standing, the plaintiff in a class action

---

[2] Defendants argue the Court incorrectly divided the class into "Groups" to account for the different packaging, before creating the 18 subclasses. Defendants insist the Court should have used the word "subclass," instead. Defendants may refer to the Groups however they want. The result is the same. There are currently 18 subclasses involved in this litigation. *See Body v. Meriter Health Services Employee Retirement Plan*, 10-cv-426-wmc, 2012 WL 12995302, at *2 n.2 (W.D. Wis. Feb. 17, 2012) (referring to subclasses under an umbrella "Group").

must demonstrate the class meets the prerequisites described in Federal Rule of Civil Procedure 23, including numerosity, commonality, typicality, and adequate representation. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The standing and typicality requirements are closely aligned. *See Di Rosa v. Dodd*, 514 F. Supp. 258, 263 (E.D.N.Y. 1981) ("[S]ince Di Rosa lacks standing, he cannot represent that class because FED. R. CIV. P. 23(a) requires that the claims of the class representative must be typical of the class as a whole."). The majority of courts hold "that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012);

Defendants rely on *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012), to argue Plaintiffs do not have standing to represent absent class members who purchased the Modified Packaging. In *Miller*, the plaintiff attempted to bring a class action alleging the defendant deceptively led customers to believe that five of its products were, or contained, white chocolate and/or cocoa butter. *Id.* at 867. Miller only purchased one of the products. *Id.* The five products had some similarities in packaging, composition, and labeling, including that they were branded "Ghirardelli Chocolate," they did not contain chocolate or white chocolate, and they were sold next to products that contained chocolate or white chocolate. *Id.* at 870. The defendant moved to dismiss

the case for lack of standing as to the four products Miller did not buy. *Id.* The court held, "[T]hese similarities and Miller's other allegations about the labeling of the products do not establish the kind of similarity that courts find persuasive in conferring standing over similar (but unpurchased) products." *Id*. The court noted the products varied from baking chips, drink powders, and wafers; looked different; and were labeled differently. *Id.*

But this case is more like *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017). In *Ulrich*, the plaintiff sought to certify a class, claiming the defendant misled consumers about the protein content of four of its products. *Id.* at *1. The defendant argued the plaintiff lacked standing to raise his claims to the extent he did not purchase all of the products. *Id.* at *5. The court found the plaintiff had standing, reasoning,

> In this case, all of the Products are protein supplements sold by [the defendant], and all of them have labels that are misleading, plaintiff alleges, because they make protein content claims based at least partially on amounts of low-quality collagen protein isolate that is effectively indistinguishable. The alleged misrepresentations are the same, they all relate to the Products' quantity of protein . . . and the protein claims are inaccurate in the same manner on every Product."

*Id.* at *6.

This case is also similar to *Zemola v. Carrington Tea Company, LLC*, 17cv760-MMA (KSC), 2017 WL 4922974 (S.D. Cal. Oct. 30, 2017). In *Zemola*, the plaintiffs brought a putative class action alleging that defendants labeled a variety of coconut oil products to deceptively represent the products were healthy. *Id.* at *1. The defendant moved to dismiss the plaintiffs' claims related to products they did not purchase, for lack of standing. *Id.* at *4. The court found the plaintiffs had standing because "the composition

of the products and the alleged misrepresentations are sufficiently similar. The products' primary ingredient is coconut oil. The nutrition facts are nearly identical. And the alleged misrepresentations on each product include some variation on the 'healthy' theme." *Id.*

Here, the Original and Modified Packaging contained the same product, had virtually identical packaging, and allegedly contained the same misrepresentation and/or omission regarding the amount of instant coffee in GSC. The Court has already held that Plaintiffs have standing to represent absent class members who purchased the Modified Packaging, and that the class meets the typicality requirement under Rule 23. The Court's July 2018 Order was not intended to imply otherwise.

Instead, the Court's creation of various subclasses in its July 2018 Order (Doc. 334) was merely for trial management purposes, pursuant to the Court's broad authority under Rule 23(d) to issue orders that "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument . . . [or] deal with similar procedural matters." Rule 23(d) authorizes the Court to create subclasses for management purposes when there is no fundamental conflict underlying the class claims, 3 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:32 (5th ed.), and the subclasses are created to "expedite resolution of the case by segregating [certain factual and legal questions] which [are] common to some members of the larger class," *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 609-10 (C.D. Cal. Nov. 16, 2015) (alterations in original). When a subclass is "appropriate under Rule 23(d), it is unnecessary to evaluate it under Rule 23(c)(4) for commonality, numerosity, typicality, and adequacy of representation." *American Timber & Trading Co. v. First Nat.*

*Bank of Oregon*, 690 F.2d 781, 787 n.5 (9th Cir. 1982). Accordingly, the class does not need a new named subclass representative. Susan Bisom-Rapp, *The Use of Subclasses in Class Action Suits Under Title VII*, 9 INDUS. REL. L.J. 116, 136 (1987).

## CONCLUSION

For these reasons, Defendants' Motion to Relabel, Decertify and Dismiss Modified Package Subclass (Doc. 410) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** May 3, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**