IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDA SUCHANEK, RICHARD MCMANUS, CAROL CARR, PAULA GLADSTONE, EDNA AVAKIAN, CHARLES CARDILLO, BEN CAPPS, DEBORAH DIBENDETTO, and CAROL RITCHIE,<br><br>  Plaintiffs,<br><br>v.<br><br>STURM FOODS, INC. and TREEHOUSE FOODS, INC.,<br><br>  Defendants. | Case No. 3:11-CV-00565-NJR-RJD |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  This consumer fraud class action has been pending since June 28, 2011 (Doc. 1). On the eve of trial, after eight years of litigation, the parties agreed to settle the claims for $25 million, common fund, with no reversion to Defendants. Unfortunately, the parties have been unable to finalize the settlement agreement because of disputes over distribution of the common fund and the language on the claim forms (Docs. 429-32). They jointly seek the Court's guidance (Doc. 427).

### DAMAGES UNDER THE RELEVANT STATUTES

  Plaintiffs consist of consumers from eight states who purchased Defendants' product Grove Square Coffee ("GSC"). Each state has its own consumer fraud statute that

calls for different damages:

- **Alabama**: actual damages, or the sum of $100, whichever is greater; and treble damages in consideration of the amount of actual damages, the frequency of the unlawful acts, the number of persons affected, and whether the acts were intentional. ALA. CODE § 8-19-10.

- **California**: actual damages (at least $1,000), an injunction, restitution, and punitive damages. CAL. CIV. CODE § 1780.

- **Illinois**: actual damages. 815 ILCS § 505/10a.

- **New Jersey**: "appropriate legal or equitable relief," along with "threefold the damages sustained by any person in interest." N.J. STAT. ANN. § 56:8-19.

- **New York**: actual damages or fifty dollars, whichever is greater, and treble damages if the violation was knowing or willful. N.Y. GEN. BUS. LAW § 349(h).

- **North Carolina**: treble damages are assessed automatically; "the measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.'" *Belk, Inc. v. Meyer Corp. U.S.*, 679 F.3d 146, 165 (4th Cir. 2012).

- **South Carolina**: actual damages; treble damages if the court finds a knowing or willful violation. S.C. CODE ANN. § 39-5-140.

- **Tennessee**: actual damages; treble damages when the violation was knowing or willful. *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998).

## PLAINTIFFS' PROPOSED ALLOCATION PLAN

Plaintiffs propose the following allocation of the common fund:

**6.3** Payments to Class Members shall be calculated by the Settlement Administrator pursuant to the Plan of Allocation as follows: All Class members will be required to submit a Claim Form which requests the following information in box form: (1) approximate date of purchase; (2) likely retailer where purchase was made; (3) quantity of GSC that was purchased; and (4) total amount paid. Alabama class members will receive a maximum of $100 per Claim Form regardless of the number of units purchased; New York class members will receive a maximum of $500 per Claim Form regardless of the number of units purchased; Class members

from the remaining six states will receive a minimum of $25 per purchase, up to a maximum of three purchases, for a maximum total of $75 per Claim Form.

To the extent there are additional sums left over after the initial claim period, the Claims Administrator is authorized to make additional distributions in similar amounts to those Class Members who submitted Claim Forms. If there are not sufficient funds to make a full distribution, then the Claims Administrator shall make pro rata adjustments in the amount of the distributions.

**6.4** *Cy Pres* Distribution: If there are remaining funds after distribution of settlement awards to claimants, the Claims Administrator will request a list of names from Defendants of those consumers who already received refunds from Defendants and provide an additional payment of $50 to that consumer.

To the extent there are any remaining funds, for a period of six months, the Claims Administrator is authorized to pay claims from consumers in the United States from any other state where the GSCs were sold, who purchased the GSCs during the Class period, and who have submitted a Claim Form; these claims will be paid in the same manner as claims were paid from the six states described above; the Claims Administrator is authorized to make pro rata adjustments to these distributions if required;

To the extent there are any remaining funds, Plaintiffs' counsel will submit the names of several organizations as potential beneficiaries of any further *cy pres* distribution. Defendants will submit other potential beneficiaries of any *cy pres* distribution:

The parties agree that the Court will make the determination regarding any *cy pres* distribution in amounts to various charities.

(Doc. 430, pp. 4-5).

### DEFENDANTS' OBJECTIONS

Defendants object to Plaintiffs' proposed plan but assure they "do not seek to reduce the overall amount they agreed to pay . . . Nor do they seek a reversion of any of that amount." Nonetheless, Defendants argue Plaintiffs' plan: (1) creates a disparity

between the class members from New York and Alabama and the class members from the remaining six states; and (2) potentially compensates non-class members and individuals who would provide no release to Defendants in exchange for a portion of the fund.

Defendants state the parties agreed Defendants would pay 12.5% of their potential exposure, and Plaintiffs' plan awards New York and Alabama class members the full amount of statutory damages, as if those plaintiffs prevailed on the merits. According to Defendants, this leaves less funds for the remaining subclasses, and the second round of distribution would exacerbate this disparity. Defendants propose that the Alabama class members receive a maximum of $50 for an approved claim form, regardless of the amount of GCS purchased; New York class members receive a maximum of $100 for an approved claim form, regardless of the amount of GCS purchased; and the remaining class members receive a maximum of $20 per approved claim form. Defendants propose that after this distribution, the remaining funds should be distributed to a charity or food bank, under the Court's direction.

Defendants also disagree about the language in Plaintiffs' proposed claim form because it: (1) states, "If you purchased Grove Square Coffee, you could get a $25-$500 payment from a class action settlement;" (2) lacks any requirement that the class members attest to being deceived by GSC's packaging; and (3) lacks any requirement that the class members attest their statements are made under penalty of perjury. Defendants argue the forms "invite fraud" by referencing the dollar amount, and potentially include non-class members who purchased GSC online or were not deceived by the product. Defendants

want the form to require a sworn statement from the claimant that they were misled by the packaging; the approximate date of purchase; the likely retail store where they purchased GSC; the quantity they purchased; and the total amount paid.

## DISCUSSION

Federal Rule of Civil Procedure 23(e) requires Court-approval of class action settlements to safeguard the rights of absent class members. Approval of a settlement involves three stages and two hearings. 4 William B. Rubenstein, *Newberg on Class Actions* § 13:1 (5th ed.). First, the parties present the proposed settlement to the court for "preliminary approval." *Id.* Second, if the Court preliminarily approves the settlement, notice is sent to the class members and they are given an opportunity to object to the terms of the settlement during a fairness hearing. *Id.* Third, the Court determines whether to give "final approval" to the settlement and holds a final fairness hearing. *Id.* The ultimate inquiry is whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement is fair, reasonable, and adequate, the Court must evaluate the allocation of funds among class members. *Lucas v. Vee Pak, Inc.*, No. 12-CV-09672, 2017 WL 6733688, at *13 (N.D. Ill. Dec. 20, 2017). There are often unclaimed funds from the settlement and the Court has discretion over their distribution. 4 William B. Rubenstein, *Newberg on Class Actions* § 12:28 (5th ed.). Unclaimed funds are commonly distributed in one of four ways:

1) Reversionary fund—unclaimed funds revert to the defendant.

2) *Pro rata* redistribution—unclaimed funds are redistributed among the class members who did file claims.

3) *Escheat*—unclaimed funds go to the state or federal government.

4) *Cy pres*—unclaimed funds are sent to a charity whose goals are consistent with the underlying cause of action.

*Id.*

At the current juncture, the Court is not determining whether to preliminarily approve the settlement; the parties have not even been able to reach an agreement on the terms of the settlement. Instead, the Court is offering its opinion about specific portions of Plaintiffs' proposed plan, in order to facilitate a final settlement agreement that may be submitted for preliminary approval at a later time.

After considering the parties' briefing and the applicable law, the Court finds that Plaintiffs' proposed plan is appropriate. As an initial matter, Defendants have no real interest in the allocation of the common fund because they agreed to pay $25 million *with no reversion*. Similarly, Defendants' argument that Plaintiffs' plan unfairly favors two subclasses over the others or compensates non-class members will be appropriately raised, if at all, by members of the class. Ultimately, it is unclear why Defendants are wrangling over the allocation of the funds when the matter appears to be entirely inconsequential to them from a financial standpoint or otherwise.

Also, the Court agrees with Plaintiffs' position regarding the language of the claim forms. Defendants want to require claimants to complete sworn statements and specify where and when they purchased GCS. But the class period begins in September 2010 and the likelihood of a consumer remembering these details about an $8 box of coffee they

purchased almost a decade ago is slim. To the extent Defendants are concerned about fraud, Plaintiffs have retained a settlement administrator that is experienced in creating and overseeing the claims process in class actions. According to Plaintiffs, the administrator has a "robust fraud identification protocol." Finally, the Court rejects Defendants' proposal to require claimants to state they were misled by the GSC packaging because it would improperly insert a reliance requirement in the claims form.

In sum, Defendants' objections to Plaintiffs' proposed plan for allocation of the common fund and the language of the claim forms are **OVERRULED**. The parties **SHALL** submit a proposed settlement agreement on or before **September 26, 2019**.

IT IS SO ORDERED.

DATED:  September 12, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**