# EXHIBIT

## "A"

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between and among the Class Representatives, all Class Members, and the Defendants.

**1.    Article 1 – Recitals**

1.1 On June 28, 2011, Linda Suchanek filed a class action complaint (Case No. 3:11-cv-00565-NJR-RJD) against Sturm Foods, Inc. and Treehouse Foods, Inc. ("Defendants") in the United States District Court for the Southern District of Illinois as representative of a putative class asserting violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

1.2 Thereafter, several other plaintiffs including Edna Avakian, Carol Carr, Paula Gladstone, and Richard McManus filed complaints alleging violation of other states' consumer protection statutes against these same Defendants. Eventually, those other complaints were consolidated in the Southern District of Illinois and an Amended Complaint was filed on May 2, 2012. Plaintiffs Charles Cardillo, Ben Capps, Deborah Dibenedetto, and Carol Ritchie would be added as additional class representatives to the Amended Complaint. Doc. 53. Collectively, Avakian, Capps, Cardillo, Carr, DiBenedetto, Gladstone, McManus, Ritchie, and Suchanek, are referred to herein as "Class Representatives."

1.3 On January 7, 2013, Plaintiffs filed a Motion to Certify Class and supporting documentation. Doc. 99-101. Defendants opposed class certification, Doc. 108-109, and also filed a motion for summary judgment. After hearing oral argument, the Court denied the Motion to Certify Class, Doc. 138, and thereafter denied Plaintiffs' Motion for Reconsideration. Doc. 161. The Court also granted Defendants' Motion for Summary judgment Doc. 161; Plaintiffs timely filed a Notice of Appeal from both Orders. Doc. 163.

1.4 On appeal, the Seventh Circuit reversed the denial of class certification and the granting of summary judgment, and remanded the action for further proceedings. Doc. 176. After remand, the parties conducted further expert-related discovery. On December 16, 2014, Plaintiffs filed a renewed Motion to Certify and supporting materials. Doc. 186-188. Defendants opposed class certification, Doc. 192, and filed several motions to strike Plaintiffs' experts. Doc.194-197. On July 9, 2015, the Court heard the Motion for Class certification as well as the motions to strike experts. Doc. 236. On November 3, 2015, The Court granted in part and denied in part the Motion to Certify. Doc. 247.

1.5 On November 17, 2015, Class Representatives filed a Second Amended Complaint. Doc. 248. The Court then approved a Joint Notice Plan Doc. 260.

1.6 The Court ordered a joint settlement conference for March 22, 2017, Doc. 272, which was unsuccessful. The parties then engaged in extensive motion practice anticipating a trial date in the spring or summer of 2017. After the trial date was continued, the parties completed joint briefing regarding trial procedures at the direction of the Court. Doc. 327.

1.7 On July 3, 2018, the Court entered an order that, among other things, divided the Class into certain subgroups, Doc. 334, and on January 2, 2019, the Court entered an order further

1

dividing the Class into subclasses specific to each state whose consumer protection statutes were alleged to have been violated in any complaint filed in this Action. Doc. 359.

1.8   The case was then set for trial to begin in January of 2019. Accordingly, the Court ordered another mediation to take place. Doc. 336. That mediation took place in November of 2018 and was not successful. The Court then set the case for trial on May 13, 2019. The parties participated in a mediation conference in March 2019 led by Hon. Donald O'Connell (Ret.). Although that session was not successful, the parties continued to discuss settlement both through direct discussions and with the assistance and involvement of the mediator, Judge O'Connell, and on May 8, 2019, the parties reached agreement in principle to fully resolve their dispute. Doc. 420. The terms of the parties' settlement are memorialized in this Settlement Agreement.

1.9   The Class Representatives and Class Counsel consider it desirable and in the Class Members' best interests that the claims against Defendants be settled on behalf of the Class Representatives and the Class upon the terms set forth below, and they have concluded that such terms are fair, reasonable, and adequate and that this settlement will result in benefits to Class Representatives and the Class.

1.10  Defendants deny all liability to Plaintiffs, deny all of the claims made in the Class Action, deny all allegations of wrongdoing made in any of the complaints in this action, and deny that Plaintiffs or the Class suffered any losses. This Settlement Agreement, and the discussions between the settling parties preceding it, shall in no event be construed as, or be deemed to be evidence of, an admission or concession on Defendants' part of any fault or liability whatsoever.

1.11  The Settling Parties have concluded that it is desirable that the Class Action be finally settled upon the terms and conditions set forth in this Settlement Agreement.

1.12  Therefore, the Settling Parties, in consideration of the promises, covenants, and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree to the terms of this Settlement Agreement.

2.    **Article 2 – Definitions**

      As used in this Settlement Agreement and the Exhibits hereto, unless otherwise defined, the following terms have the meanings specified below:

2.1   "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notices to the Class; (b) all expenses and costs associated with administering claims, communicating with class members, and the distribution of funds pursuant to the Plan of Allocation, including but not limited to fees associated with implementing this Settlement Agreement, facilitating the distribution of funds pursuant to the Plan of Allocation, and all fees, expenses, and costs associated with providing notices required by CAFA. Excluded from Administrative Expenses are Defendants' internal expenses and the

2

Settling Parties' respective legal expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

2.2 "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel and to be provided in the future during the Settlement Period. The amount of Attorneys' Fees for Class Counsel shall not exceed one-third of the Gross Settlement Amount ("GSA"), which shall be recovered exclusively from the GSA. Class Counsel also will seek reimbursement for all litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, including but not limited to deposition expenses, expert witness fees, travel and meal expense, and those costs associated with the First Notice, not to exceed $550,000, which also shall be recovered exclusively from the Gross Settlement Amount. Other than their obligations under this Settlement Agreement with respect to the Gross Settlement Amount, Defendants shall have no liability whatsoever for any Attorneys' Fees and Costs.

2.3    "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715.

2.4    "Claims Deadline" means a date that is no later than six months from the date on which the Settlement Notice is first published as provided for in this Settlement Agreement.

2.6    "Claims Form" means a declaration in substantially the form attached as an Exhibit to the Declaration of Carla Peak.

2.7 "Class" means, as certified by the Court in Doc. 247 at p. 51:

> All persons or consumers that during the Class Period, from September 2010, up through the date the case is certified and notice is disseminated, who purchased Defendants' Grove Square Coffee ("GSC") products in Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina and Tennessee.

> Excluded from the Class are: (a) Defendants' Board members or executive level officers, including its attorneys; (b) persons or entities who purchased the GSC primarily for resale; (c) retailers or resellers of the GSC; (d) governmental entities, including this Court; (e) any consumer that already received a refund from Defendants; and (f) any consumer who purchased GSC online.

2.8    "Class Action" means *Suchanek et al. v. Sturm Foods, Inc. et al,* Case No. 3:11-cv-00565-NJR-RJD in the United States District Court for the Southern District of Illinois.

2.9 "Class Counsel" means Peter Burke, Esq., Patrick Cooper, Esq., Robert Fleury, Jr., Esq., Randy L. Gori, Esq., D. Todd Mathews, Esq.. W. Todd Harvey, Esq., Brian Leighton Kinsley, Esq., Michael H. Maizes, Esq., Allen Schreiber, Esq., B.J. Wade, Esq., David M. Rosengerg-Wohl, Esq., and Kem L. Marks.

3

2.10   "Class Members" means all individuals in the Class and each respective sub-class.

2.11   "Class Period" means the period from September 2010 up through 2014.

2.12   "Class Representatives" are collectively, Avakian, Capps, Cardillo, Carr, DiBenedetto, Gladstone, McManus, Ritchie, and Suchanek.

2.13   "Class Representatives' Compensation" means any amount determined by the Court to be awarded to the Class Representatives.

2.14   "Court" means the United States District Court for the Southern District of Illinois.

2.15   "Court of Appeals" means the United States Court of Appeals for the Seventh Circuit.

2.16   "Defendants" means Sturm Foods, Inc. and Treehouse Foods, Inc.

2.17   "Defense Counsel" means counsel for Defendants as of the date of this Settlement Agreement (Foley & Lardner LLP).

2.18   "Escrow Agent" means KCC Class Action Services, LLC ("KCC"), or another entity agreed to by the Parties.

2.19   "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections from the Class to the Settlement Agreement, (b) Class Counsel's Petition for Attorneys' Fees and Costs, and Class Representatives' Compensation; and (c) whether to finally approve the Settlement pursuant to Fed. R. Civ. P. 23.

2.20   "Final Order" means the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court.

2.21   "Final" means with respect to any judicial ruling, order, or judgment that the period for any motions for reconsideration, rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted review proceeding, the period after which the Final Order becomes Final is thirty (30) days after its entry.

2.22   "Gross Settlement Amount" or GSA means the sum of twenty-five million dollars ($25,000,000), contributed to the Qualified Settlement Fund pursuant to Article 5 and Article 6. The Gross Settlement Amount shall be the full and sole monetary payment made on behalf of Defendants in connection with the Settlement effectuated through this Settlement Agreement. Under no circumstances shall Defendants be required to pay or cause to be paid any amount in

4

excess of $25,000,000 under this Settlement Agreement. Defendants do not have any reversionary interest in the GSA.

**2.23** "Lead Class Counsel" means Peter Burke of Burke Harvey, LLC and Patrick Cooper of Ward & Wilson, as previously designated by the Court. Doc. 247

**2.24** "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Costs paid to Class Counsel; (b) all Administrative Expenses; (c) any and all Class Representatives' Compensation; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period, and (3) an amount estimated to account for adjustments.

**2.25** "Plaintiffs" mean the Class Representatives and the Class Members.

**2.26** "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount pursuant to Article 6 below.

**2.27** "Preliminary Order" means the order proposed by the Settling Parties and approved by the Court in connection with the Motion for Entry of the Preliminary Order to be filed by Class Representatives through Class Counsel, as described in Paragraph 3.2 and in substantially the form attached as Exhibit 1 hereto.

**2.28** "Qualified Settlement Fund" or "Settlement Fund" means the interest-bearing, settlement fund account to be established and maintained by the Escrow Agent pursuant to Article 5 hereof and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

**2.29** "Released Parties" means (a) each Defendant, (b) each Defendant's past, present, and future parent corporation(s), (c) each Defendant's past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, and (d) with respect to (a) through (c) above, all of their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, administrators, service providers, subcontractors, officers, directors, partners, agents, managers, members, employees, independent contractors, representatives, attorneys, other persons serving in fiduciary functions, insurers, co-insurers, reinsurers, shareholders, accountants, auditors, advisors, consultants, trustees, associates, and all persons acting under, by, through, or in concert with any of them.

**2.30** "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, causes of action, suits, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not

limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, that exist as of the date of the Preliminary Order, that were asserted in the Class Action, or that arise out of any of the conduct alleged in any Complaint filed in this action, whether or not pleaded in the Second Amended Complaint, including without limitation any action or omission by any any Defendant or any Released Party in connection with the production, distribution, marketing, or sale of Grove Square Coffee.

2.31 "Settlement" refers to the agreement embodied in this Settlement Agreement and its Exhibits.

2.32 "Settlement Administrator" means KCC, an independent contractor to be retained by Class Counsel.

2.33 "Settlement Agreement Execution Date" means that date on which the final signature is affixed to this Settlement Agreement.

2.34 "Settlement Effective Date" means the date on which the Final Order has become Final, provided that by such date the Settlement has not been terminated pursuant to Article 10.

2.35 "Settlement Notice" means the Notices of Class Action Settlement and Fairness Hearing to Class Members in substantially the form attached as Exhibits to the Declaration of Carla Peak. The Settlement Notice also shall inform Class Members of a Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Order and the Settlement Notice may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for an award of Attorneys' Fees and Costs; and (c) payment of and reserve for Administrative Expenses.

2.36 "Settlement Period" means the period of time that begins on the Settlement Effective Date and ends two years after the Settlement Effective Date.

2.37 "Settlement Website" means the internet website previously established for the first Notice Campaign currently existing at www.instantcoffeelawsuit.com which will be updated with information relating to the Settlement Agreement

2.38 "Settling Parties" means the Defendants and the Class Representatives, on behalf of themselves and each of the Class Members.

### 3. Article 3 – Preliminary Settlement Approval, Notice to the Class, and Objections

3.1 Class Representatives, through Lead Class Counsel, shall file with the Court motions seeking preliminary approval of this Settlement Agreement, and for entry of the Preliminary Order, which, among other things, shall:

**3.2.1** Approve the text of the Settlement Notice, to be provided to Class Members in the manner specified by paragraph 2.35, managed by the Settlement Administrator;

**3.2.2** Determine that pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Settlement Notices constitute the best notice practicable under the circumstances, provide due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and comply fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

**3.2.3** Set the Fairness Hearing for no sooner than one hundred fifty (150) days after the date the Motion for Entry of the Preliminary Order is filed, in order to determine whether (i) the Court should approve the Settlement as fair, reasonable, and adequate, (ii) the Court should enter the Final Order, and (iii) the Court should approve the application for Attorneys' Fees and Costs, and Class Representatives' Compensation;

**3.2.4** Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Lead Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to appear or supporting documents must be filed at least thirty (30) days prior to the scheduled Fairness Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation set forth above. A written objection must contain the actual written signature of the Settlement Class Member making the objection.

**3.2.5** Provide that the Settling Parties may, but are not required to, serve discovery requests, including requests for documents and notices of deposition not to exceed two (2) hours in length, on any objector within ten (10) days of receipt of the objection and that any responses to discovery or depositions must be completed within ten (10) days of the discovery request being served on the objector;

**3.2.6** Provide that any party may file a response to an objection by a Class Member at least five (5) days before the Fairness Hearing;

**3.2.7** Provide that the Fairness Hearing may, without further direct notice to the Class, other than by notice to Lead Class Counsel, be adjourned or continued by order of the Court.

**3.3** The Settling Parties shall have the right to approve a written protocol to be provided by the Settlement Administrator concerning how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

**3.4** By the date and in the manner set by the Court in the Preliminary Order, and unless otherwise set forth below, the Settlement Administrator shall:

**3.4.1** Initiate a Settlement Notice program in the form and manner to be approved by the Court, which shall be in substantially the form identified in the Declaration of

7

Carla Peak or a form subsequently agreed to by the Parties and the Court. The Notice will be published in the manner set out in the Notice Plan described in the Declaration of Carla Peak. Class Counsel also shall post a copy of the Settlement Notice on the Settlement Website.

**3.4.2** Have prepared and provided CAFA notices to the Attorney General of the United States, the Secretary of the Department of Labor, and the Attorneys General of all states in which members of the Class reside, as specified by 28 U.S.C. § 1715, within ten (10) calendar days of Class Representatives' filing of the Settlement Agreement and proposed Preliminary Order.

**3.4.3** As soon as practicable and reasonably contemporaneously with receipt of such, confirm whether each Claim Form submitted (1) is in the form required, (2) was submitted in a timely fashion, (3) is complete, (4) is signed by the claimant, and (4) to the extent practicable, has not been submitted by a person who has submitted a separate claim form and has no other indicia of fraud. The Settlement Administrator shall forward its decision and supporting documentation to Defendants and Class Counsel for the claims on a rolling basis. Defendants shall have fourteen (14) days to dispute any claims decision made by the Settlement Administrator directly to Plaintiff, after which the Parties shall meet and confer. To the extent the Parties cannot reach an agreement as to the validity of a claim, the Settlement Administrator will have the final authority to resolve all such claim disputes, and can request documentation or missing information from the claimant.

**3.4.4** Have prepared and provided a declaration to Lead Class Counsel and Defendant's Counsel prior to the submission of the Plaintiffs' Motion for Final Approval of the Class Action Settlement attesting to the compliance of the provisions of this Settlement Agreement concerning Class Notice.

**3.4.5** Perform any other tasks reasonably required to effectuate the Settlement and this Settlement Agreement, including, but not limited to, all responsibilities, obligations, and tasks referenced in any Section of this Settlement Agreement.

**3.4.6** Complete performance of all tasks under this Settlement Agreement within the Settlement Period.

**4.** **Article 4 – Final Settlement Approval**

**4.1** No later than ten (10) business days before the Fairness Hearing, Lead Class Counsel and Defense Counsel shall submit to the Court a mutually-agreed upon motion for entry of the Final Order which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Order in accordance with this Settlement Agreement. The Final Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

**4.1.1** For approval of the Settlement of the Released Claims covered by this Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

**4.1.2** For a determination pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Settlement Notice constitutes the best notice practicable under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided;

**4.1.3** For dismissal with prejudice of the Class Action and all Released Claims asserted therein whether asserted by Class Representatives on their own behalf or on behalf of the Class, or derivatively to secure relief for the Plan, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement, except for retention of jurisdiction to enforce the terms of the Settlement Agreement;

**4.1.4** That each member of the Class and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, shall be (i) conclusively deemed to have, and by operation of the Final Order shall have fully, finally, and forever settled, released, relinquished, waived, and discharged Defendants and the Released Parties from all Released Claims, and (ii) barred from suing Defendants or the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members have executed and delivered Claim Form, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

**4.1.5** That all applicable CAFA requirements have been satisfied; and

**4.1.6** That the Settlement Administrator shall have final authority to determine the amount to be allocated to each Class member pursuant to the Plan of Allocation approved by the Court.

**4.2** The Final Order shall provide that upon its entry all Settling Parties and the Plan shall be bound by the Settlement Agreement and by the Final Order.

9

**5.     Article 5 – Establishment of Qualified Settlement Fund**

5.1 No later than four (4) business days after entry of the Preliminary Order, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this Paragraph 5.1, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.2 For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (the "Code"), and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns, as well as the election described in Paragraph 5.1, shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (as defined in Paragraph 5.3 below) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in Paragraph 5.3 hereof.

5.3 Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (1) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned on the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned on the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (2) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither Defendants, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4 Defendants, or their agents or insurers (as applicable), will deposit One Million Dollars ($1,000,000.00) of the Gross Settlement Amount into the Qualified Settlement Fund (the "Funding") within twenty (20) business days after the later of (a) the entry of the Preliminary Order, or (b) the establishment of the escrow account described in Paragraph 5.1 and the Escrow Agent having furnished to Defendants in writing the escrow account name, IRS W-9 Form with tax identification number, and all necessary wiring instructions, and an additional Fifteen Million Dollars ($15,000,000.00) within forty-five (45) days of the Settlement Effective Date. Defendants shall pay the balance of the Gross Settlement Amount in accordance with paragraphs 6.3 and 6.4 of this Settlement Agreement.

5.5 The Escrow Agent shall, at the written direction of Class Counsel, invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, or FDIC-insured deposit accounts, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.6 The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion thereof, except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.7 Within sixty (60) calendar days after the Settlement Effective Date, the Gross Settlement Amount will begin to be distributed from the Qualified Settlement Fund as follows: (a) first, all Attorneys' Fees and costs shall be paid to Class Counsel within fifty (50) business days after the Settlement Effective Date; (b) second, all Administrative Expenses not paid previously, and any Class Representatives' Compensation, shall be paid within fifty (50) business days after the Settlement Effective Date; (c) third, a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties shall be set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date but before the end of the Settlement Period, (3) an amount estimated to account for calculation errors; and (d) fourth, the Net Settlement Amount will be distributed pursuant to the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

5.8 The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting and withholding obligations, if any, for amounts distributed from it. Defendants, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

11

**6.      Article 6 – Plan of Allocation**

6.1   After the Settlement Effective Date, the Settlement Administrator shall cause the Net Settlement Amount to be allocated and distributed to the Class Members in accordance with the Plan of Allocation set forth in this Article 6 and as ordered by the Court.

6.2   To be eligible for a distribution from the Net Settlement Amount, a person must be a Class Member who submits a Claim Form as to a purchase of the Defendants' Grove Square Coffee product during the Class Period that is approved pursuant to the process described in this Settlement Agreement.

6.3   Payments to Class Members shall be calculated by the Settlement Administrator pursuant to the Plan of Allocation as follows:  All Class members will be required to submit a Claim Form which requests the following information in box form: (1) approximate date of purchase; (2) likely retailer where purchase was made; (3) quantity of GSC that was purchased; and (4) total amount paid. Alabama class members will receive a maximum of $100 per Claim Form regardless of the number of units purchased; New York class members will receive a maximum of $275 per Claim Form regardless of the number of units purchased; Class members from the remaining six states will receive a minimum of $25 per purchase, up to a maximum of three purchases, for a maximum total of $75 per Claim Form. If there are not sufficient funds to make a full distribution, then the Claims Administrator shall make pro rata adjustments in the amount of the distributions.

To the extent there are additional sums left over after the distribution described in the immediately preceding paragraph of this Section 6.3, the Claims Administrator is authorized to make one additional pro rata redistribution only to those Class Members who have submitted valid claim forms as follows: (1) each New York claimant who has submitted a valid claim form may receive up to an additional $200, and (2) each claimant who has submitted a valid claim form from the remaining states except Alabama, may receive up to an additional $25.  If there are not sufficient funds to make this additional redistribution, then the Claims Administrator shall make pro rata adjustments in the amount of the additional pro rata redistributions.

6.4   Within fifteen (15) days of the end of the claim period specified in the Settlement Notice, the Settlement Administrator shall inform the Settling Parties of the total amount of those distributions to be made.   To the extent an additional deposit of the remaining Gross Settlement Amount is required to pay qualifying Class Members their settlement awards, Defendants will make the deposit within twenty (20) days of being notified of the deposit amount by the Settlement Administrator.  If after such additional deposit there are not sufficient funds to make a full distribution, then the Claims Administrator shall make pro rata adjustments in the amount of the distributions.

6.5   *Cy Pres* **Distribution**: If there are remaining funds after distribution of settlement awards to claimants, and the one additional pro rata redistribution listed above, Plaintiffs' counsel will submit the names of several charitable organizations as potential beneficiaries of any

12

*cy pres* distribution. Defendants will also submit other potential charitable organizations as potential beneficiaries of any *cy pres* distribution.

The parties agree that the Court will make the determination regarding any *cy pres* distribution in amounts to various charities.

6.6 This Plan of Allocation is based upon preliminary data regarding the Class Members who may be entitled to settlement payments. The Settlement Administrator shall be solely responsible for performing any calculations required by this Plan of Allocation.

6.7 The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendants, Defense Counsel, Lead Class Counsel, Class Counsel, and Class Representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement. Defendants and Defense Counsel shall have no liability for any such taxes. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be solely responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be considered to be wages by the Settling Parties.

6.8 Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold Defendants, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold Defendants, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

6.9 All checks issued pursuant to this Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund.

## 7. Article 7 – Attorneys' Fees and Costs and Payments to Class Representatives

7.1 Class Counsel will seek to recover their attorneys' fees, not to exceed one-third of the Gross Settlement Amount or eight million three hundred twenty five thousand dollars ($8,325,000), and litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $550,000 which shall be recovered from the Gross Settlement Amount.

7.2 Class Counsel will file a motion for an award of Attorneys' Fees and Costs and for Class Representatives' Compensation at least thirty (30) days before the deadline set in the Preliminary Order for objections to the proposed settlement, which may be supplemented

4829-1988-0603.1

thereafter. Nothing in this Settlement Agreement requires Defendants or Defendants' Counsel to take any position with respect to such request.

7.3 The Class Representatives will ask the Court to award an incentive payment for the time and effort each has personally invested in the Action on behalf of the Settlement Class. Within sixty (60) days after the Settlement Effective Date, and after receiving a W-9 form from the Class Representatives, the Settlement Administrator shall pay to the Class Representatives the amounts of any incentive payment awarded by the Court in its Final Approval Order. Court approval of any incentive payment, or its amount, is not a condition of the Settlement Agreement. Plaintiff anticipates seeking an incentive award of $25,000 for Richard McManus, and an incentive award of $10,000 for the remaining Class Representatives. Any payment under this section shall be paid exclusively from the Settlement Fund. Nothing in this Settlement Agreement requires Defendants or Defendants' Counsel to take any position with respect to such request.

8.1 The Settling Parties represent:

    **8.1.1** That they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations among their counsel and multiple mediators, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

    **8.1.2** That they assume the risk of mistake as to facts or law;

    **8.1.3** That they recognize that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement;

    **8.1.4** That they have read carefully the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each individual executing this Settlement Agreement on behalf of each of the Settling Parties; and

    **8.1.5** That they have made such investigation of the facts pertaining to the Settlement and all matters pertaining thereto, as they deem necessary.

## 9. Article 9 – Release of Claims

9.1 Upon the Settlement Effective Date, Plaintiffs and each member of the Class and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, do hereby fully, finally, and forever settle, release, relinquish, waive, and discharge Defendants and the Released Parties from all Released Claims, and agree and represent that each shall be and hereby is barred from suing any Defendants or any of the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter

14

discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members have executed and delivered Claim Form, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed.

9.2   Class Counsel and Class Representative Edna Avakian certify that they have read the provisions of California Civil Code Section 1542. Upon the Settlement Effective Date, the California Subclass (denominated "Subclass B under the Court's January 2, 2019 Memorandum and Order, Dkt. 358) shall be deemed to have waived any and all rights under California Civil Code Section 1542, which states:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**It is agreed and acknowledged that the Released Claims extend to and include unknown and unsuspected claims.**

## 10. Article 10 – Termination, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination

10.1   The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

10.1.1   The Preliminary Order and the Final Order are not entered by the Court in the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

10.1.2   This Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever; or

10.1.3   The Preliminary Order or Final Order is finally reversed on appeal, or is modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

10.2   If for any reason the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by Class Representatives shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants or their agents within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void.

**10.3** It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs or requests for incentive payments to the Class Representatives.

**10.4** In the event that the Settlement Agreement is terminated, (i) Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund; (ii) Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund shall be split evenly and paid by Class Counsel, on the one hand, and Defendants, on the other hand; and (iii) any interest earned in the Qualified Settlement Fund in excess of the Administrative Expenses shall be distributed in accordance with Paragraph 10.2.

**11.     Article 11 – Public Comments Regarding the Class Action or Settlement Agreement**

**11.1** Except as set forth explicitly below, the Settling Parties, Class Counsel, and Defense Counsel agree to keep confidential all positions, assertions, and offers made during settlement negotiations relating to the Class Action and the Settlement Agreement;

**11.2** Class Counsel will update the existing Website www.instantcoffeelawsuit.com with information relating to the Settlement Agreement. Class Counsel will post, or cause to be posted, the following documents or links to the following documents on or following the date of the Preliminary Order: the operative Amended Complaint and Order granting Class Certification, Settlement Agreement and its Exhibits, Settlement Notice, Claim Form, Class Representatives' Motion for Attorneys' Fees and Costs and for Class Representatives' Compensation, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties ("Settlement Website Information"). No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Settling Parties in writing. Class Counsel will take down the Settlement Website no later than one year after the Settlement Effective Date.

**12.     Article 12 – Enforcement and Miscellaneous**

**12.1** Only Lead Class Counsel shall have standing to seek enforcement of this Settlement Agreement on behalf of Plaintiffs and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Lead Class Counsel and direct any requests for enforcement to them. Lead Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Lead Class Counsel shall provide the monitoring necessary to assure compliance with the Settlement Agreement and any action to enforce the Settlement Agreement during the Settlement Period without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

**12.2** This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, Illinois law.

**12.3** The Settling Parties agree that the Court has personal jurisdiction over the Class and Defendants and shall maintain that jurisdiction for purposes of resolving any disputes concerning compliance with this Settlement Agreement during the Settlement Period. Any requests for the Court's assistance to resolve any such disputes may be submitted to the Court.

**12.4** The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

**12.5** Each party to this Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel of their own choosing prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel. The Settling Parties also hereby acknowledge that they have read and understand fully this Settlement Agreement and intend to be legally bound by the same.

**12.6** The headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Paragraphs they caption. References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but shall be deemed to be followed by the words "without limitation."

**12.7** This Settlement Agreement and the exhibits hereto constitute the entire agreement between the Settling Parties. Any previous memoranda regarding settlement are superseded by this Settlement Agreement. No representations, warranties, or inducements have been made to any of the Settling Parties, other than those representations, warranties, covenants, and inducements contained in this Settlement Agreement.

**12.8** The time periods and dates described herein are subject to Court approval and may be modified upon order of the Court or written stipulation of the Settling Parties.

**12.9** Each counsel or other Settling Party executing this Settlement Agreement, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that such Settling Party has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

**12.10** This Settlement Agreement may not be amended, modified, altered, or otherwise changed in any manner, except by a writing signed by a duly authorized agent of Defendants and Plaintiffs, and approved by the Court.

**12.11** The waiver by one Settling Party of any breach of this Settlement Agreement by any other Settling Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

**12.12** Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier:

IF TO THE CLASS REPRESENTATIVES:

Peter H. Burke
Burke Harvey, LLC
2400 Freeman Mill Rd.
Suite 101-N
Greensboro, NC  27406-3912

IF TO DEFENDANTS:

Craig S. Fochler
John F. Zabriskie
Foley & Lardner LLP
321 N. Clark St., Suite 2800
Chicago, Illinois 60654
cfochler@foley.com
jzabriskie@foley.com

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed.

DATED: _____

_____
Plaintiff Edna Avakian (Class Representative for California Subclass)

18

12. 9 Each counsel or other Settling Party executing this Settlement Agreement, any of its exhibits, or any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that such Settling Party has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

12.10 This Settlement Agreement may not be amended, modified, altered, or otherwise changed in any manner, except by a writing signed by a duly authorized agent of Defendants and Plaintiffs, and approved by the Court.

12.11 The waiver by one Settling Party of any breach of this Settlement Agreement by any other Settling Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

12.12 Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier:

IF TO THE CLASS REPRESENTATIVES:

Peter H. Burke

Burke Harvey, LLC

2400 Freeman Mill Rd.

Suite 101-N

Greensboro, NC  27406-3912

IF TO DEFENDANTS:

Craig S. Fochler
John F. Zabriskie
Foley & Lardner LLP
321 N. Clark St., Suite 2800
Chicago, Illinois 60654
cfochler@foley.com
jzabriskie@foley.com

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed.

DATED: 10/9/19 _____
Plaintiff Edna Avakian (Class Representative for California Subclass)

DATED:_____ _____
Plaintiff Benjamin Capps (Class Representative for South Carolina Subclass)

DATED: _____
Plaintiff Carol Carr (Class Representative for Tennessee Subclass)

DATED: _____

DATED: _____

for California Subclass)

Plaintiff Edna Avakian (Class Representative

DATED: __10/8/2019_____

for South Carolina Subclass)

Plaintiff Benjamin Capps (Class Representative

DATED: _____

Tennessee Subclass)

Plaintiff Carol Carr (Class Representative for

DATED: _____

North Carolina Subclass)

Plaintiff Carol Ritchie (Class Representative for

DATED: _____

for New York Subclass)

Plaintiff Charles Cardillo (Class Representative

DATED: _____

Representative for New Jersey Subclass)

Plaintiff Deborah DiBenedetto (Class

DATED: _____

for Illinois Subclass)

Plaintiff Linda Suchanek (Class Representative

DATED: _____

Representative for New Jersey Subclass)

Plaintiff Paula Gladstone (Additional Class

DATED: _____

Representative for Alabama Subclass)

Plaintiff Richard McManus (Class

19

DATED: _____

for California Subclass)

_____
Plaintiff Edna Avakian (Class Representative

DATED: _____

for South Carolina Subclass)

_____
Plaintiff Benjamin Capps (Class Representative

DATED: __10/8/19___

Tennessee Subclass)

*Carol Carr*

_____
Plaintiff Carol Carr (Class Representative for

DATED: _____

North Carolina Subclass)

_____
Plaintiff Carol Ritchie (Class Representative for

DATED: _____

for New York Subclass)

_____
Plaintiff Charles Cardillo (Class Representative

DATED: _____

Representative for New Jersey Subclass)

_____
Plaintiff Deborah DiBenedetto (Class

DATED: _____

for Illinois Subclass)

_____
Plaintiff Linda Suchanek (Class Representative

DATED: _____

Representative for New Jersey Subclass)

_____
Plaintiff Paula Gladstone (Additional Class

DATED: _____

Representative for Alabama Subclass)

_____
Plaintiff Richard McManus (Class

19

4829-1988-0603.1

DATED: _____                          _____
                                                   Plaintiff Edna Avakian (Class Representative
for California Subclass)


DATED:_____                           _____
                                                   Plaintiff Benjamin Capps (Class Representative
for South Carolina Subclass)


DATED: _____                          _____
                                                   Plaintiff Carol Carr (Class Representative for
Tennessee Subclass)


DATED: 10/9/2019                                   _Carol Ritchie_
                                                   Plaintiff Carol Ritchie (Class Representative for
North Carolina Subclass)


DATED: _____                          _____
                                                   Plaintiff Charles Cardillo (Class Representative
for New York Subclass)


DATED: _____                          _____
                                                   Plaintiff Deborah DiBenedetto (Class
Representative for New Jersey Subclass)


DATED: _____                          _____
                                                   Plaintiff Linda Suchanek (Class Representative
for Illinois Subclass)


DATED: _____                          _____
                                                   Plaintiff Paula Gladstone (Additional Class
Representative for New Jersey Subclass)


DATED: _____                          _____
                                                   Plaintiff Richard McManus (Class
Representative for Alabama Subclass)

4829-1988-0603.1

DATED: _____

for California Subclass)

Plaintiff Edna Avakian (Class Representative

DATED: _____

for South Carolina Subclass)

Plaintiff Benjamin Capps (Class Representative

DATED: _____

Tennessee Subclass)

Plaintiff Carol Carr (Class Representative for

DATED: _____

North Carolina Subclass)

Plaintiff Carol Ritchie (Class Representative for

DATED: 10/9/2018

for New York Subclass)

Plaintiff Charles Cardillo (Class Representative

DATED: _____

Representative for New Jersey Subclass)

Plaintiff Deborah DiBenedetto (Class

DATED: _____

for Illinois Subclass)

Plaintiff Linda Sochenek (Class Representative

DATED: _____

Representative for New Jersey Subclass)

Plaintiff Paula Gladstone (Additional Class

DATED: _____

Representative for Alabama Subclass)

Plaintiff Richard McManus (Class

19

DATED: _____

for California Subclass)

_____
Plaintiff Edna Avakian (Class Representative

DATED: _____

for South Carolina Subclass)

_____
Plaintiff Benjamin Capps (Class Representative

DATED: _____

Tennessee Subclass)

_____
Plaintiff Carol Carr (Class Representative for

DATED: _____

North Carolina Subclass)

_____
Plaintiff Carol Ritchie (Class Representative for

DATED: _____

for New York Subclass)

_____
Plaintiff Charles Cardillo (Class Representative

DATED: _10 - 08 - 2019_

Representative for New Jersey Subclass)

_Deborah D Benedetto_
Plaintiff Deborah DiBenedetto (Class

DATED: _____

for Illinois Subclass)

_____
Plaintiff Linda Suchanek (Class Representative

DATED: _____

Representative for New Jersey Subclass)

_____
Plaintiff Paula Gladstone (Additional Class

DATED: _____

Representative for Alabama Subclass)

_____
Plaintiff Richard McManus (Class

Foley & Lardner LLP
321 N. Clark St., Suite 2800
Chicago, Illinois 60654
cfochler@foley.com
jzabriskie@foley.com

     IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed.

DATED: _____

     Plaintiff Edna Avakian (Class Representative for California Subclass)

DATED:_____   _____

     Plaintiff Benjamin Capps (Class Representative for South Carolina Subclass)

DATED: _____

     Plaintiff Carol Carr (Class Representative for Tennessee Subclass)

DATED: _____

     Plaintiff Carol Ritchie (Class Representative for  North Carolina Subclass)

DATED: _____

     Plaintiff Charles Cardillo (Class Representative for New York Subclass)

DATED: _____

     Plaintiff Deborah DiBenedetto (Class Representative for New Jersey Subclass)

*10/9/19*
DATED: *Linda Suchanek*

     Plaintiff Linda Suchanek (Class Representative for Illinois Subclass)

DATED: _____

     Plaintiff Paula Gladstone (Additional Class Representative for New Jersey Subclass)

DATED: _____

     Plaintiff Richard McManus (Class Representative for Alabama Subclass)

DATED: _____

for California Subclass)

Plaintiff Edna Avakian (Class Representative

DATED:_____

for South Carolina Subclass)

Plaintiff Benjamin Capps (Class Representative

DATED: _____

Tennessee Subclass)

Plaintiff Carol Carr (Class Representative for

DATED: _____

North Carolina Subclass)

Plaintiff Carol Ritchie (Class Representative for

DATED: _____

for New York Subclass)

Plaintiff Charles Cardillo (Class Representative

DATED: _____

Representative for New Jersey Subclass)

Plaintiff Deborah DiBenedetto (Class

DATED: _____

for Illinois Subclass)

Plaintiff Linda Suchanek (Class Representative

DATED: __10/7/19_____

Representative for New Jersey Subclass)

*Paula Gladstone*

Plaintiff Paula Gladstone (Additional Class

DATED: _____

Representative for Alabama Subclass)

Plaintiff Richard McManus (Class

19

DATED: _____          _____
                                     Plaintiff Edna Avakian (Class Representative
for California Subclass)


DATED:_____           _____
                                     Plaintiff Benjamin Capps (Class Representative
for South Carolina Subclass)


DATED: _____          _____
                                     Plaintiff Carol Carr (Class Representative for
Tennessee Subclass)


DATED: _____          _____
                                     Plaintiff Carol Ritchie (Class Representative for
North Carolina Subclass)


DATED: _____          _____
                                     Plaintiff Charles Cardillo (Class Representative
for New York Subclass)


DATED: _____          _____
                                     Plaintiff Deborah DiBenedetto (Class
Representative for New Jersey Subclass)


DATED: _____          _____
                                     Plaintiff Linda Suchanek (Class Representative
for Illinois Subclass)


DATED: _____          _____
                                     Plaintiff Paula Gladstone (Additional Class
Representative for New Jersey Subclass)


DATED: _10/8/19_____              _____
                                     Plaintiff Richard McManus (Class
Representative for Alabama Subclass)

4829-1988-0603.1

ON BEHALF OF PLAINTIFFS  Edna Avakian, Benjamin Capps, Carol Carr, Carol  Ritchie, Charles Cardillo, Deborah DiBenedetto, Linda Suchanek, Paula Gladstone and  Richard McManus, individually and as Representatives of the Class.

Date: _10-10-19_____

_(signature)_

Peter H. Burke
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Telephone:  (205) 930-9091
Facsimile:   (205) 930-9054
E-Mail:  pburke@burkeharvey.com

_(signature)_  with permission
by
phb

Patrick C. Cooper
WARD & COOPER
2100A Southbridge Parkway, Suite 580
Birmingham, AL 35209

Attorneys for Plaintiffs and Class Representatives

DATED: _____          Defendant Sturm Foods, Inc.

                                    _____

                                    Name: _____

                                    Title: _____

DATED: _____          Defendant TreeHouse Foods, Inc.

                                    _____

20

Date:_____

Peter H. Burke
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Telephone:  (205) 930-9091
Facsimile:   (205) 930-9054
E-Mail:  pburke@burkeharvey.com

Patrick C. Cooper
WARD & COOPER
2100A Southbridge Parkway, Suite 580
Birmingham, AL 35209

Attorneys for Plaintiffs and Class Representatives

DATED: October 10, 2019        Defendant Sturm Foods, Inc.

Name:  Jo E. Osborn
Title:  Vice President + Assistant Secretary

DATED: October 10, 2019        Defendant TreeHouse Foods, Inc.

Name:  Jo E Osborn
Title:  Vice President, Assistant General
Counsel, & Assistant
Secretary

20

# EXHIBIT

# "1"

<u>Legal Notice</u>

# If you purchased Grove Square Coffee, you could get $25–$275 from a class action settlement.



A settlement has been reached with Sturm Foods, Inc. and Treehouse Foods, Inc. ("Defendants") in a class action lawsuit about whether the advertising and labeling of Grove Square Coffee ("GSC") products for use in Keurig® brewing machines misled consumers into believing that GSC light, medium and dark roast coffee contained premium, ground coffee. Defendants deny any wrongdoing. The Court has not decided which side is right.

**Who is included?** You are included in the settlement as a "Class Member" if you purchased GSC products from a retail store in Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, or Tennessee any time from September 2010 through [DATE].

**What does the settlement provide?** Defendants have agreed to create a $25,000,000 Settlement Fund, which, after deducting attorneys' fees, costs and expenses, administrative expenses, and service awards, will be used to pay Class Members who submit valid Claim Forms.

Class Members who submit a valid Claim Form for purchases made in: (1) Alabama will receive up to $100 per Claim Form regardless of the number of GSC products purchased; (2) New York will receive up to $275 per Claim Form regardless of the number of GSC products purchased; and (3) California, Illinois, New Jersey, North Carolina, South Carolina, and Tennessee will receive $25 per GSC product purchased, for up to three purchases, for up to $75 per Claim Form. Payment amounts may be reduced on a proportionate basis, if needed, to pay all valid claims.

**How do I get a payment?** You must submit a valid Claim Form by [DATE]. Claim Forms may be submitted online at www. InstantCoffeeLawsuit.com or printed from the website and mailed to the address on the form. Claim Forms are also available by calling 1-XXX-XXX-XXXX.

**Your other options.** If you do nothing, you will not get a settlement payment. You may object to the settlement and notify the Court that you or your lawyer intend to appear at the Court's fairness hearing. Objections are due [DATE]. Unless you excluded yourself in 2016, you agreed to be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action, including the claims released by the Settlement Agreement, and you gave up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the claims made in this lawsuit. Complete information, including Settlement Agreement, is available at www. InstantCoffeeLawsuit.com.

**The Court's hearing.** The Court will hold a hearing in this case (*Suchanek v. Sturm Foods, Inc. et al.*, Case No. 3:11-cv-00565-NJR-RJD) at __:__ _.m. on [DATE] at the U.S. District Court for the Southern District of Illinois, 750 Missouri Avenue, East St. Louis, Illinois 62201. At the hearing, the Court will decide whether to approve the settlement; Class Counsel's request for attorneys' fees ($8,325,000) and costs and expenses ($____), and service awards to the Class Representatives ($25,000 for McManus and $10,000 each for the other eight). You or your lawyer may appear at the hearing at your own expense.

**1-XXX-XXX-XXXX**
**www.InstantCoffeeLawsuit.com**

# EXHIBIT

# "2"

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

# If you purchased Grove Square Coffee, you could get a $25-$275 payment from a class action settlement.

*A federal court authorized this Notice. It is not a solicitation from a lawyer.*

- A $25 million settlement has been reached with Sturm Foods, Inc. and Treehouse Foods, Inc., ("Defendants") in a class action lawsuit about the advertising and labeling of Grove Square Coffee products for use in Keurig® brewing machines.

- The Defendants have agreed to settle the lawsuit and provide cash payments to customers who purchased qualifying Grove Square Coffee Products.

- You are included in this settlement as a Class Member if you purchased (1) Grove Square Coffee Light Roast, (2) Grove Square Coffee Medium Roast, or (3) Grove Square Coffee Dark Roast (together, "GSC products") in Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, or Tennessee any time from September 2010 through [DATE].

- Your rights are affected whether you act or don't act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM**<br>**DEADLINE: MONTH XX, 2019** | This is the only way you can receive a payment from this settlement. |
| **OBJECT TO THE SETTLEMENT**<br>**DEADLINE: MONTH XX, 2019** | You may object to the settlement or any part of it by writing to the Court about why you don't like the settlement. If you object, you may also file a claim for a cash payment. |
| **GO TO A HEARING ON [DATE]** | You may object to the settlement and ask the Court for permission to speak at the Fairness Hearing about your objection. |
| **DO NOTHING** | You will not get a payment from this settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendants about the legal claims resolved by this settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ......................................................................................................................**PAGE #**
   1.  Why was this Notice issued?
   2.  What is this lawsuit about?
   3.  What is a class action?
   4.  Was there a previous Notice in this case?
   5.  Why is there a settlement?

**WHO IS INCLUDED IN THE SETTLEMENT** ...........................................................................................**PAGE #**
   6.  How do I know whether I am part of the settlement?
   7.  Are there exceptions to being included?
   8.  What if I am still not sure whether I am part of the settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** ......................................................**PAGE #**
   9.  What does the settlement provide?
   10. How much will my payment be?

**HOW TO GET A SETTLEMENT PAYMENT—SUBMITTING A CLAIM FORM** .............................................**PAGE #**
   11. How do I get a payment from the settlement?
   12. When would I get my settlement payment?
   13. What rights am I giving up to get a payment and stay in the Class?
   14. What are the Released Claims?

**THE LAWYERS REPRESENTING YOU** ..................................................................................................**PAGE #**
   15. Do I have a lawyer in this case?
   16. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ....................................................................................................**PAGE #**
   17. How do I tell the Court that I do not like the settlement?
   18. May I come to Court to speak about my objection?

**THE COURT'S FAIRNESS HEARING** ..................................................................................................**PAGE #**
   19. When and where will the Court decide whether to approve the settlement?
   20. Do I have to come to the hearing?
   21. May I speak at the hearing?

**IF YOU DO NOTHING** ......................................................................................................................**PAGE #**
   22. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ......................................................................................................**PAGE #**
   23. How do I get more information?

## BASIC INFORMATION

### 1. Why was this Notice issued?

A court authorized this Notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval to the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Nancy J. Rosenstengel of the United States District Court for the Southern District of Illinois is overseeing this class action. The case is known as *Suchanek v. Sturm Foods, Inc. et al.*, Case No. 3:11-cv-00565-NJR-RJD. The people that filed this lawsuit are called the "Plaintiffs" and the companies they sued, Sturm Foods, Inc. and Treehouse Foods, Inc., are called the "Defendants."

### 2. What is this lawsuit about?

This lawsuit is about the packaging, marketing and distribution of Grove Square Coffee ("GSC"). Plaintiffs allege that GSC, through its marketing and advertising of GSC, misled consumers into believing that Grove Square Coffee Light Roast, Grove Square Coffee Medium Roast, and Grove Square Coffee Dark Roast products for use in Keurig® brewing machines contained premium, ground coffee when the products actually consisted of more than 95% instant coffee. Plaintiffs argue the Defendants violated various state consumer protection and unjust enrichment laws. The Defendants deny and wrongdoing and deny all of the allegations made in the lawsuit.

### 3. What is a class action?

In a class action, one or more people called Class Representatives (in this case, Edna Avakian, Ben Capps, Charles Cardillo, Carol Carr, Deborah DiBenedetto, Paula Gladstone, Richard McManus, Carol Ritchie, and Linda Suchanek) sue on behalf of other people with similar claims. Together, the people included in the class action are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Was there a previous Notice in this case?

Yes, a Notice was issued in the fall of 2016. That Notice explained that the Court decided that the case could proceed as a class action. It also explained that unless you excluded yourself by September 16, 2016 you were agreeing to stay in the Class, be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action, and give up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the subject matter of this lawsuit.

### 5. Why is there a settlement?

The Court did not decide in favor of the Class Representatives or the Defendants. Instead, all parties agreed to a settlement. This way, they avoid the cost and burden of a trial and the people affected can get benefits. The Class Representatives and their attorneys think the settlement is best for all Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

### 6. How do I know whether I am part of the settlement?

The settlement includes all persons or consumers who purchased GSC products in Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, and Tennessee anytime from September 2010 through [DATE] in a retail store.

Below are images of some of the GSC products that are included in the settlement. You are a Class Member regardless of the quantity or box count of GSC products purchased.

  

### 7. Are there exceptions to being included?

Yes, you are <u>not</u> included in the settlement if you (a) purchased GSC products online, (b) purchased GSC primarily for resale, (c) are a retailer or reseller of GSC, (d) are a member of Defendants' Board or an executive level officer, including its attorneys; (d) are a governmental entity, including this Court, or (e) are a consumer that already received a refund from Defendants.

### 8. What if I am still not sure whether I am part of the settlement?

If you are not sure whether you are included, call 1-XXX-XXX-XXXX, go to www.InstantCoffeeLawsuit.com or write to one of the lawyers listed in Question 15 below.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

### 9. What does the settlement provide?

The Defendants have agreed to create a $25,000,000 Settlement Fund to settle the lawsuit. After deducting attorneys' fees and costs, administrative expenses, and Class Representative service awards, the "Net" Settlement Fund will be used to make payments to Class Members who submit valid Claim Forms.

### 10. How much will my payment be?

Payment amounts will vary based on the total number of GSC products purchased and the state in which the purchases were made. For example, Class Members who submit a valid Claim Form for purchases made in:

- **Alabama** will receive a maximum of $100 per Class Member regardless of the number of GSC products purchased;
- **New York** will receive a maximum of $275 per Class Member regardless of the number of GSC products purchased;
- **California, Illinois, New Jersey, North Carolina, South Carolina**, and **Tennessee** will receive a minimum of $25 per GSC product purchase, up to a maximum of three purchases, for a maximum total of $75 per Class Member.

Payment amounts may be reduced on a proportionate basis, if needed, to pay all valid claims. If, after making the additional payments described in the Settlement Agreement, money remains in the Net Settlement Fund it will be distributed as a *cy pres* payment at the direction of the Court.

## HOW TO GET A SETTLEMENT PAYMENT—SUBMITTING A CLAIM FORM

### 11. How do I get a payment from the settlement?

You must complete and submit a Claim Form by **[Month __, 2019]**. Claim Forms may be submitted online at www.InstantCoffeeLawsuit.com or printed from the website and submitted to the Claims Administrator at the address on the form. Claim Forms are also available by sending an email to info@InstantCoffeeLawsuit.com, calling 1-XXX-XXX-XXXX or by writing to the Settlement Administrator, *Suchanek v. Sturm Foods, Inc.* Settlement Administrator, P.O. Box _____, Louisville, KY _____-_____.

### 12. When would I get my settlement payment?

The Court will hold a hearing on [Fairness Hearing date] to decide whether to grant final approval to the settlement. If the Court approves the settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will be distributed as soon as possible, only if and when the Court grants final approval to the settlement and after any appeals are resolved.

### 13. What rights am I giving up to get a payment and stay in the Class?

Unless you excluded yourself during the original Notice in 2016 you agreed to be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action and you gave up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the subject matter of this lawsuit.

If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants and the Released Parties (*see* next question) about the legal issues resolved by this settlement. The rights you are giving up are called Released Claims.

## 14. What are the Released Claims?

If and when the settlement becomes final, Class Members will permanently release (a) Sturm Foods, Inc. and Treehouse Foods, Inc., (b) each Defendant's past, present and future parent corporations, (c) each Defendant's past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns and (d) with respect to (a) through (c) above, all of their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, assigns, administrators, service providers, subcontractors, officers, directors, partners, agents, managers, members, employees, independent contractors, representatives, attorneys, other persons serving in fiduciary functions, insurers, co-insurers, reinsurers, shareholders, accountants, auditors, advisors, consultants, trustees, associates, and all persons acting under, by, through, or in concert with any of them (the "Released Parties") from all any and all actual or potential claims, actions, demands, rights, obligations, causes of action, suits, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, that exist as of the date of the Preliminary Order, that were asserted in the Class Action, or that arise out of any of the conduct alleged in any Complaint filed in this action, whether or not pleaded in the Second Amended Complaint, including without limitation any action or omission by any Defendant or any Released Party in connection with the production, distribution, marketing, or sale of Grove Square Coffee (the "Released Claims").

More details about the claims and parties you will be releasing are described in Sections 2.26 and 2.27 of the Settlement Agreement, available at www.InstantCoffeeLawsuit.com.

## THE LAWYERS REPRESENTING YOU

## 15. Do I have a lawyer in this case?

Yes. Judge Rosenstengel appointed Peter H. Burke and W. Todd Harvey of Burke Harvey, LLC, and Patrick C. Cooper and James Ward of Ward & Wilson to represent you and other Class Members as "Class Counsel." These law firm and lawyers are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 16. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorneys' fees of up to $8,325,000 and litigation costs and expenses of up to $_____. They will also ask the Court to approve a $25,000 service award for Richard McManus and $10,000 service awards to each of the remaining Class Representatives. The Court may award less than these amounts. Any amounts awarded by the Court will be paid from the $25 million Settlement Fund prior to making payments to Class Members who submit valid Claim Forms.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

## 17. How do I tell the Court that I do not like the settlement?

If you are a Class Member, you can object to the settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. Your objection must be in writing and include: (1) the case name and number, *Suchanek v. Sturm Foods, Inc. et al.*, Case No. 3:11-cv-00565-NJR-RJD; (2) your name, address, and phone number; (3) the name, address, and telephone number of your attorney, if you are represented by counsel; (4) the reasons why you object to the settlement,

including any supporting documents; (5) a statement indicating whether the objection applies only to you, a specific subset of the class, or to the entire class; (6) a statement indicating whether you or your attorney intend to appear at the Court's Fairness Hearing; and (7) your signature. Mail your objection to all three addresses below postmarked on or before **[Month ___, 2019]**.

| The Court | Class Counsel | Defense Counsel |
|---|---|---|
| United States District Court Southern District of Illinois 750 Missouri Avenue East St. Louis, IL 62201 | Peter H. Burke Burke Harvey, LLC 2400 Freeman Mill Rd. Suite 101-N Greensboro, NC  27406-3912 | Craig S. Fochler Foley & Lardner LLP 321 North Clark Street Suite 2800 Chicago, IL 60654-5313 |

### 18. May I come to Court to speak about my objection?

Yes. You or your attorney may speak at the Fairness Hearing about your objection. To do so, you must include a statement in your objection indicating that you or your attorney intends to appear at the Fairness Hearing. Remember, your objection must be postmarked by **[Month ___, 2019]** and sent to all three addresses in Question 17.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 19. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at __:__ __.m. on [date] at the United States District Court for the Southern District of Illinois, 750 Missouri Avenue, East St. Louis, Illinois 62201. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. It will also consider whether to approve Class Counsel's request for an award of attorneys' fees, costs and expenses, as well as the Class Representative's service awards. If there are objections, the Court will consider them. Judge Rosenstengel will listen to people who have asked to speak at the hearing (*see* Question 20 above). After the hearing, the Court will decide whether to approve the settlement.

### 20. Do I have to come to the hearing?

No. Class Counsel will answer any questions Judge Rosenstengel may have. However, you are welcome to come to the hearing at your own expense. If you send an objection, you do not have to come to court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 21. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. If you did not properly file an objection (*see* Question 17 above), you must file a notice of intention to appear with the Court and send a copy to Class Counsel and Defense Counsel. Your notice of intention to appear must be filed <u>and</u> postmarked on or before **[Month ___, 2019]**.

## IF YOU DO NOTHING

### 22. What happens if I do nothing at all?

If you are Class Member and you do nothing, you will not receive a settlement payment.

## GETTING MORE INFORMATION

### 23. How do I get more information?

This Notice summarizes the proposed settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement, Claim Form, and other related documents are available at www.InstantCoffeeLawsuit.com. Additional information is also available by calling 1-XXX-XXX-XXXX or by writing to *Suchanek v. Sturm Foods, Inc.* Settlement Administrator, P.O. Box ____, Louisville, KY ____-____. Publicly-filed documents can also be obtained by visiting the Courthouse during business hours or accessing the Court's online docket via PACER.

---

**QUESTIONS? CALL 1-XXX-XXX-XXXX TOLL-FREE OR VISIT WWW.INSTANTCOFFEELAWSUIT.COM**