**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LINDA SUCHANEK, et. al., individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiffs, | ) Case No. 3:11-cv-00565-NJR-RJD ) |
| v. | ) ) |
| STURM FOODS, INC., and TREEHOUSE FOODS, INC., | ) ) ) |
| Defendants. | ) |

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**
_____

**INTRODUCTION**

This Settlement is the culmination of eight years of litigation resulting in a

$25 million Settlement Fund with no right of reversion, which will provide money

to consumers in eight states who purchased Defendants' Grove Square Coffee

("GSCs") during the Class period.  These consolidated actions alleged Defendants'

packaging of its GSCs were misleading or tended to mislead a reasonable

consumer acting under reasonable circumstances, thereby violating each state's

consumer protection statute. Defendants denied and continue to deny any liability.

This monetary payment will provide meaningful relief to any class member

who submits a valid claim. Under the Settlement's Plan of Allocation, the Class and each of the sub-classes, will share the Settlement based on a formula which considers the alleged injury to each class member and the relief available under his or her state consumer protection statute.   As the names and addresses of the harmed consumers are not known, Plaintiffs' counsel has devised a robust notice plan to inform class members of the Settlement.

Plaintiffs filed this action over eight years ago. Defendants have vigorously fought the allegations in this case throughout. Initially, Defendants were successful in defeating class certification and obtaining summary judgement against each of the class representatives.   After a successful appeal to the Seventh Circuit, Plaintiffs continued to litigate against the Defendants who continued to oppose class certification.  Eventually Plaintiffs obtained class certification, from which Defendants unsuccessfully attempted an interlocutory appeal.

Defendants then attempted to strike Plaintiffs experts and also moved to decertify the class. The week before trial, Defendants again moved to decertify one group of the Plaintiff subclasses, those who purchased the modified packaging of the product.  Again, Defendants' attempt to decertify the Class was unsuccessful. The case has been vigorously fought before this Court, the Seventh Circuit, literally all the way to the day-of-trial, only resolving two days before a jury was to be seated.  Months later, the Parties were required to seek the Court's guidance in

order to reduce the Settlement to writing.  Plaintiffs assert that the monetary relief obtained through this Settlement significant for the Class.

The Settlement was the product of extensive arms-length negotiation with the assistance of retired Judge O'Connell, following earlier mediations with retired Judge Norton and, separately, with one magistrate judge from the Southern District of Illinois. These mediations followed years of contentious litigation involving fact and expert discovery.  In fact, even after reaching agreement on the settlement's main terms, it took several months for the parties to submit the written settlement agreement. See Doc. 438.

In light of the litigation risks further prosecution of this action would inevitably entail,  it is proper for the Court to: (1) preliminarily approve the proposed Settlement; (2) approve the proposed form and method of notice to the Class (and sub-classes); and (3) schedule a hearing at which the Court will consider final approval of the Settlement.

## THE CLAIMS IN THE CASE

Plaintiffs alleged Defendants sold their GSCs to a targeted consumer, a Keurig user, who up until the launch of the GSCs, had a choice of 100% ground coffee or other coffee products with a filter for use in their Keurig brewer. Defendants' GSCs, however, contained at least 96% instant coffee with no filter, a type of product that Plaintiffs allege a Keurig consumer would not expect to use in

his or her brewer.  Plaintiffs alleged that Defendants sale of the GSCs violated the consumer protection statutes of the following states: (1) Alabama; (2) California; (3) Illinois; (4) New Jersey; (5) New York; (6) North Carolina; (7) South Carolina; and (8) Tennessee.

Defendants denied all wrong doing and continue to deny any wrongdoing. Defendants further assert they have valid defenses to Plaintiffs' claims and claimed damages.

## THE ACTION

On June 28, 2011, Linda Suchanek filed a class action complaint (Case No. 3:11-cv-00565-NJR-RJD) against Sturm Foods, Inc. and Treehouse Foods, Inc., ("Defendants") in the United States District Court for the Southern District of Illinois as representative of a putative class asserting violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

Thereafter, several other Plaintiffs including Edna Avakian, Carol Carr, Paula Gladstone, and Richard McManus, filed complaints alleging violation of other states' consumer protection statutes against these same Defendants. Eventually, those other complaints were consolidated in the Southern District of Illinois and an Amended Complaint was filed on May 2, 2012.  Plaintiffs Charles Cardillo, Ben Capps, Deborah Dibenedetto, and Carol Ritchie were added as additional class representatives to the Amended Complaint. Doc. 53.  Collectively,

Avakian, Capps, Cardillo, Carr, DiBenedetto, Gladstone, McManus, Ritchie, and Suchanek, are referred to herein as "Class Representatives".

The litigation included contentious discovery that eventually included production of more than thirty thousand pages of documents, lengthy expert reports of several different experts, several rounds of expert depositions, and depositions of multiple other fact-witnesses.

On January 7, 2013, Plaintiffs filed a Motion to Certify Class and supporting documentation. Doc. 99-101. Defendants opposed class certification, Doc. 108-109, and also filed a motion for summary judgment. After hearing oral argument, the Court denied the Motion to Certify Class, Doc. 138, and thereafter, denied Plaintiffs' Motion for Reconsideration. Doc. 161. The Court also granted Defendants' Motion for Summary judgment Doc. 161; Plaintiffs timely filed a Notice of Appeal from both orders. Doc. 163.

On appeal, the Seventh Circuit reversed the denial of class certification and the granting of summary judgment and remanded the action for further proceedings. Doc. 176. After remand, the parties conducted further expert related discovery. On December 16, 2015, Plaintiffs filed a renewed Motion to Certify and supporting materials. Doc. 186-188. Defendants opposed class certification, Doc. 192, and filed several motions to strike Plaintiffs' experts. Doc.194-197. On July 9, 2015, the Court heard the Motion for Class certification as well as the

motions to strike experts. Doc. 236.  On November 3, 2015, the Court granted in part and denied in part the Motion to Certify Class. Doc. 247.

On November 17, 2015, Class Representatives filed a Second Amended Complaint. Doc. 248.  The Court then approved a Joint Notice Plan Doc. 260.  The Court ordered a joint settlement conference for March 22, 2017, Doc. 272, which was unsuccessful. The parties then engaged in extensive motion practice anticipating a trial date in the spring or summer of 2017.  After the trial date was continued, the parties completed joint briefing regarding trial procedures at the direction of the Court. Doc. 327.

The case was then set for trial to begin in January of 2019. Accordingly, the Court ordered another mediation to take place. Doc. 336.  That mediation took place in November of 2018 and was not successful. The Court eventually moved the trial date to May 13, 2019.  The parties continued to discuss settlement, attending another mediation conference with retired Judge O'Connell in March of 2019.  Although that session was not successful, the parties continued to discuss settlement, and on May 8, 2019, just two days before picking a jury, the parties accepted a proposal recommended by the mediator. Doc. 420.

## THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for the dismissal with prejudice of the Action and for entry of the Final Order as provided for in the Settlement Agreement, Defendants will make

available to Settlement Class Members the benefits described below (the "Settlement Benefits").

Defendants will deposit $25,000,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the approved class participants' recoveries as well Class Counsel's Attorneys' Fees and Costs, Administrative Expenses of the settlement, and Class Representatives' Compensation as described in the Settlement Agreement.  Defendants have further agreed that there will be no reversion if any funds go unclaimed.  Instead, if there are any unclaimed funds they will be subject to a one time pro rata redistribution to members of the classes that submitted valid claims, and if any further unclaimed funds remain, be distributed *cy pres* subject to the Court's discretion.

## NOTICE AND CLASS REPRESENTATIVES' COMPENSATION

The notice costs and all costs of administration of the Settlement will come out of the $25,000,000 Gross Settlement Amount. Incentive payments to the nine Named Plaintiffs in an amount to be approved by the Court will also be paid out of the Gross Settlement Fund. Plaintiffs' counsel will seek $10,000 for all Named Plaintiffs except McManus.  Because of the additional time and effort McManus spent on the litigation, including but not limited to attending four separate

mediations, Plaintiffs' counsel will seek $25,000 for him.[1] "Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722-23 (7th Cir. 2001)

This amount is well in line with precedent recognizing the value of individuals stepping forward to represent class — particularly in a case, like the present, where the potential benefit to any individual does not outweigh the cost of prosecuting the claim and there are significant risks, including the risk of no recovery, and the risk of uncompensated time and energy devoted to a lawsuit with uncertain prospects for success.

Indeed, early on in the litigation, Defendants were successful in having this matter dismissed.   Nonetheless, all Named Plaintiffs remained dedicated to prosecuting this action and several were willing to attend the trial in person. Others, because of health issues, were willing to testify at trial via a video feed. All of the Named Plaintiffs met with Class counsel in order to prepare for their trial testimony. Further, the total award requested for the Named Plaintiffs represents only 0.0042 percent of the Settlement Fund. See *Beesley v. Int'l Paper Co*., 2014 U.S.Dist. LEXIS 12037, *13–14 (S.D.Ill. Jan. 31, 2014)(J. Herndon) (Approving Named Plaintiff Compensation of $25,000 each to six surviving named plaintiffs in

---

[1]When Plaintiffs' counsel moves for final approval of the Settlement Agreement, they will submit declarations from each named Plaintiff discussing his or her role in the litigation and time spent in pursuing this litigation.  Plaintiff McManus' time in pursuing this litigation is nearly three times the amount of any other named plaintiff.

401(k) fee settlement).

## NO SECOND OPT OUT SHOULD BE ALLOWED

As this Court previously noted when certifying the Class, individual "litigation is not even a realistic alternative. The Court estimates that the value of each class member's claim is somewhere in the ballpark of $10. And 'only a lunatic or a fanatic sues for [$10].' *Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)." Doc. 247 at p. 39 of 52.

The Class previously received Notice of this lawsuit in 2016, and not surprisingly, no class member opted out of this action.   Notice at that time informed Class members:

> By doing nothing, you are staying in the Class and will be bound by any judgment at trial. Keep in mind that if you do nothing now, you will not be able to separately sue Defendants – as part of any other lawsuit – about the same legal claims that are the subject of this lawsuit. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action. You must exclude yourself to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the subject matter of this lawsuit.

Now that this action has settled, Rule 23(e)(4) grants the Court discretion in determining to approve the settlement, whether to allow the Class a second opt-out opportunity. Nonetheless, "[t]here is no presumption that a second opt-out opportunity should be afforded.  That question is left entirely to the Court's discretion." *2003 Report of the Judicial Conference, Committee on Rules of*

*Practice and Procedure*.

After litigating these lawsuits for over eight years, Plaintiffs' urge the Court to approve the settlement agreement without a second opportunity to opt-out, as to do so, "might inject additional uncertainty into [the] settlement and create opportunities unrelated to the purpose of the second opt-out, potentially defeating some settlements and making others more costly." *Manual for Complex Litigation* (4th) § 22.611 at p. 313. See *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (Neither due process nor Rule 23 . . . requires a second opt-out period and requiring a second opt-out as a blanket rule would disrupt settlement proceedings because no certification would be final until after a settlement had been reached). Defendants agree a second opt out opportunity should not be allowed.

In sum, after more than eight years of contentious litigation, Plaintiffs urge the Court to approve the settlement without a second opportunity to opt-out, as the particular circumstances of this consumer fraud litigation involving an $8 product do not warrant this extraordinary opportunity, and to do so, could potentially disrupt the settlement process by introducing uncertainty.

## ATTORNEYS' FEES AND COSTS

Class Counsel will request attorneys' fees to be paid out of the Gross Settlement Fund in an amount not more than one-third of the Gross Settlement

Amount, or $8,325,000, as well as reimbursement of actual costs incurred which Plaintiffs' counsel estimates not to exceed $550,000.  Judges in this District have awarded a one third fee in complex class actions. *Spano v. Boeing Company*, 2016 WL 3791123 (S.D.Ill. March 31, 2016) (J. Rosenstengel); *Abbott v. Lockheed Martin Corp*., 2015 U.S.Dist. LEXIS  93206, *7 (S.D.Ill. July 17, 2015)(J. Reagan) citing *Beesley v. Int'l Paper Co*., 2014 U.S.Dist.  LEXIS 12037, *7 (S.D.Ill. Jan 31, 2014)(J. Herndon); *Will v. General Dynamics Corp*., 2010  U.S.Dist. LEXIS 123349, *9 (S.D.Ill. Nov. 22, 2010)(J. Murphy).

Class  Counsel  will  not  seek  fees  on  any  interest  earned  on  the  Gross Settlement  Amount.  A  formal  application  for  attorneys'  fees  and  costs  and  for named  plaintiff awards will be made at least 30 days prior to the deadline for class members to file  objections to the Settlement.

## GENERAL GOVERNING PRINCIPLES

In determining  whether preliminary  approval  is  warranted,  the  sole  issue before the Court is whether the proposed settlement is within the range of what might  be  found  fair,  reasonable,  and  adequate,  so  that  notice  of  the  proposed settlement should be given to class members and a hearing scheduled to consider final approval. The proposed agreement is viewed "in a light most favorable to settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996).

The  Court  reviews  the  proposal  preliminarily  to  determine  whether  it  is

sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing. *Manual for Complex Litigation, Fourth*, §13.14, at 172-73 (Fed. Jud. Ctr. 2004) ("Manual Fourth"). The Court is not required at this point to make a final determination.

The Court must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the proposed settlement, and date of the final fairness hearing. *Id*. § 21.632, at 321. Preliminary approval is the first step in a two-step process required before a class action may be finally settled. *Id*. at 320. Courts first make a preliminary evaluation of the fairness of the settlement, prior to notice. *Id*. at 320-21.

In some cases this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id*. There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arms-length negotiations. *Great Neck Capital Appreciation Inc. Partnership, L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (W.D.Wis. 2002); *see also Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). Without a doubt, the proposed Settlement here is the result of lengthy, contentious and complex arms-length negotiations between the parties.

Plaintiffs' counsel is experienced and thoroughly familiar with the factual and legal issues presented. Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *Isby,* 75 F.3d at 1200. Class Counsel is experienced in class action litigation generally and, in particular, class litigation arising under the laws of several different states. It is Class Counsel's opinion that the proposed Settlement is fair and reasonable. All of the Class Representatives are in favor of the Settlement.

"Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." Manual (Fourth) § 21.633, at 321. Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard regarding final approval. *Id.* at 322.

As explained below, the proposed Settlement falls squarely within the range of reasonableness warranting preliminary approval of the Class Notice apprising class members of the Settlement and setting a hearing on final approval. "The temptation to convert a settlement hearing into a full trial on the merits must be resisted." *Mars Steel Corp. v. Continental Ill/ Nat'l. Bank & Trust Co. of Chicago.*, 834 F.2d 677, 684 (7th Cir. 1987). "The very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation."

*McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 426 (7th Cir. 1977).

A settlement is fair to the plaintiffs in a substantive sense "if it gives them the expected value of their claim if it went to trial, net of the costs of trial." *Id*. at 682. Here, Defendants sold approximately 830,000 units of their GSCs during the Class period in the eight states at issue. Defendants sold units in both 12 count and 18 count boxes with an average sale price of approximately $8.00 per unit, resulting in alleged retail out-of-pocket damages of slightly more than $6.273 million as calculated by Plaintiff's damages expert. See Doc. 272-2, ¶ 5, at p. 4 of 14. The damages expert also calculated price premium out-of-pocket damages of approximately $5.415 million. Id. at ¶ 12, at p. 7 of 14.

In sum, the $25 million settlement, therefore, represents a fourfold increase above the Class' retail out-of-pocket damages and almost a fivefold increase above the price premium out-of-pocket damages.[2]

## THE PLAN OF ALLOCATION ACCOUNTS FOR DIFFERENCES UNDER STATE LAW

In determining whether a class action settlement is fair, reasonable, and adequate, the Court must also evaluate whether the allocation of funds among class

---

[2] Based upon the peculiarities of each state's laws, Plaintiffs sought actual damages and trebling under the laws of California, Illinois, New Jersey, North Carolina, South Carolina and Tennessee for the subclasses of those states. For the Alabama subclasses Plaintiffs sought $100 per violation as allowed under that state's statute; for the New York subclasses, Plaintiffs sought $50 and/or $500 per violation as allowed under that state's statute.

members is reasonable and equitable.  *Summers v. UAL Corp. ESOP Comm.,* No. 03 C 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005). <u>See</u> <u>also</u> *Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *3-4 (Sept. 10, 2010) (examining allocation of funds as part of the preliminary approval process); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation.")

Moreover, Rule 23(e)(2)(D) contains the requirement that "the proposal treats class members equitably relative to each other."  As the notes explain, paragraph (D) calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others, i.e., whether the apportionment of relief among class members takes appropriate account of differences among their claims.

The Plan of Allocation ("POA") satisfies the foregoing requirements.  The class members in Alabama will receive the greater of actual damages up to $100 as allowed under that state's statute. <u>See</u> *Ala. Code* § 8-19-5.  The class members in New York will receive $275, which represents the average amount of recovery under its two statutes. <u>See</u> *New York General Business law* § 349(h) and § 350(e).[3]

---

[3] This amount would recognize that the New York subclasses sought $50 and/or $500 per violation under that state's law, and that an election of remedy might have had to have been made at trial to preclude double recovery.

The deceptive trade practices acts of the other six states at issue, however, only provide for actual damages that are trebled either automatically, by the court's discretion, or under other appropriate circumstances.

As the average cost of the Grove Square Coffees ("GSCs") approximated $8, the POA for these six states provides for trebling of the purchase price up to $25 per purchase.  The POA limits purchases in those states to three per consumer, up to a maximum of $75 per claim, in order to prevent potential fraud.  The claims in Alabama and New York are limited to one per consumer regardless of the number of GSCs purchased, as case law supports the assertion that the statutory damages are per consumer and not per transaction.

A reasonable plan of allocation may consider "the strengths and weaknesses of the claims of the various types of class members." *In re Cabletron Sys. Sec. Litig.*, 239 F.R.D. 30, 35 (D.N.H. 2006).  In addition, in determining whether a plan of allocation is fair and reasonable, courts give great weight to the opinion of experienced counsel. See *In re Advanced Battery Techs., Inc. Sec. Case* 1:13-cv-12544-WGY 17 Litig., 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When evaluating the fairness of a plan of allocation, courts give weight to the opinion of qualified counsel."); see also, *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.").

Because this is a consumer fraud case and the class members are unknown, the claims rate for this type of settlement is typically low. In September of 2019, the Federal Trade Commission ("FTC") published a staff report entitled *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*. After collecting data on 149 consumer class actions from seven different claims administrators, the report showed the median claims rate in these type cases to be 9%. The weighted mean claims rate, which took into account the number of class members who received settlement notifications, was 4%. <u>See</u> FTC Report, Section 2.1, Summary of Results, at p. 11.[4]

Based upon sales of 830,000 units of GSCs during the Class period, and using the FTC's median and weighted claims rate percentages, projected claims in this action could vary from 33,200 to 74,700 claims. Class counsel is optimistic that the robust Notice Plan they have proposed, will result in a higher claims rate because of advances in technology and the emergence of social media, but counsel is also cognizant of the FTC's historical data.

As currently drafted, the POA provides relief to each consumer from each state who submits a valid claim, ranging from a low of $25 to a maximum of $275. If there are additional funds remaining in the net settlement fund after the payment of valid claims and other expenses, the POA calls for a one time pro rata

---

[4] Half of the settlements in the FTC report involved median compensation of $69 or more, while a quarter of them provided median compensation of $200 or more. <u>Id</u>.

redistribution to claimants who submitted valid claims.  There are also provisions for a *cy pres* distribution if any unclaimed monies remain.

To the extent there are insufficient funds to pay all valid claims, and the net settlement fund is oversubscribed, KCC, acting as Settlement Administrator, has discretion under the Settlement Agreement to make pro rata  adjustments to the payouts.  Plaintiffs counsel could also seek direction from the Court regarding the manner in which payouts should be reduced to ensure all valid claims are paid some multiple of claimant's actual out of pocket expense.[5]

### THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

As noted, in evaluating whether a class action settlement is fair, reasonable and adequate, "the factors which a district judge should consider are well established: the strength of the plaintiffs' case on the merits measured against the terms of the settlement; the complexity, length and expense of continued litigation; the degree of opposition to the settlement; the presence of  collusion in gaining settlement; the opinion of competent counsel as to the reasonableness of the settlement; and the stage of the proceedings and the amount of discovery completed." *Donovan  v. Estate of Fitzsimmons*, 778 F.2d 308 (7th Cir. 1985).

---

[5] For example, if the New York claimants file a large number of claims that would exhaust the net settlement fund at a payment of $275 per claim, instead of a pro rata reduction among all claimants, the payout for those claimants could be reduced by some percentage.

## THE STRENGTH OF PLAINTIFFS' CASE ON THE MERITS

As discussed above, Plaintiffs alleged Defendants packaging of its GSCs were misleading or tended to mislead a reasonable consumer acting under reasonable circumstances, thereby violating each of the eight at-issue state's consumer protection statutes.  Class Counsel continues to believe in the merits of these claims. Defendants denied and continue to deny any liability.

There were several legal obstacles and defenses which render recovery in this case uncertain, and, if there is a recovery, affect the amount.  For each state there were two separate subclasses, i.e., consumers who purchased the original packaging and consumers who purchased the modified packaging. It is conceivable, therefore, that Plaintiffs could have succeeded at trial on behalf of one subclass, on behalf of both subclasses, or on behalf on no subclass if there were a Defendants' verdict.

Additionally, although all of the state consumer protection statutes employed the objective consumer standard, there were variations among the state laws regarding burdens of proof and class wide presumptions for reliance and/or proximate cause.  Thus, Plaintiffs could have succeeded on their claims in some states while their claims failed in other states. Accordingly, the range of possible outcomes at trial varied significantly.

Finally, Defendants, among other things, argued to the Court and would have argued on appeal issues involving proximate cause and reliance, and that any Plaintiffs' verdict would be unprecedented and violate their due process rights. After eight years of litigation, which already involved one trip to the appellate court, neither side was excited by the prospect of further drawn out litigation and its uncertainty.

## THE COMPLEXITY, LENGTH AND EXPENSE
## OF CONTINUED LITIGATION

The instant multistate lawsuit has been quite contentious and has been pending more than eight years.  The trial was expected to last approximately eight days and involve testimony from more than twenty witnesses.  This litigation has already made its way to the Seventh Circuit one time, and depending on what happened at trial, additional years of appeal would have been likely.

## THE ABSENCE OF COLLUSION

The Settlement with Defendants was the result of intense negotiations, including years of negotiations between the parties with the aide of a Magistrate Judge and two different private mediators. Settlement discussions with all parties were fully informed as a result of detailed adversarial factual discovery as well as voluminous briefing and memoranda prepared by the parties on all contested legal issues. The negotiations were vigorous and both sides argued their respective

positions strenuously. The resulting Settlement was undeniably the product of arms-length bargaining.

### THE OPINION OF COMPETENT COUNSEL AS TO THE REASONABLENESS OF THE SETTLEMENT

Class Counsel is experienced and competent.  During oral argument at the Seventh Circuit, Chief Judge Wood stated "[y]ou've got good class lawyers." You know, adequacy of representation question. . ." Doc. 411-1 at p. 8 of 14.  Class Counsel believes the settlement to be fair and reasonable in light of the procedural and substantive risks Plaintiffs would face if litigation were to continue.

### THE STAGE OF THE PROCEEDINGS AND THE AMOUNT OF DISCOVERY COMPLETED

Plaintiffs conducted a very substantial amount of discovery. Defendants and third-parties provided Counsel over thirty-three thousand pages of documents. Each document was electronically indexed and sorted, and thereafter individually examined, analyzed and cataloged by an attorney.  Class Counsel also reviewed and analyzed additional documents provided by Named Plaintiffs and other documents obtained from third party subpoenas.

Plaintiffs retained both a marketing expert and a damages expert. These experts examined and analyzed relevant documents and data, and provided opinions based on the record and their experience.  Defendants hired four different experts for their defense. Between both sides, approximately twenty-five

depositions were taken.

## THE PROPOSED NOTICE PLAN IS ADEQUATE

The Court has already approved one Notice Plan. Doc. 260. Plaintiffs have once again hired KCC, a leading class action administration firm, to put together the new Notice Plan for settlement of this lawsuit.  Attached hereto as Exhibit "A," is a Declaration from Carla Peak which generally discusses the class action experience of KCC, and further, specifically sets forth the proposed Notice Plan in detail.  As noted, KCC has handled the notice and claims administration of many other consumer class cases.

Due process and Rule 23(e) do not require that each Class Members receives notice, but does require that class notice be "reasonably calculated to reach most interested parties." *In re AT&T Mobility Wireless Data Services Sales Tax Litig*., 789 F.Supp.2d 935, 968 (N.D.Ill. 2011)  (internal quotations omitted). "Notice is adequate if it may be understood by the average class member." *Wal-Mart Stores Inc. v. Visa USA Inc*., 396 F.3d 96, 114 (2d Cir. 2005)(internal  quotations and citations omitted).

"Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974). "Individual notice must be provided to those class members who

are identifiable through reasonable effort." *Id*. at 175.  Here, the class members are unknown consumers, so Notice has necessarily focused on various forms of publication.

Here, the proposed form and method of notice of proposed settlement satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(e)(1).  The proposed Publication Form and Long Form Notice are attached to the Class Action Settlement Agreement and to the Motion for Preliminary Approval. The proposed Notice will fully apprise Settlement Class members of the existence of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights, including (i) the terms and operation of the Settlement; (ii) the nature and  extent of the release, (iii) the maximum counsel fees that will be sought; (iv) the procedure and  timing for objecting to the Settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents, and any modifications to those documents, will be posted.

The Notice Plan consists of multiple components designed to reach class members.  KCC's Notice Plan includes a detailed analysis of the makeup of the class.  The target audience of the class is analyzed in complete detail and education, income, gender, and other household information is taken into account in formulating the best means of delivering notice.  Moreover, as the class

members are from eight states, the population of those states is specifically taken into account in estimating the number of potential members of the targeted audience.

Class members will receive Notice through an 80% reach nationwide media campaign which will include three press releases, a 3/10-page ad in *Parade*, and a 1/3-page ad in *People*.  Class members will also receive notice of the settlement through a dedicated internet campaign of Internet Banner Ads in the relevant states.  The Notice Plan will purchase 187,168,500 million unique impressions of internet banners over a 60 day period.  Some of the sites where they will appear include Google Display Network, Facebook, Instagram, Reddit, Twitter, YouTube, BidTellect, Google/Bing/Yahoo Paid Search.  Further, there will be geotargeting of consumers who visit existing retailers where the GSC product was sold. Notice will also include newspaper print in certain states.

Class Counsel will update the existing dedicated website still in existence from the first Notice to include settlement information. A link to that website will appear on Class Counsel's website.  MRI data shows that the target audience speaks English 98.8% of the time most often, 91.3% have graduated from high school, and that 63.29% have attended college or beyond.  Accordingly, non-English notice is not necessary in this lawsuit.  Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process and the

Court should approve the Notice Plan as adequate. *See* Newberg on Class  Actions,

§ 8.34.

<u>**CONCLUSION**</u>

For all these reasons, Plaintiffs' Motion for Preliminary Approval of Class

Settlement should be granted.

Respectfully submitted,

By:   */s/ Peter H. Burke*

**OF COUNSEL:**

Peter H. Burke
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Telephone:  (205) 930-9091
Facsimile:   (205) 930-9054
E-Mail:   pburke@burkeharvey.com

Patrick C. Cooper
James Ward
WARD & COOPER
2100A Southbridge Parkway, Suite 580
Birmingham, AL 35209

J. Allen Schreiber
SCHREIBER LAW FIRM, P.C.
6 Office Park Circle
Suite 209
Birmingham, Alabama 35223
(205) 871-9140
allen@schreiber.law

D. Todd Mathews
Megan T. Myers
GORI, JULIAN AND ASSOC, P.C.
156 N. Main Street
Edwardsville, IL 62025
David M. Rosenberg-Wohl
Hershenson Rosenberg-Wohl
315 Montgomery Street, 8th Floor
San Francisco, CA 94104

Robert A. Fleury, Jr.
Brian L. Kinsley
CRUMLEY ROBERTS, LLP
2400 Freeman Mill Road, Suite 200
Greensboro, NC 27406
Telephone:  (336) 333-9899
Facsimile:   (336) 333-9894

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October, 2019, the foregoing was filed electronically with the Clerk of Court and served by operation of the Court's CM/ECF system on all counsel of record.

Craig Fochler
John F. Zabriskie
Jaclyne D. Wallace
Anne Marie Coghlan
Jonathan W. Garlough
Richard Spencer Montei
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313


/s/ Peter H. Burke